# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   Civil Action No.: 25-cv-10139<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**<u>DECLARATION OF LAURA JAMET</u>**

I, Laura Jamet, hereby declare:

1. I am Assistant Commissioner of the New Jersey Department of Children and Families ("DCF"), a position I have held since 2023. As Assistant Commissioner, I oversee the Division of Child Protection and Permanency ("DCPP"), New Jersey's division responsible for child protective services and permanency, including foster care and public adoptions. Prior to holding this position, I served in an acting capacity as Assistant Commissioner since 2022, and I served as Deputy Director of Operations for DCPP since 2021, along with other clinical and administrative roles in the New York City Administration for Children's Services.

1

2. As Assistant Commissioner for DCF, I have personal knowledge of the matters set forth below, or have knowledge of the matters based on my review of information and records gathered by my staff.

3. I am providing this declaration to explain certain impacts on the State of New Jersey's child welfare programs of an executive order entitled "Protecting the Meaning and Value of American Citizenship," issued on January 20, 2025 (the "Executive Order"). The Executive Order revokes birthright citizenship for children born in the United States after February 19, 2025, to (i) a mother who is unlawfully present or who is lawfully present in the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

Division of Child Protection and Permanency

4. DCF is devoted to serving and supporting at-risk children and families. Within DCF, the DCPP is New Jersey's child protection and child welfare agency. DCPP is responsible for investigating allegations of child abuse and neglect and, if necessary, arranging for a child's protection.

5. DCPP contracts with community-based agencies throughout the State to provide services for children and families. Services include counseling, substance abuse treatment, in-home services, and residential placement.

6. If a child has been harmed or is at risk of harm, DCPP may ask the county family court to place the child in foster care. Foster homes are provided by caring individuals who have completed extensive licensing and care training.

7. DCPP provides foster care services to children regardless of their immigration status.

8. The average daily population of children in foster care in New Jersey in State Fiscal Year 2024 was 3,753. The total number of children in foster care in New Jersey in Calendar Year 2024 was 4,547.

9. Children often enter DCPP's care within the first year of their lives. In 2023, 268 children entered DCPP's care within three months of birth, 308 within six months of birth, and 364 within 12 months of birth.

Federal Funding Tied to a Child's Citizenship

Title IV-E Funding

10. Under Title IV-E of the federal Social Security Act, the federal government provides grants to State foster care agencies with approved Title IV-E plans, including DCF, to assist those agencies with the costs of foster care maintenance for eligible children, as well as for adoption, guardianship, prevention services, and other support services.

11. Federal funding under Title IV-E is available only for services provided to children who are United States citizens or "qualified aliens." As DCF understands the Title IV-E limitations, undocumented children are not "qualified aliens," *cf.* 8 U.S.C. § 1641, and thus DCF does not receive any federal reimbursement for foster care expenditures by DCF for undocumented children.

12. Federal funding under Title IV-E covers maintenance payments for eligible children and a portion of the State's administrative expenses. Maintenance payments include foster care assistance, adoption assistance, and guardianship assistance, and cover the cost of basic necessities, including food, clothing, shelter, daily supervision, and school supplies, for eligible children in DCF's care. Federal funding is provided on a quarterly basis after the

    State submits claims for eligible expenditures associated with eligible children. New Jersey submits claims for reimbursement within eight weeks of the close of a quarter.

13. Partial reimbursement of administrative expenses is calculated by using the State's "penetration rate," which is the percentage of children in foster care who are eligible for Title IV-E funding. DCF calculates a penetration rate for each quarter. For federal Fiscal Years 2023 and 2024, the penetration rate was between 55 and 60 percent.

14. In Federal Fiscal Year 2024, DCF received $205.3 million in Title IV-E federal funding, including $138.9 million for administrative expenses and $66.4 million for maintenance payments for eligible children. This federal funding constitutes a substantial share of DCF's budget. For example, DCF spent approximately $170 million on maintenance payments during the last fiscal year. Federal funding covered approximately 40 percent of these maintenance expenditures.

15. DCF must, consistent with state law, continue to provide children born in the United States whose birthright citizenship is not recognized by the federal government with foster care services as needed. However, because these children are now ineligible for Title IV-E funding, DCF will not receive any reimbursement under Title IV-E for providing those services.

16. DCF does not keep records of the immigration status of the parents of children that DCF works with. Based on DCF's experience and understanding of general demographics in New Jersey, it is very likely that DCF serves U.S. citizen children whose birthright citizenship would not be recognized by the federal government pursuant to the Executive Order. DCF has been advised that there were around 95,792 registered births in New Jersey in 2024, and that an estimated 6,200 children are born each year in New Jersey to two undocumented

4

parents. This is a conservative underestimate of the number of children affected by the Executive Order because it does not include children who have one parent who is not undocumented but who nonetheless does not meet the immigration status requirements of the Executive Order to confer citizenship on their child born in the United States. Given that 364 children entered foster care within the first year of their lives in 2023, it is likely that some number of these children had two undocumented parents or a mother with temporary lawful status and a father who was neither a U.S. citizen nor lawful permanent resident. DCF reasonably expects that some number of children born within the 12-month period after February 19, 2025 will enter DCF's care. As a result of the Executive Order, DCF will lose material amounts of federal funding that it would use for foster care maintenance payments for those children, as well as reimbursement for administrative expenses associated with their care.

Medicaid Funding

17. Under New Jersey law, all foster children, regardless of immigration status, are eligible for public health insurance through NJ FamilyCare. Children in foster care who are U.S. citizens or have a qualifying immigration status are eligible for the federal-state Medicaid program that is partially funded by the federal government. However, except for certain limited emergency care that is covered by the federal-state emergency Medicaid program, undocumented children in foster care are eligible only for health insurance that is fully funded by the State. Because of the Executive Order, the State will lose federal health insurance for such children and incur greater health care costs.

Other Federal Benefits Programs

18. DCF provides targeted financial and resource assistance to families with children who are at risk of familial crisis, including for necessities such as rent, baby supplies, and groceries, to ensure that children receive adequate care.  DCF's goal is to keep families together, so that children do not experience the disruption and trauma of being removed from their home.  In fiscal year 2024, DCF spent $13.3 million on this assistance.  Many families with at-risk children also receive assistance for their children through federal programs, including SNAP, TANF, and SSI, for which their children are eligible because of their citizenship status.  DCF determines the need for providing targeted assistance only after considering whether federal assistance to these families is sufficient to ensure that the basic needs of their children are met.  Children with two undocumented parents, or whose birthright citizenship will otherwise be revoked by the Executive Order, will not be recognized as eligible for such federal assistance. DCF will be forced to increase its expenditures to ensure that these at-risk children receive adequate care.

Costs of Ascertaining Citizenship and Immigration Status

19. In order to determine whether children in its care are eligible for Title IV-E funding, DCF needs to determine the citizenship or immigration status of the children it serves.

20. In addition, DCF is responsible for applying for certain federal assistance for which a child in its care may be eligible, including Medicaid and SSI benefits. These federal benefits are not available to children who are not citizens or have a qualifying immigration status.  Thus, as part of the application process, DCF must submit proof that a child is a citizen or has a qualifying immigration status.

21. Presently, DCF relies on a birth certificate as evidence of U.S. citizenship. This is administratively simple, especially with respect to newborns that DCPP caseworkers may interact with shortly after birth.

22. The Executive Order complicates DCF's ascertainment of whether a child is eligible for Title IV-E funding and the process for applying for certain federal assistance for children in its care.

23. To ascertain eligibility for these programs, DCPP caseworkers must now develop a new system for determining the citizenship and immigration status of children in its care. That system will likely require DCPP to take steps to determine, verify, and document the immigration status of the parents of children who come into foster care. This may be especially difficult in certain circumstances where parents are unwilling to engage with DCF. It will cost considerable time and resources to implement such a system.

24. DCPP will have to expend considerable resources to develop and implement a system to determine, verify, and document the citizenship and immigration status of children whose citizenship could not be presumed on the basis of a birth certificate showing their birth in the United States. DCPP will also incur significant costs to train DCPP caseworkers to implement that system. While the precise costs are difficult to estimate without further guidance from the federal government on how states must determine citizenship status for Title IV-E eligibility, it may easily cost millions of dollars. Because quarterly submissions to the federal government for reimbursements are due within 30 days of the end of a quarter, DCF must develop and begin implementing such a system within a matter of months. As a result of the Executive Order, DCF must immediately begin planning the development of a

new system for determining, verifying, and documenting the citizenship and immigration status of children born in the United States.

25. DCF provides services for children residing in New Jersey regardless of where they were born. With respect to U.S.-born children, DCF commonly provides services for children residing in New Jersey who moved into the state from other states, including neighboring states like Pennsylvania or New York. Presently, DCF does not and has no reason to track the state of birth of U.S.-born children in its care. If rules governing birthright citizenship varied by state of birth, DCF would have to start tracking state of birth so that DCF could accurately determine the citizenship and immigration status of children in its care for the purpose of determining Title IV-E eligibility. Without uniformity around such eligibility, DCF must also design, implement, and train staff on an eligibility determination system that accounts for differential rules based on a child's state of birth. This introduces additional complexity into any eligibility determination process for children in DCF's care, and will require additional expenditure of DCF's time and resources.

* * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of January, 2025, in Trenton, New Jersey.

*Laura W. Jamet*, MSW<br>
Laura Jamet, Assistant Commissioner<br>
New Jersey Department of Children and Families