# EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>　　　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>　　　Defendants. | :<br>:<br>:<br>:<br>:   Civil Action No.: 25-cv-10139<br>:<br>:<br>:<br>: |

I, JEFFREY DUNCAN, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the State Registrar and the Director of the Division of Vital Records and Health Statistics (VRHS) within the Michigan Department of Health and Human Services (MDHHS). In this role, I am responsible for administration of Michigan's state vital records and statistics functions, including the civil registration of births, deaths, marriages, and divorces. I also administer contracts under which VRHS has to provide services to the Social Security Administration and the National Center for Health Statistics, a Center in the U.S. Centers for Disease Control and Prevention (CDC). In addition, I am the President-Elect of the National Association for Public Health Statistics and Information Systems, the organization of state and territorial vital statistics registrars.

1

2. As Michigan's State Registrar, I have personal knowledge of the matters set forth below, or have knowledge of the matters based on my review of information and records gathered by my staff.

3. I am providing this declaration to explain certain impacts on the State of Michigan of the executive order titled "Protecting the Meaning and Value of American Citizenship," issued on January 20, 2025 (the "Executive Order"), which revokes birthright citizenship for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in permitted into the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

4. The VRHS is responsible for the civil registration of births, deaths, marriages, and divorces, as well as issuing certified copies of these events to the public. VRHS contracts with the National Center for Health Statistics (NCHS) to contribute data toward national vital statistics, and with the Social Security Administration for Enumeration at Birth (EAB).

### Registration and Birth Certificates of Newborns

5. Healthcare facilities throughout Michigan coordinate with VRHS to collect and submit information to register each child's birth.

6. When a child is born in a healthcare facility, a medical attendant to the birth is statutorily obligated to register the birth. They provide the newborn's parents with a Birth Certificate Worksheet that asks for several pieces of

information, including the parents' place of birth and Social Security Numbers (SSNs). The Worksheet does not inquire about the parents' immigration status.

7. After the newborn's parents complete and sign the Worksheet, hospital staff enter the information from the Worksheet into an electronic birth system (VERA) maintained by VRHS. Local registrars, typically county clerks in Michigan, log in to VERA to accept and register each birth certificate and file it with VRHS. Upon registration, VRHS subsequently extracts statistical information from birth certificates and transmits weekly to the NCHS. Daily, VRHS extracts data from newly registered birth records and submits to Social Security for EAB.

8. A newborn's completed birth certificate does not indicate whether the parents have an SSN. The only information on the parents is the mother's legal name, the father's full name (if provided), their places and dates of birth, residence, and mailing addresses. Currently, it is not possible to determine a foreign-born parent's immigration status from their child's birth certificate.

9. Healthcare facilities do not routinely ask patients, including new parents, for their immigration status. Generally, hospitals learn that information only when assessing a patient's eligibility for public benefits, which may depend on immigration status. If hospitals obtain immigration status information for patients, it is recorded in their health records and becomes protected health information that is shielded from disclosure under the Health Insurance Portability and Accountability Act (HIPAA).

10.     If the newborn registration process had to be amended to provide for verification of the parents' citizenship and/or immigration status, this would impose material administrative burdens on healthcare facilities throughout Michigan. During the newborn registration process, hospitals ask parents for their SSNs and places of birth, but do not directly inquire about immigration status.  Currently, healthcare facilities do not verify the accuracy of the information provided.  If healthcare facilities were required to confirm the accuracy of the parents' places of birth, SSNs, or immigration status, they would incur significant new administrative costs to implement a system to substantiate the information and hire and train staff.  This burden would likely further lead to delays in registration and issuance of birth certificates for all children.

Application for Social Security Number of Newborns

11.     While registering a newborn for a birth certificate at a healthcare facility, parents may also request an SSN for their child through a Social Security Administration (SSA) program called Enumeration at Birth (EAB).

12.     The EAB process is voluntary for families, but according to SSA, about 99% of SSNs for infants are assigned through this program.

13.     The EAB application is included as part of the Birth Certificate Worksheet parents complete at the facility.  For EAB purposes the Worksheet asks for the parents' SSNs.  Parents born outside the United States can apply for and receive an SSN for their child without including their own SSNs on the application. Currently, because children born in the United States are U.S. citizens, they are

eligible for SSNs regardless of their parents' immigration status. Parents check a box on the Worksheet indicating their permission to share information with SSA to obtain a social security number for their newborn child.

14. EAB information collected on the Worksheet is keyed into VERA and submitted to the VRHS electronically at the same time the birth is filed. VRHS extracts and submits EAB information to SSA daily to support timely enumeration. VRHS only sends EAB records to SSA for enumeration of infants born within the past 12 months.

15. Michigan receives federal funding from the SSA EAB process on a quarterly basis for each SSN that is issued through the EAB process. The State receives $4.82 per SSN issued through the EAB process, or approximately $100,000 to $115,000 per quarter. VRHS uses those funds to support the payment of administrative and operational costs.

16. If birthright citizenship were revoked pursuant to the Executive Order for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in permitted into the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident, such children would no longer be citizens and would therefore be ineligible for an SSN. Assuming that SSA would not issue an SSN to such children , VRHS estimates approximately 6,615 to 6,673 fewer SSNs would be issued. This estimate is based on the number of births for which the parents

identified a foreign place of birth and did not provide an SSN on the Birth Certificate Worksheet in 2023 (6,673 births) and in 2024 (6,615 births).

17. If approximately 6,600 to 6,800 fewer SSNs were issued through the EAB process due to the revocation of birthright citizenship, this would result in an annual loss of EAB funding to Michigan of approximately $31,812 to $32,776.

18. In addition to the loss in funding, healthcare facilities in Michigan would incur new administrative costs by expending resources to verify parents' immigration status before applying for a newborn's SSN through the EAB process as SSA will presumably require proof of parents' lawful status to issue an SSN. Healthcare facilities will be forced to consult with, and assist, families with obtaining the paperwork necessary to prove their lawful status. It is likely that Michigan's VERA system and guidelines for submitting SSN applications through to SSA—which are currently detailed in a 59-page SSA manual—would have to be revised. This would likely require healthcare facilities to train, and potentially hire, staff to work with parents in obtaining, and then verifying, the requisite documents to establish lawful immigration status.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 21, 2025         *Jeffrey Duncan*
                                Jeffrey Duncan
                                State Registrar
                                Director, State Vital Records Office
                                MDHHS