# EXHIBIT K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>　　　Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:   Civil Action No.: 25-cv-10139<br>:<br>:<br>:<br>:<br>: |

## **DECLARATION OF LINDY HARRINGTON**

I, Lindy Harrington, hereby declare:

1.　　I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.　　I am currently employed by the California Department of Health Care Services (DHCS) as the Assistant State Medicaid Director. I have held the Assistant State Medicaid Director position since 2023. As Assistant State Medicaid Director my responsibilities include assisting the State Medicaid Director in overseeing all aspects of the Medicaid and Children's Health Insurance Programs (CHIP) as governed by state and federal rules. My experience includes over 17 years of various executive leadership roles within DHCS, including over 7 years as the Deputy Director, Health Care Financing where I was responsible for the development, promotion, and implementation of financing for California's Medicaid program (Medi-Cal) prior to my appointment as Assistant State Medicaid Director.

1

3. The organizational purpose of DHCS is to provide equitable access to quality health care leading to a healthy California for all. In that effort, DHCS oversees the provision of healthcare for citizen and noncitizen low-income families, children, women, seniors, and persons with disabilities within the Medi-Cal and CHIP programs.

4. DHCS is the single state agency authorized to administer California's Medicaid program under Title XIX of the federal Social Security Act, referred to in California as "Medi-Cal" and California's Children's Health Insurance Program (CHIP) under Title XIX and XXI of the federal Social Security Act.

5. I am providing this declaration to explain certain impacts on the State of California's health insurance programs of the Executive Order titled "Protecting the Meaning and Value of American Citizenship," issued on January 20, 2025 (the "Executive Order"), which revokes birthright citizenship for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

6. As described below, this Executive Order will inflict significant harm upon DHCS' efforts to provide Californians with equitable access to quality health care.

**Medicaid and CHIP**

7. California's Medi-Cal and CHIP programs are federal/state partnerships that provide comprehensive healthcare to individuals and families who meet defined eligibility requirements.

8. There are several ways to be eligible for Medi-Cal, but in general, children born in the United States and residing in California whose household modified adjusted gross income (MAGI) is at or below 266 percent of the Federal Poverty Level (FPL) are eligible for Medi-Cal.

9. DHCS also leverages Medi-Cal resources to extend meaningful coverage to a wide range of children. This is accomplished in part with federal funds available under Titles XIX and XXI (Children's Health Insurance Program or CHIP).

10. The vast majority of the State's Title XXI allotment is used to expand Medicaid coverage to children in working families whose parent(s) or guardians(s) exceed the income eligibility thresholds for traditional Title XIX based Medi-Cal. DHCS uses Title XXI funds to further extend coverage to children with income up to 322 percent of the FPL in San Francisco, Santa Clara, and San Mateo Counties.

11. In addition, DHCS has elected to use Medi-Cal resources to make pregnancy health services accessible to the largest number of individuals possible. Medi-Cal includes coverage for eligible pregnant individuals up to 213 percent of the FPL. Pregnancy-related services include prenatal care, all Medi-Cal services for conditions that might complicate pregnancy (such as high blood pressure and diabetes) and postpartum care. Labor and delivery are provided under emergency services. Additionally, these services directly affect maternal and child health outcomes.

12. As part of California's CHIP State Plan, pregnant individuals and individuals up to 12 months post-partum who have income between 213 percent of the FPL and up to 322 percent of the FPL may be eligible for the Medi-Cal Access Program (MCAP), which includes the From-Conception-to-the-End-of-Pregnancy (FCEP) Option, which offers comprehensive coverage for no-cost with no copayments or deductibles for its covered services. Eligible pregnant individuals that meet the State's residency requirements may qualify for the MCAP, regardless of immigration status.

13. Newborns whose mothers are enrolled in Medi-Cal or MCAP and give birth in participating hospitals or clinics can be automatically enrolled into Medi-Cal or the Medi-Cal Access Infant Program (MCAIP) at the time of birth using a simplified application. Medi-Cal deemed eligible newborns and MCAIP infants will receive full-scope, no-cost Medi-Cal until their first birthday.

14. Under federal law, individuals who are undocumented and do not have a lawful, qualifying immigration status, are not eligible for federal Medicaid, CHIP, or other benefits. The limited exception involves the federal program for undocumented or non-qualified individuals otherwise eligible for Medicaid, known as Emergency Medicaid. Thus, except for emergency, pregnancy-related services, and postpartum services, California fully funds health insurance for individuals who meet the income eligibility guidelines for federally-funded Medicaid or CHIP, but do not qualify for those programs because they are not United States citizens or "qualified aliens."

15. Under the CHIP State Plan, DHCS elected the From-Conception-to-End-of-Pregnancy Option, which provides full-scope coverage of services for pregnant individuals, regardless of immigration status, up to 322 percent of the FPL. This option provides the DHCS authority to cover pregnancy-related and postpartum services for undocumented or non-qualified individuals.

16. DHCS recognizes that meaningful access to affordable and quality healthcare requires statewide efforts to increase coverage for more Californians.

17. Thus, to better address the State's coverage needs, in 2015, California expanded full-scope, State-funded Medi-Cal eligibility to all low-income children through age eighteen, regardless of immigration status, and subsequently, expanded coverage to additional age groups

until, beginning in 2024, California became the second state to expand comprehensive coverage to all income-eligible residents, regardless of immigration status.

### **Federal Funding**

18. As of the State Fiscal Year 2024-25 enacted budget, DHCS has an annual budget of more than $160 billion, the vast majority of which relates to Medi-Cal and CHIP, which supports the health care of more than 14 million Californians.

19. The amount contributed by the federal government, known as the Federal Medical Assistance Percentage (FMAP), is based on a formula that uses a state's per capita income. California receives a 50 percent FMAP for Medi-Cal, which generally means that for every dollar California spends on Medi-Cal services, the federal government matches it with a dollar. For CHIP, the FMAP is 65 percent.

20. However, Medi-Cal coverage for undocumented children who are not eligible for federal Medicaid or CHIP because of their immigration status, is fully funded by California, without any federal funding assistance.

21. The only exception to this is Emergency Medicaid which is available to all income-eligible individuals who have a medical emergency or need pregnancy-related or postpartum services.

22. In order to receive Medicaid matching funds from the federal government for healthcare expenditures by California, DHCS needs to verify that the expenditures submitted for federal matching were for care provided to citizens or qualifying noncitizens, or for emergency, pregnancy-related, or postpartum services.

23. As of 2024, DHCS administers Medicaid and CHIP funded coverage for more than five million children in California. DHCS estimates that coverage on a per-child basis costs

5

approximately $3,445 per year. For this coverage, California estimates it expended approximately $17 billion in total and received approximately $8 billion in reimbursement from the federal government under Medicaid and CHIP.

24. Federal funding for California's Medi-Cal program is provided through an advance quarterly grant from the federal Centers on Medicare and Medicaid Services ("CMS") to California, with a post-quarter reconciliation. This quarterly process begins approximately six weeks before the quarter begins, with the State submitting to CMS a CMS-37 report, which estimates the reimbursable expenditures California expects to make for the upcoming quarter. For instance, for the January to March 2025 quarter, California submitted the CMS-37 report on approximately November 15, 2024.

25. Federal funding for California's CHIP program is provided through an annual allotment. The allotment amount is calculated by CMS as defined in Section 2104(m)(10) of the Social Security Act. Funds from this allotment are released to California based on the quarterly budget submission to CMS. For the January through March 2025 quarter, the State submitted the reports on approximately November 15, 2024. Initial CHIP allotment funds for Federal Fiscal Year 2025 were released to California previously.

26. CMS then issues a quarterly federal grant no later than the week before the start of the quarter. The State draws from this grant award during the quarter to partially fund its expenditures for Medicaid and CHIP.

### Healthcare Coverage for Newborns

27. Presently, all children born in California are U.S. citizens.

28. Thus, at present, Medi-Cal coverage for newborns in California is partially funded by the State and partially funded by the federal government, either through Medicaid or CHIP.

However, if a child were not eligible for federally-funded Medicaid or CHIP, California would not receive that federal assistance, and would cover the full cost of health insurance coverage for the newborn, with the exception of federal funding for emergency services.

29. CHIP and Medi-Cal are especially important for children under 21 years of age with disabilities enrolled in California's Children's Services (CCS) program which provides diagnostic and treatment services, medical case management, and physical and occupational therapy health care services to children with CCS-eligible conditions (e.g., severe genetic diseases, chronic medical conditions, infectious diseases producing major sequelae, and traumatic injuries) from families unable to afford catastrophic health care costs. CCS currently serves approximately 182,000 children in California, approximately 90 percent of whom receive this service through CHIP and Medi-Cal benefits.

## **Impact of Executive Order**

30. Medi-Cal is the pillar of the State's health care safety net, providing access and meaningful coverage to millions of low-income Californians. If implemented, the Executive Order will not only interfere with the administration of Medi-Cal and other health programs operated by DHCS, reducing California's health care coverage gains, but it will also reduce the amount of federal funding California receives to reimburse medical expenses for children in California.

31. California's current Medicaid and health benefits programs are structured around the significant reimbursements from the federal government, and any loss of funding would have serious consequences for DHCS and those individuals it serves.

32. The Executive Order revoking birthright citizenship for certain children born in the United States will result in some babies being born in California as non-citizens with no legal

status. That will result in the direct loss of federal reimbursements to the State for coverage provided to those children because eligibility for federally matched programs such as Medicaid and CHIP depends on the individual's eligibility under federal law, which necessarily depends on their citizenship or immigration status.

33. In particular, federally matched coverage for many children that would have been provided under Medicaid or CHIP will very likely be lost, since those programs are not available to unauthorized individuals aside from Emergency Medicaid coverage. This will necessarily result in a shift to the State of funding responsibility for this group of children.

34. Further under California's CHIP State Plan, California covers pregnant individuals regardless of immigration status, with incomes at or below 322 percent of the FPL for prenatal care so even though the mother may not have a legal immigration status, the child will be born a U.S. citizen and is therefore eligible under CHIP from conception through birth. After the child is born, the child (as a U.S. citizen) can remain covered under CHIP, while the mother is no longer covered under the federal CHIP program. If these children are no longer deemed citizens at birth, DHCS will lose federal funding for all non-emergency services for these children.

35. This poses an immediate risk to DHCS's federal funding stream used to provide healthcare coverage to vulnerable California newborns and children.

36. In 2022, DHCS estimates there were approximately 41,000 births to undocumented pregnant individuals whose labor and delivery was covered by emergency Medicaid. Assuming that a similar number of undocumented pregnant individuals give birth within one year of the Executive Order, and that many of those children would have been

eligible for federal Medicaid and CHIP but for their new non-citizen status, DHCS estimates that it will lose several millions in federal funding in the first year, compounding annually.

37. Further, to the extent that the Executive Order will sow confusion about immigrants and their children's ability to access essential health benefits, for which they remain eligible under state law, the Executive Order undermines the substantial progress that DHCS has made to increase access to healthcare, harming families and communities, weakening the public health, and creating public distrust in the State's social welfare institutions.

38. Because the Executive Order will cause families and caregivers of children, especially infants, to avoid the preventive care and treatment provided by these programs, it will have long-term consequences for the health outcomes of those children.

39. Currently, these programs all follow the American Academy of Pediatrics Bright Futures recommendations, a series of evidence-based preventive care and treatment recommendations shown to improve the health outcomes of children. Beyond health outcomes like avoiding childhood diseases, avoiding long-term risk of chronic diseases in adulthood and promoting age-appropriate development, these services are also critical for ensuring the success of children in other domains like engagement in school, literacy and appropriate social development. These programs are also where any issues, especially related to development, child welfare and congenital or infectious diseases are first identified and treated early. Lack of utilization of these programs will pose long-term risk to the health of all Californians, increased risk for future pandemics, and overall impact to California's health and economy.

40. In addition, if implemented the Executive Order likely will interfere with and complicate DHCS' administration of programs.

41.     DHCS will need to immediately begin planning for the potential loss of federal funding. This includes reassigning staff from other priorities, hiring contractor support, and expanding existing financial and programmatic support contracts to encompass the new scope of work this would entail.

42.     DHCS would also incur significant costs to train staff, partners, and healthcare providers on any updated eligibility system and procedures, and to revise existing guidance documents and manuals regarding eligibility rules and procedures. DHCS will have an enormous administrative burden in training workers across 58 counties on processing Medi-Cal eligibility based on new immigration rules, which is a significant overhaul to Medi-Cal's current enrollment policies.

43.     DHCS will need to revise all eligibility determination policies around Medi-Cal at application, annual renewal, and changes of circumstances relating to citizenship and immigration status verifications, which can take as many as several years to complete and operationalize due to complexity. This includes significant updates to the Medicaid application and its requisite online applications in two eligibility systems, including reconstructing how verifications of immigration status will work to output an accurate Medi-Cal determination. None of these changes will be immediate due to the complexity, breadth, and depth of these fundamental policies for verification of citizenship status.

44.     Because so many changes will need to be made to implement Medicaid and CHIP under this new citizenship rule, DHCS is unable to currently predict how many millions of dollars it will cost to implement these changes. The changes that would need to be made both at the state and federal level could take years to update to the new citizenship rule.

45. Further, children residing in California are eligible for Medi-Cal, including the fully state-funded program, regardless of whether they were born in California. Children residing in California who moved into the State from other states, are frequently enrolled in Medi-Cal. Presently, the eligibility verification systems used by DHCS's vendor and county agencies does not track the state of birth of U.S.-born children who apply for Medi-Cal. If the rules governing birthright citizenship varied by state of birth, these eligibility verification systems need to be modified to track state of birth and parentage in order to determine whether a child relocating from another State is a citizen and therefore eligible for Federal-State Medicaid or CHIP. This would add further complexity to the process of updating eligibility verification systems described above, requiring additional expenditure of DHCS's time and resources.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __20th__ day of January, 2025, in Sacramento, CA.

*Lindy Harrington*

_____
Lindy Harrington
Assistant State Medicaid Director
California Department of Health Care Services