# EXHIBIT L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>    Defendants. | Civil Action No.: 25-cv-10139 |

### DECLARATION OF RACHEL A. HEENAN

I, Rachel A. Heenan, declare as follows:

1. I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the California Department of Education (CDE) as the Director of the Special Education Division. I have been in this position for one year. I have more than 7 years of experience as District Special Education Director and Special Education Local Plan Area Director and more than 19 years of experience in Special Education administration.

3. As the Director of Special Education, I oversee the implementation of federal and state special education laws including the Individuals with Disabilities Education Act. I also oversee a total budget of $6,300,000,000 in state and federal funds that are allocated to Local Educational Agencies (LEAs) to meet the needs of 850,000 students with disabilities.

1

4. CDE's mission is to innovate and collaborate with educators, schools, parents, districts, and community partners to ensure that all of California's 5.8 million public school students—across more than 9,000 schools—have access to a world-class education. Our aim is to prepare students to live, work, and thrive in a multicultural, multilingual, and highly connected world.

5. Pursuant to *Plyler v. Doe*, 457 U.S. 202 (1982), LEAs within the State serve all school-age children, regardless of their immigration status. An LEA—such as a school district—is a public authority legally constituted by the State as an administrative agency to provide control of and direction for kindergarten through grade 12 public educational institutions.

6. The children of immigrant families are a vital part of our school communities, and they are a part of what makes our schools so vibrant and diverse.

7. I understand that the President issued the Executive Order "Protecting the Meaning and Value of American Citizenship" on January 20, 2025 (the "Executive Order"). It is my understanding that the Executive Order revokes birthright citizenship for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

8. As described below, it is my understanding that an Executive Order ending birthright citizenship would inflict significant harm upon CDE's efforts to provide a free and appropriate public education to all children by restricting the federal funding made available to LEAs and public schools in California to serve students with disabilities.

## Special Education

9. The Individuals with Disabilities Education Act (IDEA) provides that schools are responsible for providing a free appropriate public education (FAPE) to students with disabilities. 20 U.S.C. § 1412(e).

10. Funding for special education is meant to cover the additional costs that are associated with educating students with disabilities due to their disability. In California, there are three main sources of special education funding: (1) the federal government, as part of the IDEA; (2) the State; and (3) school district and charter school LEAs. For the school year 2024-25, California received $1.5 billion in special education funding from the federal government, the State allocated $4.8 billion for special education, and LEAs, using unrestricted funds, covered the remaining approximately $8 billion in special education costs.

11. Medicaid responsibility precedes that of the LEA for a Medicaid (called Medi-Cal in California) covered service in the student's Individualized Education Plan (IEP). 20 U.S.C. § 1412(a)(12)(A)(i); 42 U.S.C. § 1396b(c). Section 1396b(c) states: "Nothing in this subchapter shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a child with a disability because such services are included in the child's individualized education program established pursuant to part B of the IDEA [20 U.S.C. 1411 et seq.] or furnished to an infant or toddler with a disability because such services are included in the child's individualized family service plan adopted pursuant to part C of such Act [20 U.S.C. 1431 et seq.]." The IDEA provisions regarding LEA responsibilities for a FAPE do not alter the Medicaid responsibility for Medicaid-covered services in the IEP. 20 U.S.C. § 1412(e).

12. CDE receives funding under three provisions of IDEA. Since 1988, Section 1903(c) of the Social Security Act has authorized the federal Medicaid program to reimburse LEAs for covered services provided to Medicaid-eligible students with disabilities, pursuant to the IDEA, 20 U.S.C. § 1400 et seq., provided the services were delineated in the student's IEP (or similar plan) and covered in the state plan for Medicaid.

13. IDEA requires LEAs to develop an IEP for children found eligible for special education and related services. An IEP identifies certain special education and related services, and program modifications and supports, that the LEA will provide a child with a disability. If the IEP identifies Medicaid-covered services necessary to provide supports for the child with a disability, the IDEA requires LEAs to provide those Medicaid-covered services pursuant to the IEP.

14. Thus, LEAs and public schools in California may provide certain Medicaid-covered services to special needs students under an IEP, such as (but not limited to): audiological services, occupational therapy, physical therapy, psychological and mental health services, behavioral intervention services, as well as speech and language therapy.

15. In school year 2023-24, one of the largest school districts in the state (serving approximately 10,000 students with disabilities) received $5,000,000 in Medi-Cal reimbursements. Smaller districts sampled received approximately $1.5-$1.8 million in reimbursement for these services. On average, LEAs with between 4,000-6,000 students with disabilities receive more than $1,000,000 per LEA. In the State, there are 30 LEAs that serve more than 4,000 students with disabilities, thus receiving approximately $30,000,000 in Medi-Cal reimbursement.

16.     It is my understanding that if birthright citizenship is terminated, students with disabilities with undocumented parents—who would otherwise be citizens and qualify for federally-funded Medicaid but for the Order—will not be eligible for federally-funded Medicaid.

17.     LEAs would thus not receive any federal Medicaid reimbursements for their provision of health services to those special needs students under their IEPs. In the absence of those federal reimbursements, LEAs would have to draw upon state funds to maintain those IEP-required services for the affected special needs students, reducing the State's overall funds and diverting those funds from other educational services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2025, at Clearwater, Florida.

                                                                 /s/ Rachel A. Heenan