# EXHIBIT M

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:  Civil Action No.: 25-cv-10139<br>:<br>:<br>:<br>:<br>: |

## DECLARATION OF RITA NGUYEN, M.D.

I, Rita Nguyen, declare as follows:

1. I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the California Department of Public Health (CDPH) as the Assistant Public Health Officer for the State of California, a role I have served in since February 2022. I was previously the Assistant Health Officer at the San Francisco Department of Public Health from 2017-2022 where I supported chronic disease and cancer prevention efforts for the City and County of San Francisco. Prior to that, I was Assistant Clinical Professor at UCSF with a focus on nutrition security, public health, and providing clinical care to hospitalized patients. I received my M.D. at Johns Hopkins University School of Medicine and B.A. from Stanford University. I completed Internal Medicine Residency Training at Brigham and Women's Hospital.

1

3. I oversee CDPH's Population Health Pillar which entails providing policy, program, and administrative oversight of the Centers for Healthy Communities, Family Health, Environmental Health, and Health Statistics and Informatics. As the Assistant Public Health Officer, I also assist and support the Director and State Public Officer with pressing and/or emerging public health issues.

4. CDPH aims to optimize the health and wellbeing of all people in California. CDPH works with local health departments, as well as public and private partners, to implement policies and programs that advance public health.

5. I am familiar with the Executive Order "Protecting the Meaning and Value of American Citizenship" issued on January 20, 2025 (the "Executive Order"). It is my understanding that the Executive Order revokes birthright citizenship for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

6. I anticipate that the Executive Order will harm California by: (1) directly impacting the federal funding that CDPH and California receive to facilitate Social Security Number applications for newborn babies; and (2) imposing new administrative burdens upon CDPH that require it to expend and divert resources.

### Registration and Birth Certificates of Newborns

7. As part of its functions, CDPH maintains birth, death, fetal death/still birth, marriage, and divorce records for California. CDPH issues certified copies of California vital records and registers and amends vital records as authorized by law.

8.     Within CDPH, the Center for Health Statistics and Informatics (CHSI) is responsible for collecting and maintaining data regarding births in California.

9.     California has the largest proportion and highest number of births in the United States, representing about one out of every eight births in the nation.

10.    In 2022, 420,543 babies were born in California.

11.    Hospitals and other healthcare facilities in California coordinate with CHSI to collect information to register a child's birth.

12.    When a child is born in a healthcare facility, a medical attendant to the birth is statutorily obligated to register the birth. They provide the newborn's parents with a Birth Certificate form that asks for several pieces of information, including the parents' place of birth and Social Security Numbers (SSNs). The form does not inquire about the parents' immigration status.

13.    If the parents do not have an SSN, or do not wish to share it, they can leave that field blank. Their omission of that information does not affect the newborn's ability to obtain a birth certificate.

14.    After the newborn's parents complete and sign the form, hospital staff enter the information from the form into the Electronic Birth Registration System (EBRS) maintained by CHSI.  Hospital staff then submit the record to the Local Registration District (usually affiliated with the county health department) who then registers the record (i.e., local registration).  Once the record has been locally registered, it is then state registered by CHSI.

15.    A newborn's completed birth certificate only includes the parents' SSNs at the bottom of the confidential section if the parents provided an SSN. The mother's residence address is also provided in the confidential section. The mother's birth name, the father's birth

name (if provided), and their places and dates of birth are provided in the public section of the certificate.

16. Currently, it is not possible to determine a parent's immigration status from their child's birth certificate.

### Application for Social Security Number of Newborns

17. CHSI also helps facilitate parents' applications for an SSN for their newborn baby through a Social Security Administration program called Enumeration at Birth.

18. Under the Enumeration at Birth Program, the healthcare facility provides parents with an application form to request an SSN for their child.

19. The Enumeration at Birth application form asks for the parents' SSNs. However, parents can leave that information field blank in the application, for various reasons. In 2023-2024, 22 percent of all Enumeration at Birth applications in California did not include either parents' SSN.

20. After a healthcare facility receives a completed SSN application from the parents, it submits the information from the application through EBRS, which then transmits that information and request to SSA after state registration.

21. Although the Enumeration at Birth Program is voluntary, the vast majority of families apply for SSNs for their newborns through this Program. In California, approximately 98 percent of families participated in the Enumeration at Birth Program in 2024.

22. CDPH receives federal funding from the Social Security Administration's Enumeration at Birth Program for each SSN that is issued through this process.

23. CDPH receives $4.82 in federal funding per SSN issued to a newborn baby in California. For the upcoming year, CDPH estimates that it will receive up to $2,885,599 through federal funding for CDPH's administration of the Enumeration at Birth Program in California.

24. Prior to the Executive Order, the Social Security Administration accepted nearly all Enumeration at Birth applications sent by CDPH, including those that did not contain either parent's SSN. CDPH receives a report from the Social Security Administration every day indicating how many SSN applications the Social Security Administration received from CDPH, the number of applications rejected, and the reason for rejection. In 2023 and 2024, CDPH received no rejections of SSN applications sent through the Enumeration at Birth Program due to a lack of parental SSN.

25. In 2023, parents in California submitted 393,897 applications for SSNs for newborn babies through the Enumeration at Birth Program, resulting in $1,898,583.54 in federal funding.

26. In 2024, parents in California submitted 390,966 applications for SSNs for newborn babies through the Enumeration at Birth Program, resulting in $1,884,456.12 in federal funding.

27. If the Executive Order revokes the citizenship of newborn babies born to undocumented parents, or to newborn babies born to one undocumented parent where the other parent is unknown, those babies would no longer be eligible for an SSN.

28. If the Social Security Administration declines to issue SSNs to babies born to two undocumented parents, CDPH estimates approximately 24,500 babies would be affected.

29. This estimate is based on figures provided to me by the State's demographer approximating the number of births to California residents who are undocumented in 2022. This

5

is an underestimate to some degree because it does not include children who have one parent who is not undocumented but who nonetheless does not meet the immigration status requirements of the Executive Order.

30. If approximately 24,500 newborn babies were denied SSNs due to the revocation of birthright citizenship, this would result in an annual loss of Enumeration at Birth funding to California of approximately $118,090.

31. In addition to the loss in funding, CDPH would incur new administrative costs if required to expend resources to verify parents' immigration status before facilitating an application for a newborn's SSN through the Enumeration at Birth Process. If required to obtain proof of parents' lawful status before facilitating an SSN application for newborns, CDPH or state-run facilities will be forced to consult with, and assist, families with obtaining the paperwork necessary to prove lawful status.

32. CDPH would also need to update and revise its electronic system, along with its guidelines for submitting SSN applications through that system. This would likely require CDPH and state healthcare facilities to train, and potentially hire, staff to work with parents in obtaining, and then verifying, the requisite documents to establish lawful immigration status.

## Conclusion

33. CDPH's mission is to protect and advance the public health of California's residents. But the Executive Order impairs this mission in two main ways.

34. First, by stripping away the citizenship of newborn babies, the Order threatens to deny CDPH and the State of California more than a hundred thousand dollars per year in federal funding through the Enumeration at Birth Program.

35.     Second, the Executive Order imposes administrative burdens and costs upon CDPH. CDPH would incur administrative costs if required to verify parents' immigration status before facilitating an application for a newborn's SSN through the Enumeration at Birth Process, including the expenditure of resources revising CDPH's electronic system, submission guidelines, and the necessary training, hiring, and technical expertise to accomplish these changes.

36.     In sum, the Executive Order directly reduces the federal funding that CDPH receives, imposes administrative burdens, and diverts resources from public health programs that protect the health of families and their children.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 20, 2025, at Walnut Creek, California.

_____
Rita Nguyen, M.D.