# EXHIBIT O

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al.<br><br>     Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>     Defendants. | Civil Action No.: __25-cv-10139__ |

**Declaration of Gabrielle Armenia**

I, Gabrielle Armenia, hereby declare:

1. I am the Director of the Division of Eligibility and Marketplace Integration in the Office of Health Insurance Programs of the New York Department of Health ("DOH"), a position I have held since 2024. I have also been New York State's Children's Health Insurance Program (CHIP) Director since 2019. As Director of Eligibility and Marketplace Integration, I am responsible for eligibility policy for the Medicaid and Child Health Plus Program, among other things. Prior to holding this position, I was the Director of the Bureau of Child Health Plus policy from April 2008 through October 2013, the Director of the Bureau of Child Health Plus and Marketplace Integration from October 2013 through October 2022, and the Director of the Child Health Plus and Marketplace Consumer Assistance Group from October 2022 through March 2024.

2. As Director of the Division of Eligibility and Marketplace Integration and New York's CHIP Director, I have personal knowledge of the matters set forth below or have knowledge of the matters based on my review of information and records gathered by my staff.

1

3. I am providing this declaration to explain certain impacts of Executive Order titled "Protecting the Meaning and Value of American Citizenship" January 20, 2025) (the "Executive Order"), which revokes birthright citizenship for certain newly-born children of immigrants in the United States, on the State of New York's health insurance programs.

4. DOH's mission is to protect and promote health and well-being for all, building on a foundation of health equity. To support that goal, DOH performs many functions, including regulating healthcare facilities and overseeing the registration of vital events such as births.

New York Health Insurance and Eligibility Rules

5. Within DOH, the Office of Health Insurance Programs administers several programs through the NY State of Health Marketplace that enable qualifying New York residents to access free or low-cost healthcare coverage.

6. Publicly-funded health insurance programs in New York include: Medicaid[1], Child Health Plus[2] (New York's Children's Health Insurance Program, which includes federal- and state-

---

[1] The term "Medicaid," as used throughout, means the New York State- and federally-funded healthcare program for low-income New Yorkers whose income and/or resources are below certain levels. It also includes state-funded Medicaid for individuals who are ineligible for federally funded Medicaid due to their immigration status. Eligible populations include children, pregnant women, single individuals, families, and individuals certified blind or disabled. In addition, certain persons with medical bills may be eligible for Medicaid if paying such bills allows them to spend down their income and resources to meet required Medicaid income levels. Medicaid enrollees do not pay premiums and have little to no out-of-pocket costs for many services. The term "Medicaid" does not include the Essential Plan, Child Health Plus, or Qualified Health Plans.

[2] Eligibility for Child Health Plus begins where Medicaid eligibility ends (223 percent of the federal poverty level for children under 1 year old and 154 percent of the federal poverty level for children age 1 year and older; children are eligible for subsidized coverage with incomes up to 400 percent of the federal poverty level. There is no Child Health Plus premium for children in households with incomes below 223 percent of the federal poverty level, and a sliding scale premium for those in households with incomes above 222 up to 400 percent of the federal poverty level. Households with incomes above 400 percent of the federal poverty level have the option to purchase Child Health Plus at full premium. 96 percent of children enrolled in Child Health Plus are enrolled with no premium or sliding scale premiums, and approximately four percent are enrolled with full premiums.

2

funded CHIP and New York's state extension), the Essential Plan[3] ("EP") (New York's 1332 State Innovation Waiver), and Qualified Health Plans ("QHP")[4].

7. As of October 2024, a total of 2,461,497 children in New York were enrolled in federal- and state- funded Medicaid ("Federal-State Medicaid") and Child Health Insurance Program, of whom 571,386 were enrolled in Child Health Plus. Some of the children enrolled in Child Health Plus were enrolled in federal- and state-funded CHIP, and some were enrolled in New York's state extension.

8. In New York, Medicaid and Child Health Plus provide comprehensive healthcare coverage for a wide range of services, including primary care, hospitalization, laboratory tests, x-rays, prescriptions, mental health care, dental care, preventive screenings, and more.

9. Eligibility for New York's publicly funded health insurance programs, including eligibility for Medicaid and Child Health Plus depends on age, New York State residency, household size, immigration status, and household income. Specifically, a child must not be eligible for Medicaid or have other comprehensive insurance or enrollment in or access to state health

---

[3] The Essential Plan covers New Yorkers between the ages of 19-64 who are not eligible for Medicaid and have incomes up to 250-percent of the federal poverty level. The Essential Plan provides comprehensive benefits including free preventive care and dental and vision with no annual deductibles and low copayments. Essential Plan is currently authorized under Section 1332 of the Affordable Care Act as a State Innovation Waiver, which allows states to pursue innovative strategies for providing residents with access to high-quality, affordable health insurance. Section 369-ii of the NY Social Services Law authorizes State action under the Waiver. New York's Section 1332 State Innovation Waiver was approved effective April 1, 2024 to expand Essential Plan eligibility to consumers up to 250 percent of the Federal Poverty Level, and is effective through December 31, 2029. New York received approval of a Waiver Amendment to extend subsidies to certain Qualified Health Plan enrollees under the Waiver, with an effective date of January 1, 2025.

[4] Qualified Health Plans are health plans that have been certified by and are available through the Marketplace in accordance with the Affordable Care Act and federal regulations. 42 § U.S.C. 18021(a). Enrollment in a Qualified Health Plan with financial assistance is available based on income and the cost of available health plans ,for residents who do not have access to other affordable health insurance that meets minimum essential coverage.

benefits coverage (New York State Health Insurance Program or NYSHIP) to be eligible for Child Health Plus.

10. In general, children under the age of 18 (i) meet the income eligibility requirement for Medicaid in New York if their household's modified adjusted gross income ("MAGI") is less than 223% of the federal poverty level (FPL) for children under age 1 and 154% of the FPL for children between the ages of 1 and 18, and (ii) meet the income eligibility requirement for subsidized Child Health Plus coverage if their household's MAGI is less than 400% of the FPL.  Children with household income over 400% of the FPL who are otherwise eligible may purchase coverage at the full cost.

11. For a child to be eligible for Federal-State Medicaid or CHIP, they must also be a U.S. citizen or "lawfully residing," as that term is defined by federal law.

12. Most New York children under age 19 who do not qualify for Federal-State Medicaid because they are not U.S. citizens or "lawfully residing" are eligible for Child Health Plus, and the cost of providing that coverage is fully funded by the state.

13. New York implemented Child Health Plus because access to healthcare, particularly to primary care, makes children and communities healthier, and it is a fiscally responsible investment in the future of New York children.

14. The increased enrollment of children in New York through Child Health Plus has had a positive impact on public health in the state. Children enrolled in health insurance are more likely to receive preventative care services, including vaccinations.  This reduces the need for more intensive health care treatments, including emergency care, as illnesses develop.  It also reduces the financial burden on health care providers from providing care to uninsured individuals and ensures that families are not left with medical bills that they are unable to

4

pay. In addition, sick children with health insurance coverage are more likely to see a health care provider and receive treatment, limiting the spread of infectious illnesses across the state.

15. Having insurance coverage also makes it less likely that children will have to visit an emergency room to treat preventable illnesses because it is more likely that they will receive medical care before a treatable medical issue becomes an emergency. This reduces the resource strain and uncompensated care burden on hospitals.

<u>Healthcare Coverage for Newborns</u>

16. Many children born in the United States and residing in New York whose family income is at or below 400% of the Federal Poverty Level are eligible for New York public health insurance.

17. Presently, all children born in New York are U.S. citizens, regardless of the immigration status of their parent(s).

18. Thus, at present, public health insurance coverage for newborns born in New York State is funded jointly by the state and federal government, either through Medicaid or Child Health Plus.

19. Most healthy newborns remain in the hospital for two or three days after delivery. During this time, they receive routine postnatal care, including a vitamin K injection, antibiotic eye ointment, screening tests (e.g., heel-prick blood test, hearing screening), and hepatitis B vaccination.

20. Additionally, the American Academy of Pediatrics recommends that newborns see a doctor or nurse for a "well-baby visit" six times before their first birthday, including within the first

5

3-5 days, the first month, the second month, the fourth month, the sixth month, and the ninth month after birth.

21. Within the first year of life, babies may also need to visit a doctor when they appear ill and may require testing or prescription medication.

22. Children ages 1-18 typically have a range of health care needs that require services from various health care providers.  For example, children in New York must show proof of certain immunizations within 14 days of starting school, unless they have an exemption for medical reasons.

Fiscal Impact of Revoking Birthright Citizenship

23. New York spends on average $299 per member per month on non-disabled children enrolled in Medicaid.  New York currently pays approximately $272 per member, per month (totaling $3,264 per member per year) for children enrolled in its Child Health Plus program. As noted above, the federal government generally covers 50 percent of these costs for children enrolled in Federal-State Medicaid and 65 percent for children enrolled in Child Health Plus.

24. However, if a low-income child were not eligible for Federal-State Medicaid or CHIP, New York would not receive that federal assistance, and would cover the full cost of health insurance coverage for the newborn through Child Health Plus.

25. In 2023, approximately 100,000 or approximately 49% of births in New York State are enrolled in Federal-State Medicaid.  Assuming that as a result of the Executive Order certain children born in New York will no longer be considered citizens, within one year of the revocation of birthright citizenship, a substantial portion of these children would be eligible for federally participating Federal-State Medicaid but for their new status as non-citizens.

26. DOH would need to immediately begin planning for this potential loss of federal funding and would need to determine how to offset this loss to pay for coverage if newborns were shifted to state only funding through Child Health Plus. This includes reassigning staff from other priorities, hiring contractor support, changing information technology infrastructure, and expanding existing financial and programmatic support contracts to encompass the new scope of work this would entail. These costs increase dramatically the longer it takes CMS and the federal government to issue Medicaid specific impact guidance on this new policy.

<u>Eligibility Verification Process for Children on Federal-State Medicaid and CHIP</u>

27. The State of New York fully funds public health insurance for children who meet the income eligibility guidelines for Federal-State Medicaid or CHIP, but do not qualify for those programs because they are not United States citizens or "qualified aliens."

28. When a child's birthing parent is enrolled in Federal-State Medicaid, the DOH automatically enrolls that child in Medicaid, as a "deemed newborn." This is authorized by 42 C.F.R. § 435.117, which requires States to provide Medicaid coverage from birth to a child's first birthday if the child's birthing parent was eligible for and received Federal-State Medicaid at the time of the child's birth. Newborns are not "deemed" in Child Health Plus and must proactively apply for coverage as it is not automatic.

29. New York State utilizes the hospital newborn reporting system to automatically deem and enroll an eligible child in Federal-State Medicaid. The eligibility system currently relies on the fact that a newborn was born in a New York health care facility provided through the hospital newborn reporting system as proof of citizenship, qualifying the newborn for Federal-State Medicaid.

30. Under the Executive Order, DOH will have to amend its existing processes to determine whether newborn children are eligible for Federal-State Medicaid because they can no longer rely on the fact that a child was born in the United States to confirm citizenship status. For example, the intake process including the booklet the parents complete in the hospital when the child is born would need to be revised to collect the immigration status of the birthing parent. Hospitals would only report children who appear eligible for Federal-State Medicaid through this system. Hospitals would need to be trained about what cases to report. Quality assurance reviews would need to occur to be sure the hospitals appropriately report the births that are Medicaid eligible. Since newborns are not deemed in Child Health Plus as they are for Medicaid, the parent/guardian would be required to apply for coverage on NY State of Health. For purposes of Child Health Plus, as long as a completed application is submitted within 60-days of the date of birth, coverage can be retroactive to the first date of the month of the child's date of birth. This may create a gap in coverage for the child if the application is not completed within this timeframe, thus creating the potential for families to forgo needed care and placing a strain of uncompensated care on the provider community.

31. The DOH would incur significant costs to revise the process hospitals follow for reporting births to address changes in citizenship rules for newborns. This would require significant planning to understand the new rules governing U.S. citizenship for newborn children, to identify and determine the kinds of evidence that would suffice as proof of citizenship, to modify the intake process/booklet the parent completes in the hospital, and to develop and implement guidance and training for Department and State agency staff as well as for hospital staff statewide.

32. DOH would incur significant costs to train staff, partners, and healthcare providers on the new newborn reporting rules and procedures. DOH would also need to revise existing guidance documents and manuals regarding eligibility rules and procedures which will involve significant effort. A quality assurance component would need to be added to ensure hospitals are reporting correctly.

33. It would likely take years to make the necessary updates to the process and perform the necessary training to ensure that it can be deployed effectively.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this twenty-first day of January, 2025, in Niskayuna, NY.

*[signature]*

Gabrielle Armenia
Director, Division of Eligibility and Marketplace Integrity
Office of Health Insurance Programs
New York Department of Health

9