# EXHIBIT V

1  DAVID CHIU, SBN 189542
   City Attorney
2  YVONNE R. MERÉ, SBN 173594
   Chief Deputy City Attorney
3  SARA J. EISENBERG, SBN 269303
   Chief of Complex and Affirmative Litigation
4  MOLLIE M. LEE, SBN 251404
   Chief of Strategic Advocacy
5  DAVID S. LOUK, SBN 304654
   MOLLY J. ALARCON, SBN 315244
6  Deputy City Attorneys
   Fox Plaza
7  1390 Market Street, 6th Fl.
   San Francisco, California 94102-5408
8  Telephone:    (415) 505-0844
   Facsimile:    (415) 437-4644
9  E-Mail:       David.Louk@sfcityatty.org

10

11
   *Attorneys for Plaintiff*
12 CITY AND COUNTY OF SAN FRANCISCO

13

14                    UNITED STATES DISTRICT COURT

15                    FOR THE DISTRICT OF MASSACHUSETTS

16 | STATE OF NEW JERSEY, *et al.*      | Case No.    25-cv-10139
17 |      Plaintiffs,                   | **DECLARATION OF PERI WEISBERG**
18 |      vs.
19 | DONALD J. TRUMP, *et al.*
20 |      Defendants.

21

22

23

24

25

26

27

28

Declaration of Peri Weisberg in Support of Motion          1          n:\cxlit\li2025\250586\01813953.docx

I, Peri Weisberg, declare as follows:

1. I am a resident of the State of California. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the City and County of San Francisco's Human Services Agency ("SF HSA"). I work for SF HSA's Planning Unit as a Principal Administrative Analyst.

3. In this role, among other responsibilities, I am responsible for analyzing and understanding the benefits programs administered by SF HSA. This includes analyzing program participation trends, understanding and evaluating financial and budgetary information, and assessing federal, state, and local policy proposals. My role also includes project management and strategic planning.

4. I have performed these and related duties at SF HSA since 2016. I have a Master's Degree in Public Policy from the University of California, Berkeley, and a Bachelor's Degree in Public Policy from the University of Michigan. I have thirteen years of work experience in the field of social services.

5. I am providing this declaration to explain certain impacts of the executive order titled "Protecting the Meaning and Value of American Citizenship," issued on January 20, 2025 (the "Executive Order"), which revokes birthright citizenship for children born in the United States after February 19, 2025 to (i) a mother who is unlawfully present or who is lawfully present in the United States but on a temporary basis, and (ii) a father who is neither a citizen nor a lawful permanent resident.

6. As described below, that Executive Order will inflict significant harm upon SF HSA's efforts to provide newborn San Franciscans and their families with necessary aid and assistance, and will reduce federal funding flowing to the City and County of San Francisco.

### CalWORKs and CalFresh

7. SF HSA administers the federal aid programs Temporary Assistance to Needy Families ("TANF") and Supplemental Nutrition Assistance Program ("SNAP"), which in California are called CalWORKs and CalFresh, respectively.

8. CalWORKs provides temporary financial assistance and services to eligible families with children, including cash assistance, food assistance, child care subsidies, employment services, mental health counseling, and sometimes housing assistance. CalFresh provides food assistance to low-income individuals in need.

9. Federal funding to California, which is in turn distributed to SF HSA, comprises a substantial portion of the aid administered through those assistance programs. In addition to amounts received by recipients, San Francisco receives funding to administer each program based, in part, on the number of recipients.

10. However, federal funding is only provided to States and localities to administer aid to those eligible under federal criteria, which restrict aid to citizens (with limited exceptions not relevant to the effects of the Executive Order). In practice, and by law, verification of eligibility is tied to proof of a valid social security number (SSN). SF HSA verifies eligibility for CalWORKs and CalFresh with proof of a valid SSN.

11. Because every newborn in San Francisco is presumptively a U.S. citizen, every otherwise-eligible newborn San Franciscan is eligible for aid (as distributed to their family) as soon as SF HSA is alerted to their birth. While enrollment generally begins almost immediately after birth for the family of every otherwise-eligible newborn, by law, eligibility verification and administration of aid by SF HSA must eventually be linked to proof of a valid social security number (SSN) for both CalWORKs and CalFresh.

**Impact of Executive Order**

12. CalWORKs and CalFresh are two critical aid assistance programs that help newborn San Franciscans and their families. Under California law, San Francisco has a responsibility to support all poor and indigent residents not otherwise supported. CalWORKs and CalFresh are two pillars of San Francisco's ability to fulfill its responsibility to its residents.

13. San Francisco does so in part by providing, for example, in-kind food assistance and free diaper programs for residents who are not otherwise eligible for other aid assistance programs, or who find themselves with unmet needs despite other forms of assistance. These aid expenditures are primarily funded directly from San Francisco's general fund.

14. If implemented, the Executive Order will not only interfere with the administration of CalWORKs and CalFresh operated by SF HSA, impairing the welfare and wellbeing of San Francisco's residents, but it will also reduce the amount of funding San Francisco receives to provide assistance to newborns and their families.

15. SF HSA's administration of CalWORKs and CalFresh is structured around the significant reimbursements and direct funding streams from the federal government by way of the State of California. Federal financial participation generally reimburses approximately fifty percent of SF HSA administrative costs related to CalFresh. Administrative costs in CalFresh include the costs of operating in-person and telephone service centers, employing staff to make eligibility determinations, maintaining technology systems, ensuring program integrity, and promoting awareness of the program to eligible individuals, among other activities. For CalWORKs, program funds from the federal and state governments are distributed to SF HSA in a single allocation that supports eligibility determination and other administration costs, the provision of employment services to CalWORKs participants, and additional supports for pregnant and parenting teens. In separate, additional allocations, federal funds from the TANF block grant are combined with state funds to support other services SF HSA administers to CalWORKs participating families, including child care subsidies and home visiting services. In addition to these reimbursements to SF HSA for administration and direct services to participants, the federal government funds the cost of aid payments to federally-eligible participants, either in whole (in the case of CalFresh) or in part (in the case of CalWORKs). Any loss of funding would have serious consequences for SF HSA and the thousands of affected individuals it serves.

16. I understand that the federal government action of denying SSNs to newborns born to certain immigrants in San Francisco will result in those newborns being treated as non-citizens with no legal status. That will result in the direct loss of federal funding to California and to San Francisco for aid provided to those newborns, because eligibility for federally matched programs such as TANF and SNAP depends on the individual's eligibility under federal law, which necessarily turns on their citizenship status, as verified by a valid SSN.

17. In particular, federally matched coverage for newborns provided under CalWORKs or CalFresh will be lost for the predictable number of newborns in San Francisco who will fall under the ambit of the Executive Order, since those programs are not available to non-citizens (with limited exceptions not relevant to the effects of the Executive Order). This will necessarily result in reduced federal funding and a shift to San Francisco of funding responsibility for this group of individuals.

18. In addition, if implemented, the Executive Order likely will interfere with and complicate SF HSA's administration of these programs.

19. SF HSA will need to immediately begin planning for the potential loss of federal funding. This includes reassigning staff from other priorities, hiring contractor support, and expanding existing programmatic support contracts to encompass the new scope of work this would entail.

20. SF HSA would also incur significant costs to train staff, partners, and aid assistance providers on any updated eligibility system and procedures, and to revise existing guidance documents, manuals, and outreach materials regarding eligibility rules and procedures.

21. Because so many changes will need to be made to implement CalWORKs and CalFresh under this new citizenship rule, it may be difficult for San Francisco to predict its budgeting in providing CalWORKs and CalFresh going forward, as well as the additional support San Francisco will need to expend from its general fund to substitute for the loss of aid assistance from these programs.

22. Finally, San Francisco could also face monetary penalties as a result of the Executive Order. For example, San Francisco is required by state law and regulation to immediately extend CalWORKs and CalFresh benefits to otherwise-eligible families of newborns shortly after their birth. However, such individuals will eventually be deemed ineligible solely due to the denial of a SSN as a result of the Executive Order, and so San Francisco will have a substantially increased overpayment error rate—the rate of payments to families enrolled on programs who are ultimately deemed ineligible, or eligible for a lower benefit amount. Pursuant to general regulation, an elevated overpayment error rate will expose San Francisco to significant financial penalties over time. *See* 7 C.F.R. § 275.23(d)(2).

23.     I estimate the approximate per-person loss of assistance to be $189 per month in food assistance benefits (from CalFresh) and $409 per month in cash assistance (from CalWORKs). This is based on the total benefit amount provided for each program in a typical month, divided by the total number of aided persons in the program that month (including all eligible household members). That is a conservative estimate, because it does not include the value of other support that often complements these benefits, such as housing support and child care vouchers for families. For example, housing support for families frequently amounts to $1,600 or more per family. These estimates also do not include amounts for benefit administration received by San Francisco.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2025, at Oakland, California.

*Peri Weisberg*
PERI WEISBERG