## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW JERSEY, et al.,

     *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

     *Defendants*.

Case No.: 1:25-cv-10139

Honorable Leo T. Sorokin

## [PROPOSED] BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS AND LOCAL GOVERNMENT OFFICIALS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Jonathan B. Miller (BBO#663012)
Public Rights Project
490 43rd Street, #115
Oakland, CA 94609
jon@publicrightsproject.org

## TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................................1

ARGUMENT ......................................................................................................3

I.  PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE
    MERITS .....................................................................................................3

II. A NATIONWIDE INJUNCTION IS NECESSARY TO PROTECT
    THE PUBLIC INTEREST ...........................................................................5

    A.  Immediate Economic Harms to Communities from
        Stripped Benefits ...............................................................................5

    B.  Immediate Administrative Burdens to Local
        Governments ....................................................................................10

    C.  The Need for Nationwide Relief ........................................................11

CONCLUSION ..................................................................................................13

Appendix A – List of *Amici Curiae* ....................................................................16

## TABLE OF AUTHORITIES

### CASES

*Arizona v. United States*,
  567 U.S. 387 (2012)..........................................................................................12

*Ashcroft v. Am. Civ. Lib. Union*,
  542 U.S. 656 (2004)............................................................................................3

*Desert Palace, Inc. v. Costa*,
  539 U.S. 90 (2003)..............................................................................................4

*Hecht v. Malley*,
  265 U.S. 144 (1924).............................................................................................5

*HIAS v. Trump*,
  985 F.3d 309 (4th Cir. 2021) ...........................................................................12

*INS v. Rios-Pineda*,
  471 U.S. 444 (1985).............................................................................................4

*Plyler v. Doe*,
  457 U.S. 202 (1982)....................................................................................4, 8, 9

*Shapiro v. United States*,
  335 U.S. 1 (1948).................................................................................................5

*United States v. Wong Kim Ark*,
  169 U.S. 649 (1898)........................................................................................3, 4

### STATUTES

8 U.S.C. § 1401(a) ............................................................................................3, 5

8 U.S.C. § 1611(a), (c)(1)(B).................................................................................6

8 U.S.C. § 1641(b).................................................................................................6

20 U.S.C. § 1412(a)(1)...........................................................................................8

### CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. 14, § 1 ..................................................................................1

OTHER AUTHORITIES

Birth Records Or Death Certificates From The Cook County Clerk's
    Office, Cook County, Illinois...........................................................................10

Center on Budget and Policy Priorities, A QUICK GUIDE TO SNAP
    ELIGIBILITY AND BENEFITS, September 30, 2024...............................................6

George Washington, FAREWELL ADDRESS TO THE PEOPLE OF THE UNITED
    STATES, Sept. 19, 1796 ....................................................................................2

How to Request a Birth or Death Certificate, Kansas City, Missouri ...................10

The Centers for Medicare and Medicaid Services, DELIVERING SERVICES
    IN SCHOOL-BASED SETTINGS: A COMPREHENSIVE GUIDE TO MEDICAID
    SERVICES AND ADMINISTRATIVE CLAIMING, 2023 ............................................8

The Pew Charitable Trusts, MAPPING PUBLIC BENEFITS FOR IMMIGRANTS
    IN THE STATES, Sept. 24, 2014 ..........................................................................6

Tracy Vericker, Daniel Kuehn, and Randy Capps, TITLE IV-E FUNDING:
    FUNDED FOSTER CARE PLACEMENTS BY CHILD GENERATION AND
    ETHNICITY, The Urban Institute, May 2007.......................................................8

U.S. Citizenship and Immigration Services, TRANSACTION CHARGES.................11

U.S. Citizenship and Immigration Services, VERIFICATION PROCESS ..................11

U.S. Department of State, GET CITIZENSHIP EVIDENCE FOR A U.S.
    PASSPORT .................................................................................................10, 11

USCIS, HOW DO I GET MY PROOF OF CITIZENSHIP? ............................................10

## STATEMENT OF INTEREST

*Amici* are local governments and local government officials representing 72 jurisdictions across 24 states.[1] *Amici* write in strong support of Plaintiffs' motion for a preliminary injunction because of the immense harms the Executive Order entitled "Protecting the Meaning and Value of American Citizenship," ("Order")—the subject of Plaintiffs' lawsuit—will cause if allowed to go into effect.

Since the enactment of the Fourteenth Amendment, it has been well understood that children born "in the United States, and subject to the jurisdiction thereof," are American citizens. U.S. CONST. Amend. 14, § 1. With very limited exceptions (such as for children of foreign diplomats not subject to U.S. "jurisdiction") that is true regardless of the immigration status of their parents. This bedrock understanding of citizenship is reflected in our communities. Children born on our soil attend our schools. When they are sick, they obtain services through local health providers. If they are neglected and abused, our child protective services step forward to help them. When they are victims of a crime, they are entitled to the full panoply of victim rights afforded to any resident. If they *commit* a crime, they are "subject to the jurisdiction" of our state and federal laws and can be punished just like any other member of our community.

As they grow older, those who are Americans by virtue of birth serve our Nation (and our communities) with distinction. They serve in our military and shed blood for our country. They are our frontline workers, medical providers, and law enforcement personnel. They start businesses, teach schoolchildren, and contribute to our local and national economies. They become leaders in our communities, across a variety of sectors. And when the time comes, they start

---

[1] No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *amici* is listed at Appendix A.

American families of their own. Like all "citizens *by birth or choice*," those born on American soil "concentrate [their] affections" in "the name of American."[2]

The Order thus stands at odds not just with the Constitution, but with our American values. It rejects the contributions of "citizens by birth," who have helped to build—and defend—our Nation and our local communities. At the local level, the Order undercuts our social fabric and cohesion by creating a permanent class of people with unequal rights. If allowed to go into effect, the Order will cause residents to be restricted from full participation in the community. They will be unable to vote, serve on juries, receive federal financial aid for higher education, and run for office. Their participation will be further restricted by lack of work authorization, ineligibility for certain federal benefits, and risk of deportation. These direct effects will cause broader harms, including to local economies, education rates, and public health outcomes.

*Amici* write separately because local governments face immediate harms from the Order that overlap with yet are distinct from the harms individuals, organizations, and states must confront. Among other things, local governments must manage the administrative confusion created by the Order. Because some local governments issue birth certificates, they will need to develop new systems to ascertain the citizenship of children born in their local hospitals and within city or county lines. The Order also forces *amici* to develop new protocols for any programs requiring citizenship verification, because traditional birth certificates will no longer suffice as proof of citizenship. Local communities will also contend with the personal impact to their community members, such as restrictions on federally funded health care coverage, child services, and educational benefits. As a result, many local governments will be forced to fund such services themselves, further draining already scant local resources.

---

[2] George Washington, FAREWELL ADDRESS TO THE PEOPLE OF THE UNITED STATES (Sept. 19, 1796) (emphasis added).

## ARGUMENT

The Order seeks to ignore the text of the U.S. Constitution, overrule binding Supreme Court precedent, and set aside an Act of Congress, through unilateral executive action. This Court should not permit it to stand.

*Amici* cities, counties, and representatives come before this Court to protect their community members and their own interests by supporting Plaintiffs' request for an injunction against the President's executive order. It is difficult to imagine a more compelling circumstance for the issuance of nationwide relief. The Order reflects a unilateral attempt to alter the Constitution by attacking a bedrock legal tenet on which this country is built. "[P]laintiffs," moreover, "have demonstrated that they are likely to prevail on the merits," and in the absence of a preliminary injunction they will suffer irreparable injury. *Ashcroft v. Am. Civ. Lib. Union*, 542 U.S. 656, 666 (2004). In particular, the Order threatens to cause administrative confusion and burden, financial harm to state and local governments directly, and immeasurable harm to individuals living in *amici's* jurisdictions. Declining to enter an injunction in this matter will impose grave harm to the public interest and to the very fabric of our country.

## I.   PLAINTIFFS ARE HIGHLY LIKELY TO SUCCEED ON THE MERITS

In addition to creating an unworkable citizenship system in practical terms, the Order is a flagrant attack on a pillar of American law. It contradicts the plain text of the U.S. Constitution and violates the Immigration and Nationality Act ("INA"), as codified by 8 U.S.C. § 1401(a). The Order also runs headlong into more than a century of Supreme Court precedent holding that babies born on U.S. soil are citizens, regardless of the immigration status of their parents. *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898). Existing law creates only a very narrow exception, for children born to diplomats and passengers on foreign vessels who are not subject to prosecution

under U.S. law for crimes committed in the United States. *See also Plyler v. Doe*, 457 U.S. 202, 215 (1982) (holding that undocumented children are "within [the] jurisdiction" of a State). No unilateral act of the President can overcome such clearly established law.

To start, the text of the Constitution is unambiguous. As such, the "judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (internal quotations omitted). The Citizenship Clause is enshrined in the Fourteenth Amendment, Section 1: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. CONST. Amend. 14, § 1. More than a century ago, the Supreme Court definitively concluded that this clause includes the children of immigrants born on U.S. soil:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens […] The Amendment, *in clear words and in manifest intent*, includes the children born within the territory of the United States of all other persons, of whatever race or color, domiciled within the United States. Every citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States.

*Wong Kim Ark*, 169 U.S. at 693 (emphasis added). That inescapable conclusion has been affirmed multiple times by the Supreme Court in the more than 125 years since the decision. *See, e.g.*, *INS v. Rios-Pineda*, 471 U.S. 444, 446 (1985) (unanimously noting undocumented resident "had given birth to a child, who, born in the United States, was a citizen of this country"). The Order ignores both the plain language of the Fourteenth Amendment and the Supreme Court's affirmation of its meaning.

Additionally, Congress has made clear, through the INA, that birthright citizenship is enshrined into federal law. Enacted in 1952, the INA provides that any "person born in the United States, and subject to the jurisdiction thereof" is a "citizen[] of the United States at birth." 8 U.S.C.

4

§ 1401(a)). The INA mirrors the text of the Fourteenth Amendment and should be afforded the same meaning as the Citizenship Clause was understood to have at the time of enactment. *See Shapiro v. United States*, 335 U.S. 1, 16 (1948); *see also Hecht v. Malley*, 265 U.S. 144, 153 (1924) (Congress "must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment."). Thus, for this Order to be given effect, it must be permitted to override the settled understanding of *both* the Constitution and a federal statute. That cannot be.

## II.     A NATIONWIDE INJUNCTION IS NECESSARY TO PROTECT THE PUBLIC INTEREST

*Amici* fully support Plaintiffs' request for a nationwide injunction, as any other form of relief would be inadequate. The harms to Plaintiffs, state and local governments, and individuals are immediate and significant. As soon as the Order's attempt to rewrite the Constitution goes into effect, children and families will be immediately deprived of access to needed benefits. State and local governments issuing birth certificates will need to find new ways for parents to establish proof of citizenship for their children. Likewise, localities will be forced to create new procedures to confirm citizenship for participation in a host of activities, including certain benefits programs. The impacts will be felt not just in this district, but across the country. The scope of the harm, the clarity of the violation, and the need for uniform rules regarding citizenship counsel in favor of a nationwide injunction.

### A.     Immediate Economic Harms to Communities from Stripped Benefits

The Order throws public benefit structures into chaos because of their close connection to citizenship status. As a result, families will be deprived of resources needed to support their children. These common-sense and often necessary benefits make it possible for children and families to thrive and contribute to the community without fear of hunger, lack of housing, or

inability to access health care. If these benefits are cut off, local governments and community-based groups will be left to fill in the gaps through the delivery of direct services.

Major benefit programs, including Medicaid, CHIP, SNAP, and TANF, are funded in whole or part by the federal government and regularly administered by state and/or local governments. Per federal rules, funding or reimbursement is only available to U.S. citizens and qualified immigrants, such as lawful permanent residents, refugees, and asylum recipients. 8 U.S.C. §§ 1611(a), (c)(1)(B); 1641(b). Individuals with status from work visas, student visas, or tourist visas are generally not considered "qualified" immigrants for purposes of these programs. *See* 8 U.S.C. § 1641(b). Nor are individuals who lack any legal status.[3] *Id*. Accordingly, the Order would strip newborns and young children born on U.S. soil of crucial public benefits. Before now, such children—born and residing in the United States—would be immediately eligible for, at a minimum, health care through CHIP and SNAP benefits for nutrition needs if their family met the income qualifications. But if the Order goes into effect, those benefits will be snatched away from countless children.

The immediate harms will be significant. Families will struggle to make ends meet. Some, on tight budgets, will be forced to pay for their children's healthcare out-of-pocket, increasing the risk of experiencing housing instability or other forms of economic harm. Localities, as the unit of government closest to the ground, will be forced to pick up the pieces and address these cascading harms. Just as disturbing, some families may become reluctant to utilize any government services *at all* (due to fear of removal) which can have its own public health consequences.

---

[3] The Pew Charitable Trusts, MAPPING PUBLIC BENEFITS FOR IMMIGRANTS IN THE STATES (Sept. 24, 2014), https://www.pewtrusts.org/en/research-and-analysis/issue-briefs/2014/09/mapping-public-benefits-for-immigrants-in-the-states; Center on Budget and Policy Priorities, A QUICK GUIDE TO SNAP ELIGIBILITY AND BENEFITS (Sept. 30, 2024), https://www.cbpp.org/research/food-assistance/a-quick-guide-to-snap-eligibility-and-benefits.

At this point, the sheer breadth of the Order bears some emphasis. Though the rhetoric surrounding the Order has focused on undocumented noncitizen parents, the Order would deny U.S. citizenship—and the associated public benefits—not just to children of undocumented immigrants, but to those whose parents are present in our communities on work or student visas. In communities that maintain institutions of higher education, countless children of such higher-education students would be ineligible for basic programs to ensure their health and well-being. The same is true for communities whose local economies depend on those who are present in our country on work visas. The Order also creates the absurd possibility that while a parent may have the legal right to remain in this country, their child born on American soil may be at risk of deportation. Such family separation would inevitably wreak untold havoc in communities. Of course, the Citizenship Clause applies categorically to "*[a]ll* persons born . . . in the United States, and subject to the jurisdiction thereof." U.S. CONST. Amend. 14, § 1 (emphasis added). But in seeking to rewrite the Constitution, the Order will impose severe, unconstitutional harm not just on the children of undocumented parents, but on countless families that came to this country through accepted means.

In all events, local governments, among others, will be left to fill in the gaps. Where tight budgets permit it, jurisdictions may provide resources to their residents above and beyond federal baselines and regardless of immigration status. *Amici* might create separate programs to support the children that the Order leaves behind, which will impose additional costs to cash-strapped local governments and their residents. To be clear: local governments which fill these gaps will be forced to do more with less. Public health clinics, either run by or funded in part by *amici*, will lose important funding streams such as Medicaid reimbursements. Economic uncertainty and the loss

of public insurance coverage may cause these families to rely even more on public health services, further straining the system.

And the consequences of the Order will radiate outwards not just into *amici's* healthcare systems, but into their schools as well. Federal law requires schools to provide services to students with disabilities under the Individuals with Disabilities in Education Act (IDEA). 20 U.S.C. § 1412(a)(1). But again: the funding stream for special-education services relies partially on federal reimbursement for children who are citizens or otherwise "qualified aliens." Schools receive partial reimbursement from the federal government to support students with special needs who qualify for Medicaid.[4] Under the Order, schools will lose this funding for impacted students and will again be forced to fill these funding gaps to continue providing mandated services to students in their districts. Similarly, *amici* who administer foster care programs and rely on federal Title IV-E funds for foster care expenses, will be forced to bear the financial burden to provide these life-altering services.[5]

Over forty years ago, in *Plyler*, the Supreme Court held that states could not bar undocumented schoolchildren from their public schools. In so doing, the Supreme Court cautioned against the creation of "a permanent caste of undocumented resident aliens . . . denied the benefits that our society makes available to citizens and lawful residents." 457 U.S. at 218–19. The Court recognized that "a State may withhold its beneficence from" undocumented adults, "whose very

---

[4] The Centers for Medicare and Medicaid Services, DELIVERING SERVICES IN SCHOOL-BASED SETTINGS: A COMPREHENSIVE GUIDE TO MEDICAID SERVICES AND ADMINISTRATIVE CLAIMING (2023), https://www.medicaid.gov/medicaid/financial-management/downloads/sbs-guide-medicaid-services-administrative-claiming.pdf.

[5] Tracy Vericker, Daniel Kuehn, and Randy Capps, The Urban Institute, TITLE IV-E FUNDING: FUNDED FOSTER CARE PLACEMENTS BY CHILD GENERATION AND ETHNICITY (May 2007), https://www.urban.org/sites/default/files/publication/46271/311461-Title-IV-E-Funding-Funded-Foster-Care-Placements-by-Child-Generation-and-Ethnicity.PDF.

presence within the United States is the product of their own unlawful conduct." *Id*. at 219. But it emphasized that the denial of benefits to "*children*" of undocumented persons "does not comport with fundamental conceptions of justice." *Id*. at 220 (emphasis added). "Visiting condemnation on the head of an infant," the Court continued, "is illogical and unjust." *Id*. (quoting *Weber v. Aetna Casualty & Surety Co*., 406 U.S. 164, 175 (1972) (cleaned up)). After all, "no child is responsible for his birth, and penalizing the … child is an ineffectual—as well as unjust—way of deterring the parent." *Id*.

When children are needlessly penalized and denied access to benefits, the harm is felt not just by the child, but by the community writ large. Speaking to the educational benefits at issue in *Plyler*, the Court reiterated that "education provides the basic tools by which individuals might lead economically productive lives *to the benefit of us all*." *Id.* at 221 (emphasis added). "We cannot ignore," the Court emphasized, "the significant social costs borne by our Nation when select groups are denied the means to absorb the values and skills upon which our social order rests." *Id.* Denying children needed benefits, the Court concluded, would ultimately lead to the creation of a permanent "underclass"—the existence of which will invariably fray "the fabric of our society." *Id.* at 219, 221.

The Order at issue here is at least as damaging to the "fabric of our society" as the restriction at issue in *Plyler*. In unilaterally seeking to rewrite the Constitution, the Order will deny an "underclass" of children benefits relating not just to their education, but to their health and their basic security as well. The Order, moreover, would strip citizenship (and benefits) not just from the children of undocumented adults, but also from children whose parents present in our country to work or pursue an education. Such draconian outcomes are wholly incompatible with "fundamental conceptions of justice." *Id.* at 220. And if the Order goes into effect, entire

communities will suffer. Local governments should not be forced to bear the burden of repairing the "fabric of our society" that will be so irreparably damaged by the Order.

### B.   Immediate Administrative Burdens to Local Governments

In addition to imposing draconian harms on children, families, and communities, the Order threatens to upend existing local administration of programs as well as the issuance of birth certificates. Typically—and reflecting the bedrock understanding that all children born in the United States and subject to its jurisdiction are citizens—proof of citizenship can be satisfied with a birth certificate demonstrating that a child was born in America.[6] However, any future instance where citizenship verification is required will demand more information for all individuals. Local governments routinely provide birth certificates for children born within their jurisdiction.[7] Birth certificates note the place of birth, which until now has sufficed to prove natural-born citizenship, but they do not document the citizenship of the parents. Under the Executive Order, a birth certificate, which is created by local or state governments, would no longer prove citizenship.

With a birth certificate no longer proving citizenship, existing systems will fail. Even children who are born to citizens or lawful permanent resident parents, and are thus born U.S.

---

[6]   *See, e.g.*, USCIS, How Do I Get My Proof of Citizenship?, https://www.uscis.gov/sites/default/files/document/guides/A4en.pdf ("If you were born in the United States, you do not need to apply to USCIS for any evidence of citizenship. Your birth certificate issued where you were born is proof of your citizenship."); U.S. Department of State, Get Citizenship Evidence for a U.S. Passport, https://travel.state.gov/content/travel/en/passports/how-apply/citizenship-evidence.html (listing a birth certificate as the only acceptable primary documentation of citizenship for a first-time passport applicant born in the United States).

[7] *See, e.g.*, Birth Records or Death Certificates from the Cook County Clerk's Office, Cook County, Illinois, https://www.chicago.gov/city/en/depts/other/provdrs/ccco/svcs/get_vital_records.html, and How to Request a Birth or Death Certificate, Kansas City, Missouri https://www.kcmo.gov/city-hall/departments/health/how-to-request-a-birth-or-death-certificate.

citizens under the Order, would lack sufficient documentation to verify their citizenship.[8] States and local governments will need to change the information provided on birth certificates or develop a process to verify citizenship, which will require time and expense. As a result, the Order will cause massive administrative dysfunction. For example, when a city resident applies for a federal public benefits program, *amici* may be involved in verifying the citizenship of applicants, either by (until now) checking the applicant's birth certificate or through "SAVE" (Systematic Alien Verification for Entitlements), a fee-based federal program that confirms the immigration status and/or the naturalized/acquired U.S. citizenship of a person not born in the United States.[9] This additional verification system is set up only for individuals who were born in another country.[10] With U.S. birth certificates no longer proving citizenship, if the Order goes into effect, local governments will functionally have no way to verify citizenship for a large majority of eligible residents.

### C.     The Need for Nationwide Relief

As *amici* have detailed above, the legal problems with the Order are significant and the harms extend well beyond this district and the parties to the litigation. Nationwide relief is most appropriate here.

---

[8] For example, even the acceptable *secondary* evidence of citizenship for a U.S. passport application must be evidence that the person was born in the United States. U.S. Department of State, GET CITIZENSHIP EVIDENCE FOR A U.S. PASSPORT, https://travel.state.gov/content/travel/en/passports/how-apply/citizenship-evidence.html.

[9] The FY2025 cost for non-federal agency searches is $1.50. U.S. Citizenship and Immigration Services, TRANSACTION CHARGES, https://www.uscis.gov/save/about-save/transaction-charges.

[10] The system's accepted forms of identification include documents issued to persons who immigrate into the U.S., such as an Alien Registration Number, Arrival or Departure Record, visa information, or a naturalization certificate. U.S. Citizenship and Immigration Services, VERIFICATION PROCESS, https://www.uscis.gov/save/about-save/save-verification-process.

To start, it would make little sense for relief to be limited given the need for uniformity. Issues of immigration and citizenship are national in scope. *See, e.g.*, *Arizona v. United States*, 132 S. Ct. 2492, 2494 (2012) (recognizing the federal government has "constitutional power to 'establish an uniform Rule of Naturalization'") (citing U.S. CONST. ART. I, § 8, cl. 4). Additionally, limited relief would create a strange divergence of rights across the country. As this case (and other cases) winds its way through the courts, some people would be subject to the Order while others are not, absent nationwide relief. Such a scenario would only add to the administrative burden imposed by the Order. Those determining citizenship based on place of birth would need to know when and where someone was born and then determine if they were protected by an injunction from this or another court at that moment in time. *See also HIAS v. Trump*, 985 F.3d 309, 326-27 (4th Cir. 2021) (affirming nationwide injunction when agencies "place[d] refugees throughout the country").

Many of the jurisdictions represented in this coalition of local governments and officials are not located in states where attorneys general or other parties are pursuing a case to enjoin the Order. Nevertheless, *amici*'s communities will suffer greatly from the Order. As outlined above (Part II.A), loss of federal benefits will have serious economic security and public health impacts. Absent nationwide relief, our jurisdictions may need to bring additional lawsuits, intervene in existing actions, or take other steps to ensure protection for our governments and our communities. That would be inefficient for our communities and the judiciary. Finally, the federal government suffers no prejudice from a nationwide injunction. After all, it has recognized birthright citizenship at least since ratification of the 14th Amendment.

## CONCLUSION

For the foregoing reasons and for the reasons provided by Plaintiffs, *amici* respectfully request this Court issue a preliminary injunction and enjoin the Order from going into effect.

Respectfully submitted,

*/s/ Jonathan B. Miller*
Jonathan B. Miller (BBO#663012)
Public Rights Project
490 43rd Street, #115
Oakland, CA 94609
jon@publicrightsproject.org
(510) 738-6788

Dated: January 28, 2025

## ADDITIONAL COUNSEL

YIBIN SHEN
City Attorney
2263 Santa Clara Avenue, Room 280
Alameda, CA 94501
*Attorney for the City of Alameda, California*

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall
301 East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann Arbor,*
*Michigan*

DEBORAH THOMAS
Acting City Attorney
P.O. Box 1546
Austin, TX 78767
*Attorney for the City of Austin, Texas*

EBONY M. THOMPSON
Acting City Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202
*Attorney for the City of Baltimore, Maryland*

ANN ANDERSON
Town Attorney
405 Martin Luther King Jr. Boulevard
Chapel Hill, NC 27514
*Attorney for Mayor Jessica C. Anderson and*
*the Town of Chapel Hill, North Carolina*

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago
121 N. LaSalle Street, Room 600
Chicago, IL 60602
*Attorneys for the City of Chicago, Illinois*

ZACHARY M. KLEIN
Columbus City Attorney
77 N. Front Street, 4th Floor
Columbus, OH 43215
*Attorney for the City of Columbus, Ohio*
KATIE MCLOUGHLIN
Acting City Attorney
1437 Bannock Street, Room 353
Denver, CO 80202
*Attorney for the City and County of Denver,*
*Colorado*

CHRISTINA SANCHEZ
El Paso County Attorney
320 S. Campbell Street, Suite 200
El Paso, TX 79901
*Attorney for the County of El Paso, Texas*

KRISTYN ANDERSON
City Attorney
City Hall, Room 210
350 S. Fifth Street
Minneapolis, MN 55415
*Attorney for the City of Minneapolis,*
*Minnesota*

SUSAN K. BLITCH
County Counsel
188 W. Alisal Street, 3rd Floor
Salinas, CA 93901
*Attorney for the County of Monterey,*
*California*

ALAN SEEWALD
City Solicitor
One Roundhouse Plaza, Suite 304
Northampton, MA 01060
*Attorney for the City of Northampton,*
*Massachusetts*

RYAN RICHARDSON
City Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
*Attorney for the City of Oakland, California*

SUSANA ALCALA WOOD
City Attorney
915 I Street, Fourth Floor
Sacramento, CA 95814
*Attorney for City of Sacramento, California*

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 W. Kellogg Boulevard
St. Paul, MN 55102
*Attorney for the City of St. Paul, Minnesota*

TONY LOPRESTI
County Counsel
70 W. Hedding Street East Wing, 9th Floor
San José, CA 95110
*Counsel for the County of Santa Clara,*
*California*

DOUGLAS T. SLOAN
City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa Monica,*
*California*

MIKE RANKIN
City Attorney
PO Box 27210
Tucson, AZ 85726-7210
*Attorney for the City of Tucson, Arizona*

LAUREN LANGER
City Attorney
Best Best & Krieger LLP
300 S. Grand Avenue, 25th Floor
Los Angeles, CA 90071
*Attorney for City of West Hollywood,*
*California*

## Appendix A – List of *Amici Curiae*

### Local Governments

City of Alameda, California

City of Ann Arbor, Michigan

City of Austin, Texas

City of Baltimore, Maryland

Town of Chapel Hill, North Carolina

City of Chicago, Illinois

City of Columbus, Ohio

City and County of Denver, Colorado

County of El Paso, Texas

City of Minneapolis, Minnesota

County of Monterey, California

County of Montgomery, Maryland

City of Northampton, Massachusetts

City of Oakland, California

City of Sacramento, California

City of St. Paul, Minnesota

County of Santa Clara, California

City of Santa Monica, California

Travis County, Texas

City of Tucson, Arizona

City of West Hollywood, California

16

## Local Government Leaders

Brenda Adams
*Supervisor, Town of Canaan, New York*

Elizabeth Alcantar
*Mayor, City of Cudahy, California*

Valarie Bachelor
*District 6 Director, Oakland Unified School District, California*

Katjana Ballantyne
*Mayor, City of Somerville, Massachusetts*

Nikki Fortunato Bas
*Supervisor, Alameda County Board of Supervisors, California*

Brian Beck
*Councilmember, City of Denton, Texas*

Sarah Benatar
*Treasurer, Coconino County, Arizona*

Johana Bencomo
*Mayor Pro Tem, City of Las Cruces, New Mexico*

Nancy Metayer Bowen
*Vice Mayor, City of Coral Springs, Florida*

Jennifer Brouhard
*Board Director, Oakland Unified School District, California*

Lisa Brown
*Clerk and Register of Deeds, Oakland County, California*
Rowena Brown
*Councilmember, City of Oakland, California*

Jackie Butler
*Precinct 1 Commissioner, El Paso County, Texas*

Chris Canales
*Councilmember, City of El Paso, Texas*

Dolores Ortega Carter
*Treasurer, Travis County, Texas*

17

Alma Castro
*Councilmember, City of Santa Fe, Mexico*

Markus Ceniceros
*Board Member, Littleton Elementary School District, Arizona*

Michael Chameides
*Supervisor, Columbia County Board of Supervisors, New York*

John Clark
*Mayor, Town of Ridgway, Colorado*

Laura Conover
*County Attorney, Pima County, Arizona*

Alison Coombs
*Councilmember At-Large, City of Aurora, Colorado*

Rock Copeland
*Councilmember, Erie County, Pennsylvania*

Christine Corrado
*Councilmember, Town of Brighton, New York*

Becky Corran
*Councilmember, City of Las Cruces, New Mexico*

Kara Davis
*District Attorney, Wasco County, Oregon*

Olgy Diaz
*Councilmember, City of Tacoma, Washington*

Leslie Dippel
*Executive Attorney, Travis County, Texas*

Katrina Doughty
*Board Director, Multnomah Education Service District, Oregon*

Dennis Michael Dvorchak
*Supervisor, Town of Hillsdale, New York*

Jack Eckblad
*District 4 Supervisor, Milwaukee County Board of Supervisors, Wisconsin*

Bubba Fish
*Councilmember, City of Culver, California*

Sommer Foster
*Township Trustee, Township of Canton, Michigan*

Vanessa Fuentes
*Mayor Pro Tem, City of Austin, Texas*

Adrian Garcia
*Precinct 2 Commissioner, Harris County, Texas*

Alyssa Garza
*Deputy Mayor Pro Tem, City of San Marcos, Texas*

Delia Garza
*Attorney, Travis County, Texas*

Kelly Girtz
*Mayor, Athens-Clarke County Unified Government, Georgia*

Caroline Gomez-Tom
*District 14 Supervisor, Milwaukee County Board of Supervisors, Wisconsin*

Leanne Greenberg
*Governing Board Member, Osborn School District, Arizona*

Jonathan Guzmán
*Vice Chair, Lawrence School Committee, Massachusetts*

Dan Hall
*Councilmember, City of Santa Monica, California*

Beau Harbin
*Legislator, Cortland County, New York*

Bear Heiser
*Mayor Pro Tem, City of Kyle, Texas*

Iliana Holguin
*Commissioner, El Paso County, Texas*

Tistrya Houghtling
*Supervisor, Town of New Lebanon and Columbia County, New York*

Christopher Jaramillo
*Board President, Norristown Area School District, Pennsylvania*

Clay Lewis Jenkins
*Judge, Dallas County, Texas*

Lawrence Kestenbaum
*Clerk and Register of Deeds, Washtenaw County, Michigan*

Nick Komives
*Councilmember, City of Toledo, Ohio*

Phillip Kramer
*Mayor, Franklin Township, New Jersey*

Jerald Lentini
*Director, Manchester City Board of Directors, Connecticut*

Jessie Lopez
*Councilmember, City of Santa Ana, California*

Quinton Lucas
*Mayor, Kansas City, Missouri*

Neil Makhija
*Commissioner, Montgomery County, Pennsylvania*

Alexander Marion
*Auditor, City of Syracuse, New York*

Heber Marquez
*Mayor Pro Tem, City of Maywood, California*

Diana McFarland
*Board Member, Sun Prairie Area School District, Wisconsin*

Lisa McIntyre
*Board Member, Northville Public Schools, Michigan*

Yasmine-Imani McMorrin
*Councilmember, City of Culver, California*

Jessica McParlin
*Chief Deputy Treasurer, Sandoval County, New Mexico*

Andrew Meindl
*Alderman, City of Wauwatosa, Wisconsin*

Ryan Mello
*County Executive, Pierce County, Washington*

Christian Menefee
*County Attorney, Harris County, Texas*

William Moehle
*Supervisor, Town of Brighton, New York*

Sarah Moore
*Councilmember, City of Fayetteville, Arkansas*

Melissa Novoa
*Board Director, Norristown Area School District, Pennsylvania*

Amelia Parker
*Councilmember, City of Knoxville, Tennessee*

Ingrid Parker
*Board Director, Norristown Area School District, Pennsylvania*

Michael Payne
*Councilmember, City of Charlottesville, Virginia*

Isabel Piedmont-Smith
*Councilmember, City of Bloomington, Indiana*

Veronica Pillar
*Legislator, Tompkins County, New York*

Jaqueline "Jack" Porter
*Commissioner, City of Tallahassee, Florida*

Kony Serrano Portillo
*Councilmember, Town of Edmonston, Maryland*

Idelma Quintana
*Commissioner, City of Hollywood, Florida*

E. Dalia Racine
*District Attorney, Douglas County, Georgia*

Amanda Rodriguez
*Councilmember, City of San Marcos, Texas*

Michael Rodriguez
*Alderperson, City of Chicago, Illinois*

Kim Roney
*Councilmember, City of Asheville, North Carolina*

Ricardo Samaniego
*Judge, El Paso County, Texas*

Eli Savit
*Prosecuting Attorney, Washtenaw County, Michigan*

Elaine Schaefer
*Councilmember, Delaware County, Pennsylvania*

Steve Schroeder
*Board Member, Sun Prairie Area School District, Wisconsin*

Michael Siegrist
*Clerk, Canton Township, Michigan*

Monica Taylor
*Council Chair, Delaware County, Pennsylvania*

Clifford Thompson
*Board Director, Oakland Unified School District, California*

Jeronimo Vasquez
*Supervisor, Coconino County, Arizona*

Anissa Welch
*Mayor, City of Milton, Wisconsin*

Braxton White
*Commissioner, Clarion County, Pennsylvania*

Robin Wilt
*Councilmember, Town of Brighton, New York*

Jamila H. Winder
*Commissioner, Montgomery County, Pennsylvania*

22

Randall Woodfin
*Mayor, City of Birmingham, Alabama*

Chuy Zárate
*Trustee, Round Rock Independent School District, Texas*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was this day served on all counsel via the court's electronic service system.

/s/ Jonathan B. Miller
Jonathan B. Miller (BBO#663012)
Public Rights Project

Dated: January 28, 2025