UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; ATTORNEY GENERAL DANA NESSEL FOR THE PEOPLE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN; and CITY & COUNTY OF SAN FRANCISCO, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM,* in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of Social Security, and UNITED STATES OF AMERICA, <br><br> *Defendants*. | No. 1:25-cv-10139-LTS <br><br> Leave to File Granted on January 24, 2025 [ECF No. 71] |

**REPLY IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

---

* Automatically substituted for Benjamine Huffman pursuant to Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

    I.    PLAINTIFFS HAVE STANDING UNDER SETTLED LAW.....................................1

    II.    PLAINTIFFS HAVE VALID CAUSES OF ACTION UNDER SETTLED LAW ..................................................................................................................3

    III.    PLAINTIFFS' CLAIMS PREVAIL ON ALL MERITS UNDER SETTLED LAW ..................................................................................................................4

    IV.    PLAINTIFFS' REMEDY FOLLOWS FROM SETTLED LAW ................................9

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
    567 U.S. 387 (2012) .................................................................................................. 10

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) .................................................................................................... 3

*Bell v. Hood*,
    327 U.S. 678 (1946) .................................................................................................... 3

*Benny v. O'Brien*,
    32 A. 696 (N.J. 1895) ................................................................................................. 7

*Biden v. Nebraska*,
    600 U.S. ___, 143 S. Ct. 2355 (2023) ................................................................. 1, 2, 3

*ChildCareGroup v. Dep't of Health & Human Servs.*,
    DAB No. 3010 (2020) ................................................................................................ 9

*CREW v. Trump*,
    302 F. Supp. 3d 127 (D.C. Cir. 2018) ...................................................................... 10

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) .................................................................................................... 1

*DeVillier v. Texas*,
    601 U.S. 285 (2024) .................................................................................................... 4

*Elk v. Wilkins*,
    112 U.S. 94 (1884) .................................................................................................. 5, 6

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) .................................................................................................... 3

*Gamble v. United States*,
    587 U.S. 678 (2019) .................................................................................................... 7

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ................................................................................................ 2, 3

*Harmon v. Brucker*,
    355 U.S. 579 (1958) .................................................................................................... 3

*Hawai'i v. Trump*,
    859 F.3d 741 (9th Cir. 2017) ........................................................................................10

*United States ex rel. Hintopoulos v. Shaughnessy*,
    353 U.S. 72 (1957) .........................................................................................................7

*INS v. Rios-Pineda*,
    471 U.S. 444 (1985) .......................................................................................................7

*Kentucky v. Biden*,
    23 F.4th 585 (6th Cir. 2022) ........................................................................................10

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018) .......................................................................................................8

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .......................................................................................................3

*Massachusetts v. HHS*,
    923 F.3d 209 (1st Cir. 2019) .....................................................................................1, 3

*Missouri v. Biden*,
    738 F. Supp. 3d 1113 (E.D. Mo. 2024) .......................................................................10

*New York v. Yellen*,
    15 F.4th 569 (2d Cir. 2021) ......................................................................................2, 3

*Nishikawa v. Dulles*,
    356 U.S. 129 (1958) .......................................................................................................9

*Plyler v. Doe*,
    457 U.S. 202 (1982) .......................................................................................................7

*Schooner Exch. v. McFaddon*,
    11 U.S. 116 (1812) .........................................................................................................6

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ...................................................................................................2, 3

*South Carolina v. Regan*,
    465 U.S. 367 (1984) .......................................................................................................3

*State v. Nelson*,
    576 F. Supp. 3d 1017 (M.D. Fla. 2021) .....................................................................10

*Texas v. United States*,
    599 U.S. 670 (2023) .......................................................................................................2

*Ticor Title Ins. Co. v. FTC*,
   814 F.2d 731 (D.C. Cir. 1987) ..................................................................................................4

*United States v. Place*,
   693 F.3d 219 (1st Cir. 2012) ....................................................................................................8

*United States v. Wong Kim Ark*,
   169 U.S. 649 (1898) .............................................................................................4, 5, 6, 7, 8, 10

**Statutes**

Nationality Act of 1940, ch. 876, § 201, 54 Stat. 1137 ..................................................................8

**Other Authorities**

Hrgs. Before Comm. on Imm. & Naturalization on H.R. 6127,
   76th Cong. 37 (1940) (Ex. B) ..................................................................................................8

James C. Ho, *Defining "American:" Birthright Citizenship & the Original
   Understanding of the 14th Amendment*, 9 Green Bag 2d 367 (2006) .....................................8

*Legislation Denying Citizenship at Birth to Certain Children Born in the U.S.*,
   19 Op.  340, 1995 WL 1767990 (1995) ...............................................................................9, 10

Noah Webster, *An American Dictionary of the English Language*
   (George & Charles Merriam 1860) (Ex. A) .............................................................................5

**INTRODUCTION**

Defendants' responses all suffer the same fatal defect: they conflict with binding precedent. Defendants' claim that Plaintiffs lack standing to challenge a policy that works direct, predictable, and imminent fiscal harm contradicts both Supreme Court and First Circuit decisions. Their view that courts may not enjoin federal officials' unconstitutional acts absent an additional statutory cause of action has been repeatedly rejected. Their claim that the President can exclude, by executive fiat, children born on U.S. soil from the Constitution's promise of citizenship is contrary to caselaw, history, and a federal statute. And their remedial arguments are inconsistent with settled law. This Court need only cite binding and well-reasoned Supreme Court precedents to resolve this dispute—and to invalidate this unprecedented attack on an inviolable constitutional principle.

**ARGUMENT**

**I.      PLAINTIFFS HAVE STANDING UNDER SETTLED LAW.**

Controlling decisions have consistently held that States may challenge federal actions that increase state spending or deprive the States of federal funds. Recently, for example, the Supreme Court allowed Missouri to challenge a federal student-debt relief plan because its instrumentality would collect fewer fees for servicing federal loans under the plan. *Biden v. Nebraska*, 600 U.S. ___, 143 S. Ct. 2355, 2366 (2023); *accord, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) (States could challenge proposed census question because it would cause them to "lose out on federal funds"). The First Circuit has likewise recognized Massachusetts' standing to challenge a federal regulation allowing health plans to opt out of contraceptive coverage because the Commonwealth would bear the cost of replacing some of that coverage. *Massachusetts v. HHS*, 923 F.3d 209, 222-27 (1st Cir. 2019). Plaintiffs here have established, with ample and undisputed evidence, that the Order will have a similarly direct and imminent effect on their budgets in light of their preexisting policies—an injury this Court can redress. *See* Doc. No. 5 at 14-15, 21-23.

1

Defendants' responses flout precedent. Defendants first claim that Plaintiffs lack standing because their injuries are "incidental" effects of the Order. They rely on *Texas v. United States*, 599 U.S. 670 (2023), but that case—as the Supreme Court held—was an "extraordinarily unusual lawsuit" in which two States asked "the Federal Judiciary to order the Executive Branch to … make more arrests." *Id.* at 674, 686. The Court ultimately found a lack of standing based on unique concerns about prosecutorial discretion that have no purchase here. *See id.* at 676-81. The *Texas* plaintiffs, moreover, had offered only a vague contention that "the[y] would incur additional costs because the Federal Government [was] not arresting more noncitizens." *Id.* at 676. Here, by contrast, the record shows direct and predictable links between the Order and Plaintiffs' impending financial loss. As *Nebraska* held, that satisfies Article III. *See* 143 S. Ct. at 2366.

Defendants' claim that Plaintiffs lack standing because their injuries are "self-inflicted" is likewise contrary to settled law. *See* Doc. No. 92 at 19-20 (arguing that Plaintiffs "voluntarily chose[] to provide" benefits to noncitizens). If Defendants' characterization were enough to defeat standing, the result in both *Nebraska* and *Massachusetts* would have been different: federal law did not force Missouri to service federal student loans, and Massachusetts had no federal obligation to cover contraceptive care. That both States nevertheless had standing—given the predictable harm to their treasuries based on their preexisting policies—shows that Defendants' sweeping conception of "self-inflicted" injury is inconsistent with settled law. *See, e.g.*, *New York v. Yellen*, 15 F.4th 569, 575-77 (2d Cir. 2021) (standing based on predictable fiscal harm to state taxes).

Finally, Defendants incorrectly argue that Plaintiffs improperly advance the rights of third parties under the Citizenship Clause. In fact, Plaintiffs press their *own* interests in avoiding fiscal harm from an unlawful executive order. Defendants' reference to *parens patriae* suits is thus a non sequitur. So is their reliance on *South Carolina v. Katzenbach*, 383 U.S. 301 (1966), and *Haaland*

*v. Brackeen*, 599 U.S. 255 (2023): the States in those cases did not suffer concrete harm at all—much less the kind of quintessential fiscal harm here. *See, e.g.*, *Haaland*, 599 U.S. at 296 ("Texas is not injured by the [allegedly unequal] placement preferences [for Indian children].").[1]

## II. PLAINTIFFS HAVE VALID CAUSES OF ACTION UNDER SETTLED LAW.

Plaintiffs properly seek declaratory and injunctive relief to avoid injury from an Order that is both *ultra vires* under the Constitution and INA (Counts I-III) and unlawful under the APA (Count IV). Defendants argue that "the Constitution does not generally provide a cause of action to pursue affirmative relief," Doc. No. 92 at 24, but the Supreme Court has repeatedly held that plaintiffs may pursue prospective equitable relief without a separate statutory cause of action to stop government officials from violating the Constitution or exceeding their lawful authority. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015) (describing "equitable relief that is traditionally available to enforce federal law"); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010) (recognizing, "as a general matter," a "private right of action directly under the Constitution"); *Harmon v. Brucker*, 355 U.S. 579, 581-82 (1958) (similar); *Bell v. Hood*, 327 U.S. 678, 684 (1946) (similar).[2] Indeed, the case Defendants cite confirms the point: even as the Court

---

[1] That one of Plaintiffs' claims rests on the violation of an individual constitutional right does not change that conclusion. Indeed, *Massachusetts* arose in the same posture: the Commonwealth asserted (among other things) that the regulation violated the Equal Protection Clause, *see* 301 F. Supp. 3d 248, 250 (D. Mass. 2018), and the First Circuit held that it had standing to seek relief for its pocketbook injuries, 923 F.3d at 222. Moreover, Plaintiffs are not challenging the constitutionality of federal statutes, as in *Katzenbach* and *Haaland*, but an executive action that violates federal law. *Cf. Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (explaining "critical difference between allowing a State 'to protect her citizens from the operation of federal statutes' … and allowing a State to assert its rights under federal law (which it has standing to do)").

[2] This logic also applies to the INA claim, which is a separation-of-powers claim positing that the Executive contravened the limits Congress placed on it. Notably, the plaintiff states in *Nebraska* brought exactly that kind of *ultra vires* claim. *See* J.A. 36-37, 143 S. Ct. 2355 (2023), www.bit.ly/40YajdR. Nor is there any basis to claim Plaintiffs have some alternative remedy here, *see* Doc. No. 92 at 23-25, because they cannot file challenges to adjudicate an individual's

3

declined to address whether the Takings Clause permits *damages* claims, it cited numerous cases allowing *injunctive relief* under the Clause. *DeVillier v. Texas*, 601 U.S. 285, 292 (2024).

Defendants also err in arguing that Plaintiffs' APA claims fail on the ground that any agency action is nonfinal. Even assuming Defendants' premise, the APA permits judicial review of nonfinal agency action in the event of an "outright violation of a clear statutory provision." *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 749 (D.C. Cir. 1987). Such a clear violation exists here. The President ordered defendant agencies to take blatantly unlawful action by February 19. The illegality of those actions does not depend on any forthcoming decisions. For example, whether the SSA may deny Social Security cards to children born on U.S. soil does not turn on the precise denial process that SSA implements. In those circumstances, an APA suit is appropriate.

## III.    PLAINTIFFS' CLAIMS PREVAIL ON THE MERITS UNDER SETTLED LAW.

Defendants' interpretation of birthright citizenship is contrary to Supreme Court precedent, centuries of history, and a longstanding federal statute.

While Defendants seek to distinguish *Wong Kim Ark* on its facts, *see* Doc. No. 92 at 30-32, that case provided a considered and detailed analysis of the Fourteenth Amendment's text, common-law backdrop, and originalist sources in holding that U.S.-born children of foreigners have birthright citizenship subject only to certain precisely defined exceptions—none of which is based on the duration or lawfulness of their parents' presence in the country. *See* Doc. No. 5 at 16-17; *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898).[3] Indeed, while Defendants' core premise is that whether one is "subject to the jurisdiction" of the United States does not turn on

---

citizenship. *Cf. South Carolina v. Regan*, 465 U.S. 367, 373 (1984); *New York*, 15 F.4th at 577-79 (rejecting argument that Anti-Injunction Act bars suits by States, who cannot bring their own tax-refund suits and thus lack adequate alternative remedies).

[3] The exception for "alien enemies in hostile occupation," Doc. No. 92 at 38, is plainly inapplicable: neither undocumented nor temporary immigrants exert hostile territorial control.

4

whether a person must obey U.S. laws, Doc. No. 92 at 26, *Wong Kim Ark* is explicit: "[A]n alien is completely subject to the political jurisdiction of the country in which he resides" because "for so long a time as he continues within the dominions of a foreign government," he "owes obedience to the laws of that government." 169 U.S. at 693-94. Similarly, though Defendants contend that a person is "subject to the jurisdiction" if he is born "in the allegiance" of the United States, Doc. No. 92 at 27-28, the Court explained that "allegiance" in this context means "nothing more than the tie or duty of obedience" to the sovereign's laws. 169 U.S. at 659.[4] Because no one could dispute that noncitizens here with temporary status or without authorization have a "duty of obedience" to U.S. laws, they are subject to U.S. jurisdiction—and their children are citizens.

Defendants seek support from *Elk v. Wilkins*, 112 U.S. 94 (1884), but that case confirms Plaintiffs' position. *Elk* explained that the "evident meaning" of the phrase "subject to the jurisdiction" is "not merely subject *in some respect or degree* to the jurisdiction of the United States, but *completely* subject to their political jurisdiction." *Id.* at 102 (emphasis added); *Wong Kim Ark*, 169 U.S. at 680 (same). That distinction refutes Defendants' surplusage argument, Doc. No. 92 at 27 (asserting that Native Americans and foreign diplomats are "subject, at least to some extent" to the nation's legal authority). The children of Native Americans and diplomats are not "subject to the jurisdiction" within the meaning of the Citizenship Clause because they enjoy substantial—even if not unlimited—immunity. *Elk*, 112 U.S. at 99-100 (Native Americans generally exempt from taxation and federal laws); *Wong Kim Ark*, 169 U.S. at 678-79 (various "immunities" to which foreign ambassadors and ministers are "entitled by the law of nations"). By

---

[4] *See also id.* at 708 (Fuller, J., dissenting) (using "allegiance" and "obedience" interchangeably); Noah Webster, *An American Dictionary of the English Language* 35 (George & Charles Merriam 1860) (Ex. A) (defining "allegiance" as "[t]he tie or obligation of a subject to his prince or government; the duty of fidelity to a king, government, or state," and noting "[e]very native or citizen owes *allegiance* to the government under which he is born").

5

contrast, those here without legal authorization or with temporary status are not afforded such broad immunity from our laws—and so are "subject to the jurisdiction" of the United States. Moreover, *Elk* emphasized that the petitioner was born into an "alien nation" within the United States, effectively "within the domain of a foreign government," 112 U.S. at 99—a singular distinction applicable to tribal members that does not apply to the children excluded by the Order.

Defendants' efforts to equate jurisdiction with "domicile" also fail. *See* Doc. No. 92 at 30-31 (claiming "temporary visitors and unlawfully present aliens" lack "allegiance" to the United States absent "domicile"). As *Wong Kim Ark* noted, the English common-law and Founding-era understandings of jurisdiction on which its holding was based were entirely distinct from domicile. *See* 169 U.S. at 657 (noting at common law that "every person born within the dominions of the crown … whether the parents were settled, or merely temporarily sojourning, in the country, was an English subject"); *id.* at 686 (discussing C.J. Marshall's explication of "jurisdiction" in *Schooner Exch. v. McFaddon*, 11 U.S. 116 (1812), when concluding that "private individuals of another nation" who visit a country "for purposes of business or pleasure" are not "exempt[] from the jurisdiction of the country in which they are found"); 11 U.S. at 144 (holding "merchant vessels enter[ing] for the purposes of trade" must "owe temporary and local allegiance" and be "amenable to the jurisdiction of the country," or else they would "subject the laws" of that country "to continual infraction"). As *Wong Kim Ark* put it, whether a person "within the dominions of a foreign government" is subject to that government's jurisdiction operates "[i]ndependently of" their "intention to continue such residence" or "domiciliation." 169 U.S. at 693-94.[5] While *Wong*

---

[5] Defendants' reliance on a hodgepodge of historical sources at odds with *Wong Kim Ark*'s clear rejection of their "domicile" theory, *see* Doc. No. 92 at 32-38, is simply an attempt to relitigate binding precedent. All of these sources predate *Wong Kim Ark*, most are considered in that opinion, and several are featured by the dissent. *Compare* Doc. No. 92 at 32-38 *with Wong Kim Ark*, 169

6

*Kim Ark* notes that domicile in a nation would be *sufficient* to require their allegiance and subject that person to the nation's jurisdiction, Doc. No. 92 at 30-31, Defendants make a logical error in claiming domicile is therefore *necessary*. Nor does *Wong Kim Ark* stand alone. *See INS v. Rios-Pineda*, 471 U.S. 444, 446 (1985) (unanimously noting child of undocumented resident was a citizen); *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 73 (1957) (noting U.S.-born child was "of course, an American citizen by birth," despite parents' "illegal presence").[6]

Defendants cannot overcome Supreme Court precedent, and the text and history underlying it, by citing the 1866 Civil Rights Act, which granted statutory citizenship to persons born in the United States "not subject to any foreign power." Doc. No. 92 at 28-29. Even leaving aside that "one version of a text is shoddy evidence of the public meaning of an altogether different text," *Gamble v. United States*, 587 U.S. 678, 684 (2019), Defendants do not explain why immigrants here with temporary status or without lawful status are subject to a foreign power. Their argument again appears predicated on a vague understanding of "allegiance," *see* Doc. No. 92 at 28-29, but there is no dispute that these groups owe allegiance to—*i.e.*, have a duty to obey the laws of—the United States while here, like lawful permanent residents. In any event, *Wong Kim Ark* carefully considered how the earlier statutory language differed from the Citizenship Clause, and determined that the difference reaffirmed the drafters' intent broadly to confer citizenship to those born on

---

U.S. at 661, 679 (citing Story, *Conflict of Laws* § 48); *id.* at 666 (citing Hall, *International Law* § 68 (4th ed.)); *id.* at 692-93 (citing *Benny v. O'Brien*, 32 A. 696 (N.J. 1895)); *id.* at 708 (dissent) (citing Vattel, *Law of Nations* § 212); *id.* at 718 (dissent) (quoting Story); *id.* at 718-19 (dissent) (citing Miller, *Lectures on Constitutional Law* at 279); *id.* at 719 (dissent) (discussing Hausding and Greisser passport denials). The *Wong Kim Ark* majority soundly rejected Defendants' view.

[6] *Plyler v. Doe* also makes clear that there is "no plausible distinction with respect to Fourteenth Amendment 'jurisdiction' can be drawn between resident aliens whose entry into the United States was lawful, and resident aliens whose entry was unlawful." 457 U.S. 202, 211 n.10 (1982). The fact that tribal members are entitled to equal protection when States exercise their limited jurisdiction against them, Doc. No. 92 at 44-45, even though they are not "completely subject" to U.S. jurisdiction under the Citizenship Clause, does not negate *Plyler*'s holding.

U.S. soil. *See* 169 U.S. at 688; *see also* James C. Ho, *Defining "American:" Birthright Citizenship & the Original Understanding of the 14th Amendment*, 9 Green Bag 2d 367, 373 (2006).

Even if this Court were convinced that it could contravene precedent in its construction of the Constitution, Plaintiffs would still prevail on their statutory claim. *See* Doc. No. 1 at 44 (Count III). Although Defendants claim there is no basis to treat the Constitution and statutes differently, laws take their meaning from how they would have been understood at the time of enactment. And as of 1940, *see* Nationality Act of 1940, ch. 876, § 201, 54 Stat. 1137, 1138, there was no doubt that "subject to the jurisdiction" codified birthright citizenship, regardless of the immigration status of the child's parents. *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721-22 (2018) (presuming the enacting Congress is "aware of the longstanding judicial interpretation of [a] phrase" that it codifies "and intend[s] for it to retain its established meaning"); *United States v. Place*, 693 F.3d 219, 229 (1st Cir. 2012). Indeed, when a member of Congress inquired whether the bill could be amended to exclude persons living abroad "who happen to have been born here" to "alien parents" and departed the country "in early infancy" to be "brought up in the countries of their parents," all agreed that "it is not a matter we have any control over" because there was "no proposal … to change the Constitution." Hrgs. Before Comm. on Imm. & Naturalization on H.R. 6127, 76th Cong. 37, 38 (1940) (Ex. B). The INA thus codified Congress's understanding that the length of a parent's stay does not impact a child's birthright citizenship.

Defendants' resort to policy arguments cloaked as "interpretive principles," Doc. No. 92 at 38-41, fares no better. First, Defendants' plea to the President's authority over "status of aliens" begs the question: under the Citizenship Clause, the affected children are not "aliens" in the first place. Nor is the President empowered to re-define them as such because he believes punishing the children of "wrongdoers" will deter illegal entry—a belief neither the Order nor Defendants'

8

brief substantiates with facts. Second, while Congress may consider various policy concerns when exercising its authority over naturalization rules, *see* Doc. No. 92 at 39-41, no branch can nullify a *constitutional* right to citizenship. *See Nishikawa v. Dulles*, 356 U.S. 129, 138 (1958) (because the "Constitution has conferred" birthright citizenship, "neither the Congress, nor the Executive, nor the Judiciary, nor all three in concert, may strip [it] away"). That was, indeed, the purpose of the Citizenship Clause: having learned the painful lessons of *Dred Scott*, the Framers of the Fourteenth Amendment understood "our country should never again trust to judges or politicians the power to deprive from a class born on our soil the right of citizenship." *Legislation Denying Citizenship at Birth to Certain Children Born in the United States*, 19 Op. O.L.C. 340, 1995 WL 1767990, *6 (1995). Defendants' effort to upend that core principle must be rejected.

## IV. PLAINTIFFS' REMEDY FOLLOWS FROM SETTLED LAW.

This Court should grant a preliminary and/or permanent injunction to prevent Defendants from violating the Citizenship Clause and the INA, as they have been directed to do on February 19. Aside from their incorrect argument that Plaintiffs' impending injuries are not attributable to the Order, *but see* Doc. No. 5 at 14-15, 21-23, Defendants' only response to Plaintiffs' irreparable harm is to baselessly speculate that Plaintiffs might remedy their fiscal injuries via administrative processes. Doc. No. 92 at 47. But no such process could compensate Plaintiffs for (i) the burdens and costs incurred to re-design Plaintiffs' eligibility verification systems, (ii) extra payments for at-risk children due to their ineligibility for federal assistance, or (iii) the EAB funding they lose when families do not obtain an SSN at birth. Doc. No. 5 at 11-13.[7] Nor do Defendants offer a legitimate public interest that can outweigh these harms. Any interest in protecting the statutory

---

[7] And though an HHS appeals board considers specific cost disallowances in certain programs, it does not adjudicate constitutional claims regarding the eligibility of large swaths of the population. *See ChildCareGroup v. Dep't of Health & Human Servs.*, DAB No. 3010, at 11 (2020).

"discretion exercised by immigration officials," *Arizona v. United States*, 567 U.S. 387, 396 (2012), is not at issue here, where the Executive seeks to trample over constitutional and statutory dictates—on the precise issue the Fourteenth Amendment's framers removed from the political process entirely. *See OLC Op.* at *6. And on the other side of the ledger is the abrogation of a 127-year-old precedent and practice, the loss of citizenship for millions of American-born children, and the chaotic disruption of Plaintiffs' critical child health and welfare programs.[8]

Plaintiffs' injuries could only be remedied with a nationwide injunction because children and families can and do move from one jurisdiction to another—a key factual point Defendants do not deny. Doc. No. 5 at 25-26. Defendants brush this aside, without any explanation, as a "spillover effect." Doc. No. 92 at 49-50. But the harms to Plaintiffs from allowing the Order to take effect in other jurisdictions are the exact same harms of allowing it to take effect within their borders—the loss of federal funding for serving the affected children and the administrative cost and burdens of standing up new eligibility verification systems. Thus, if the Court concludes that injunctive relief is needed to remedy Plaintiffs' injuries, that injunction necessarily must be nationwide. Nor is that burdensome for Defendants, as the Federal Government has for over a century (and until just weeks ago) complied with this understanding nationwide—just as *Wong Kim Ark* commands.

## **CONCLUSION**

For the above reasons, the Court should grant Plaintiffs' motion for injunctive relief.

---

[8] Defendants are also wrong that Plaintiffs may not obtain declaratory relief against the President. *See CREW v. Trump*, 302 F. Supp. 3d 127, 139 n.6 (D.C. Cir. 2018) (rejecting government's claim). Courts routinely enjoin the enforcement of executive orders. *See, e.g.*, *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022) (enjoining enforcement of EO mandating certain vaccinations); *State v. Nelson*, 576 F. Supp. 3d 1017, 1040 (M.D. Fla. 2021) (granting injunction "prohibiting enforcement of" EO). And when an injury cannot be "redressed fully" by enjoining other federal defendants, an injunction against the President can also be appropriate. *Hawai'i v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017); *Missouri v. Biden*, 738 F. Supp. 3d 1113, 1145 (E.D. Mo. 2024).

February 4, 2025

ANDREA JOY CAMPBELL
  ATTORNEY GENERAL OF MASSACHUSETTS

Gerard J. Cedrone (BBO No. 699674)
  *Deputy State Solicitor*
Jared B. Cohen (BBO No. 689217)
  *Assistant Attorney General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2282
gerard.cedrone@mass.gov

*Counsel for the Commonwealth of Massachusetts*


ROB BONTA
  ATTORNEY GENERAL OF CALIFORNIA

Denise Levey*
  *Deputy Attorney General*
Michael L. Newman
  *Senior Assistant Attorney General*
Marissa Malouff*
Irina Trasovan*
  *Supervising Deputy Attorneys General*
Lorraine López*
Delbert Tran*
Annabelle Wilmott*
  *Deputy Attorneys General*
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
(213) 269-6269
denise.levey@doj.ca.gov

*Counsel for the State of California*

Respectfully submitted.

MATTHEW J. PLATKIN
  ATTORNEY GENERAL OF NEW JERSEY

/s/ Viviana Hanley

Viviana M. Hanley (BBO No. 707266)
  *Deputy Attorney General*
Jeremy M. Feigenbaum*
  *Solicitor General*
Shankar Duraiswamy*
  *Deputy Solicitor General*
Shefali Saxena*
Elizabeth R. Walsh*
  *Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(862) 350-5800
viviana.hanley@njoag.gov

*Counsel for the State of New Jersey*


PHIL WEISER
  ATTORNEY GENERAL OF COLORADO

Shannon Stevenson*
  *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

11

WILLIAM M. TONG
  ATTORNEY GENERAL OF CONNECTICUT

William M. Tong*
  *Attorney General*
Janelle Rose Medeiros*
  *Assistant Attorney General*
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020
janelle.medeiros@ct.gov

*Counsel for the State of Connecticut*

KATHLEEN JENNINGS
  ATTORNEY GENERAL OF DELAWARE

Ian R. Liston**
  *Director of Impact Litigation*
Vanessa L. Kassab**
  *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

BRIAN L. SCHWALB
  ATTORNEY GENERAL
    FOR THE DISTRICT OF COLUMBIA

Nicole S. Hill*
  *Assistant Attorney General*
Public Advocacy Division
Office of the Attorney
  General for the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov

*Counsel for the District of Columbia*

ANNE E. LOPEZ
  ATTORNEY GENERAL OF HAWAIʻI

Kalikoʻonālani D. Fernandes*
  *Solicitor General*
425 Queen Street
Honolulu, Hawaiʻi 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

AARON M. FREY
  ATTORNEY GENERAL OF MAINE

Sean D. Magenis (BBO No. 658578)
  *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
sean.d.magenis@maine.gov

*Counsel for the State of Maine*

ANTHONY G. BROWN
  ATTORNEY GENERAL OF MARYLAND

Adam D. Kirschner*
  *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
akirschner@oag.state.md.us
(410) 576-6424

*Counsel for the State of Maryland*

12

| | |
|---|---|
| DANA NESSEL<br>   ATTORNEY GENERAL OF MICHIGAN | KEITH ELLISON<br>   ATTORNEY GENERAL OF MINNESOTA |

Toni L. Harris*
Stephanie Service*
Neil Giovanatti*
  *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, Michigan 48909
(517) 335-7603
harrist19@michigan.gov

*Counsel for Attorney General Dana Nessel
  on behalf of the People of Michigan*

John C. Keller*
  *Chief Deputy Attorney General*
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
651-757-1355
john.keller@ag.state.mn.us

*Counsel for the State of Minnesota*

| | |
|---|---|
| AARON D. FORD<br>   ATTORNEY GENERAL OF NEVADA | RAÚL TORREZ<br>   ATTORNEY GENERAL OF NEW MEXICO |

Heidi Parry Stern*
  *Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
hstern@ag.nv.gov

*Counsel for the State of Nevada*

James W. Grayson*
  *Chief Deputy Attorney General*
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
(505) 218-0850
jgrayson@nmdoj.gov

*Counsel for the State of New Mexico*

| | |
|---|---|
| LETITIA JAMES<br>   ATTORNEY GENERAL OF NEW YORK | JEFF JACKSON<br>   ATTORNEY GENERAL OF NORTH CAROLINA |

Zoe Levine*
  *Special Counsel for Immigrant Justice*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
zoe.levine@ag.ny.gov
(212) 416-8329

*Counsel for the State of New York*

Daniel P. Mosteller*
  *Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-6026
dmosteller@ncdoj.gov

*Counsel for the State of North Carolina*

<div style="columns:2">

PETER F. NERONHA
  ATTORNEY GENERAL OF RHODE ISLAND

Katherine Connolly Sadeck (BBO No. 681501)
  *Solicitor General*
Leonard Giarrano IV*
  *Special Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI  02903
(401) 274-4400, Ext. 2480
ksadeck@riag.ri.gov

*Counsel for the State of Rhode Island*

JOSHUA L. KAUL
  ATTORNEY GENERAL OF WISCONSIN

Gabe Johnson-Karp*
  *Assistant Attorney General*
Wisconsin Department of Justice
17 West Main Street
P.O. Box 7857
Madison, WI 53707-7857
(608) 267-8904
johnsonkarpg@doj.state.wi.us

*Counsel for the State of Wisconsin*

CHARITY R. CLARK
  ATTORNEY GENERAL OF VERMONT

Julio A. Thompson**
  *Co-Director, Civil Rights Unit*
109 State Street
Montpelier, VT 06509
(802) 828-5519
julio.thompson@vermont.gov

*Counsel for the State of Vermont*

DAVID CHIU[†]
  CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO

Yvonne R. Meré[†]
  *Chief Deputy City Attorney*
Sara J. Eisenberg[†]
  *Chief of Complex and Affirmative Litigation*
Mollie M. Lee[†]
  *Chief of Strategic Advocacy*
David S. Louk*
Molly J. Alarcon*
  *Deputy City Attorneys*
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
(415) 505-0844
david.louk@sfcityatty.org

*Counsel for the City and County of San Francisco*

</div>

\*  admitted *pro hac vice*
\*\* admitted *pro hac vice*; notice of appearance forthcoming
†  motion for admission *pro hac vice* pending