# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MASSACHUSETTS (BOSTON)

CASE NO. 1:25-cv-10139-LTS

State of Massachusetts, et. al.,

     Plaintiffs,

     v.

Donald J. Trump in his official
Capacity as President of the United States,
et. al.

     Defendants,

_____/

## FRIEND OF THE COURT BRIEF
### IN SUPPORT OF THE PRESIDENT'S EXECUTIVE ORDER CLARIFYING THE 14TH AMENDMENT

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

Amicus Curiae, Rubin Young, respectfully submits this brief to support the President's executive order clarifying the 14th Amendment's Citizenship Clause and its application. This brief address three key legal principles: (1) the historical purpose of the 14th Amendment and its original intent, (2) the constitutional separation of powers that limits the authority of inferior courts to challenge executive actions, and (3) the supremacy of federal law in matters of immigration and citizenship under the Supremacy Clause.

1

The executive order reflects a lawful and constitutional interpretation of the Citizenship Clause, consistent with historical precedent and legislative intent. Inferior courts lack jurisdiction to override such lawful actions, as doing so infringes on the powers of the executive branch and disrupts the constitutional balance.

---

## ARGUMENT

### I. The 14th Amendment's Purpose: Addressing Slavery, Not Immigration:

The 14th Amendment was ratified in 1868 to correct the grave injustices of slavery and to ensure full citizenship for African Americans. Its framers, including Thaddeus Stevens and Jacob Howard, sought to address the systemic denial of citizenship to former slaves and their descendants, granting them natural-born citizenship. {EXHIBIT 1}.

The Citizenship Clause states:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States."

The phrase "subject to the jurisdiction thereof" was deliberately included to exclude specific groups, such as children of foreign diplomats, enemy combatants, and individuals who owed allegiance to foreign nations. The framers did not intend for this clause to apply to children of individuals unlawfully present in the United States.

**Relevant Case Law:**

- *United States v. Wong Kim Ark*, 169 U.S. 649 (1898): This case clarified that children born to legal, permanent residents in the United States are entitled to citizenship. However, the

2

Court's ruling did not address the status of children born to individuals unlawfully present in the country. The decision's limited scope should not be misinterpreted to create a universal right to birthright citizenship.

---

## II. Separation of Powers Limits Judicial Review of Executive Actions:

The U.S. Constitution establishes three separate branches of government, each with distinct powers and responsibilities. Under Article II, the President is charged with executing the laws of the United States, including those governing immigration and citizenship.

### Judicial Deference to the Executive Branch:

The Supreme Court has long recognized the executive branch's authority in matters of foreign policy, national security, and immigration:

- *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952): This case affirmed that the President has broad discretion in enforcing and interpreting federal laws, particularly in areas where Congress has delegated authority.
- *Trump v. Hawaii*, 138 S. Ct. 2392 (2018): The Court upheld the President's authority to issue executive orders on immigration matters, emphasizing that judicial review of such actions is limited and must respect the separation of powers.

Inferior courts lack the constitutional authority to override lawful executive orders that fall squarely within the President's powers. Challenges to such orders infringe on the President's duty to faithfully execute the laws.

---

## III. The Supremacy Clause Bars State or Inferior Court Interference:

The Supremacy Clause (Article VI, Clause 2) establishes that the Constitution, federal laws, and treaties are the supreme law of the land. This clause ensures that federal law takes precedence over conflicting state laws and that lower courts cannot obstruct the implementation of constitutional federal policies.

**Relevant Case Law:**

- *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819): The Court held that state laws cannot interfere with the execution of federal powers, underscoring the supremacy of federal authority.
- *Arizona v. United States*, 567 U.S. 387 (2012): The Court invalidated state laws that attempted to regulate immigration, reaffirming that immigration is a federal matter under the exclusive jurisdiction of Congress and the executive branch.

When inferior courts challenge the President's executive actions on immigration, they violate the Supremacy Clause by undermining the constitutional framework that places federal law above state or local interference.

## IV. "Subject to the Jurisdiction" Requires Full Allegiance to the United States:

The framers of the 14th Amendment were explicit in their understanding of "jurisdiction." Senator Jacob Howard, who introduced the Citizenship Clause, stated that it applied only to individuals who owed "complete allegiance" to the United States. This excluded:

- Children of foreign diplomats,
- Children of enemy combatants, and
- Individuals with no legal ties to the country.

4

Children born to illegal immigrants do not meet the framers' intent, as their parents owe allegiance to a foreign power and are not fully subject to U.S. jurisdiction.

**Historical Context:**

The framers were focused on correcting the injustices of slavery, not creating a universal right to citizenship for individuals with no legal or historical connection to the United States.

## V. The Unconstitutional Overthrow of Efforts to Address Economic Disparities for the Descendants of Former Slaves and the Misallocation of Resources to Illegal Immigrants

In the post-Civil War era, the promises of the 13th, 14th, and 15th Amendments were meant to set the children of former slaves on an equal footing with their white counterparts—guaranteeing not just political and civil rights but a full and equitable opportunity to participate in America's economic life. However, after the passing of these amendments, the government's focus on fulfilling this promise faded over time, and by the 1980s, federal, state, and local governments increasingly disregarded their obligation to elevate the descendants of former slaves.

One of the most significant efforts to address the economic disparities that arose from centuries of enslavement and systemic racism was the establishment of the Economic Opportunity Act of 1964. This act was pivotal in addressing poverty and inequity, with particular focus on improving opportunities for the African American community and the descendants of former slaves. However, the efforts to address these systemic inequities were undermined, particularly by the government's shift in focus in the 1980s. The economic reforms and anti-poverty programs championed by leaders such as Mary Lee Hill, founder of the Economic Opportunity Programs,

5

Inc. (EOPI), were severely curtailed or outright undermined by policies and judicial actions that failed to protect the specific interests of the descendants of former slaves.

Mary Lee Hill was a trailblazer who, through her leadership of the National Regional Community Service Administration, aimed to bring anti-poverty initiatives closer to the working poor and ensure that the children of former slaves were not left behind. Under Public Laws 88452, 92424, 93644, and 95568, Hill directed a national movement to create a network of community service programs designed to alleviate the crushing weight of poverty that had long plagued Black Americans, particularly those whose ancestors had been enslaved. Through this legislation, the country moved toward empowering African Americans and directly addressing the persistent inequities that remained from slavery and the failure to properly integrate formerly enslaved individuals into society.

However, by the 1980s, the focus of the federal government shifted, and resources that could have helped break the cycle of poverty for descendants of slaves were diverted to other priorities—most notably, the expansion of policies granting citizenship to children born to illegal immigrants under the Border Security and Economic Opportunity Act. This shift in focus represented a dramatic departure from the commitments made to the descendants of former slaves and the promises made under the 13th, 14th, and 15th Amendments. Instead of investing in the descendants of those who had suffered centuries of enslavement and subsequent second-class citizenship, the government channeled resources and policy toward those whose ties to the United States were often tenuous at best.

The impact of this shift cannot be overstated. The children of former slaves were left to wait another 400 years for the fulfillment of the promises made to them by the Emancipation

Proclamation and the 14th Amendment. Meanwhile, the nation's resources and attention were diverted toward ensuring citizenship and welfare benefits for children of illegal immigrants—a policy that, in the eyes of many, represented a fundamental betrayal of the historical mission to elevate African Americans from poverty and disenfranchisement.

The result of this diversion has been an ever-widening gap in wealth, opportunity, and education between African Americans, particularly the descendants of enslaved people, and other communities. The inability of the nation to focus on the original intent of the 14th Amendment—to grant the children of former slaves full and equal opportunity—has perpetuated economic and social inequality for generations. The policy missteps of the late 20th century led to the unjust continuation of systemic disparities, while resources were allocated to those who did not share the same historical ties to this country or suffer the same forms of systemic disenfranchisement.

The actions taken by the president in issuing the executive order clarifying the application of the 14th Amendment, as well as this brief's call for a return to the original intent of the Citizenship Clause, are vital steps in correcting the wrongs of the past. The millions of dollars that have been misallocated over the years must be refocused on creating true opportunities for those who have waited for centuries—those born of slavery and denied the full rights of citizenship. If the country continues to grant birthright citizenship to children of illegal immigrants, it will further delay justice for the descendants of enslaved Africans, who continue to bear the burden of historical wrongs.

In the end, the nation must return to the principles set forth by the framers of the 14th Amendment, ensuring that the children of former slaves are finally given what is rightfully theirs—a full partnership in the American experiment, with equal access to opportunities, education, and

7

economic prosperity. The United States can no longer afford to wait another 400 years for these promises to be fulfilled. The clarifications set forth by the President's executive order are an essential step toward ensuring that justice is served and the original intent of the 14th Amendment is honored.

## VI. Centuries of Misapplication of the 14th Amendment and Its Impact on African Americans:

For centuries, the intent of the 14th Amendment has been misapplied, particularly in the context of children born to illegal immigrants. While this misapplication has diverted attention and resources from addressing the ongoing struggles of African Americans, it is essential to remember that the 14th Amendment was primarily designed to rectify the injustices faced by the descendants of formerly enslaved people—those who had been denied full citizenship and legal equality for centuries.

The framers of the 14th Amendment, through its Citizenship Clause, sought to ensure that children born in the United States to formerly enslaved individuals would be granted full citizenship rights. However, the application of this clause to the children of illegal immigrants has led to a misinterpretation of its original intent and diverted the benefits of the Amendment away from the very people it was meant to protect—the descendants of those subjected to the institution of slavery.

Rather than focusing resources on fulfilling the promise of the 14th Amendment for descendants of former slaves, millions of dollars have been redirected toward the education of children born to illegal immigrants. These funds could instead be utilized to bolster the educational infrastructure for African Americans—especially descendants of former slaves—whose ancestors endured

8

generations of systemic denial of rights, economic inequality, and social marginalization. The Emancipation Proclamation and the subsequent ratification of the 14th Amendment were meant to grant these individuals full membership in American society, guaranteeing equal rights and opportunities, including the right to quality education.

By improperly extending the benefits of the 14th Amendment to children of illegal immigrants, the nation has continued to deprive the children of former slaves of the full partnership in society that was promised through emancipation and the constitutional amendments following the Civil War. These resources should have been used to fulfill the promise of reparations in the form of education, infrastructure, and equal opportunity for those most directly affected by slavery and its enduring legacy.

This distortion of the 14th Amendment not only undermines the original intent of the Constitution but also perpetuates the systemic inequality that continues to impact African Americans today. The President's executive order seeks to realign the application of the 14th Amendment with its original intent, ensuring that those it was meant to benefit—descendants of formerly enslaved people—are not further marginalized by the misapplication of this vital constitutional provision.

## VII. Immunity of the President and Limitations on Private Citizens' Legal Challenges:

Under established constitutional principles and federal laws, private citizens or non-citizens lack standing to challenge a duly elected president's executive orders in their individual capacity unless expressly authorized by federal statutes or enforcement agencies. The doctrine of presidential immunity and the supremacy of executive authority bar such lawsuits.

**Presidential Immunity**:

The President enjoys absolute immunity for actions taken within the scope of official duties, including the issuance of executive orders. This immunity is rooted in the need to protect the President's ability to carry out constitutional responsibilities without interference from private litigation.

**Relevant Case Law:**

- *Mississippi v. Johnson*, 71 U.S. 475 (1867): The Supreme Court held that the President cannot be enjoined by the courts from performing executive duties, affirming immunity in the exercise of constitutional authority.
- *Nixon v. Fitzgerald*, 457 U.S. 731 (1982): The Court confirmed the President's absolute immunity from civil damages for official acts, further shielding the executive from disruptive private lawsuits.

**Supremacy of Federal Enforcement Mechanisms**:

Challenges to executive orders must proceed through federal enforcement agencies or congressional oversight, as private citizens are not vested with the authority to enforce federal statutes independently. This ensures uniform application of the law and prevents frivolous or unauthorized lawsuits from undermining national governance.

**Separation of Powers**:

Judicial interference with presidential action risks violating the separation of powers, a cornerstone of constitutional governance. The courts must defer to the President's authority in areas expressly delegated, including immigration and citizenship policies. As reaffirmed in

10

*Youngstown Sheet & Tube Co. v. Sawyer* (1952), courts may not override lawful executive actions absent clear constitutional violations.

## VIII. The President's Executive Order is a Lawful Exercise of Authority:

The President's executive order clarifying the 14th Amendment aligns with both historical intent and constitutional authority. It reflects the President's responsibility under Article II to ensure the faithful execution of the laws and address issues of national importance, including immigration.

## Relevant Case Law:

- *Ex parte Milligan*, 71 U.S. 2 (1866): The Court emphasized the President's authority to act decisively within constitutional bounds.
- *Knauff v. Shaughnessy*, 338 U.S. 537 (1950): The Court upheld the executive branch's broad discretion in immigration matters, noting that such authority is "inherent in sovereignty."

Judicial interference with this executive order undermines the constitutional framework and the President's ability to perform his duties effectively.

## CONCLUSION

The 14th Amendment was created to address the injustices of slavery and guarantee citizenship for African Americans, not to grant automatic citizenship to children of individuals unlawfully present in the United States. The President's executive order clarifies this original intent and reflects a proper exercise of constitutional authority.

11

The separation of powers, the Supremacy Clause, and the jurisdictional limits of inferior courts all support the validity of the executive order. Judicial overreach in this matter threatens the constitutional balance and must be avoided.

Amicus Curiae respectfully urges this Court to uphold the executive order and affirm the Constitution's original meaning.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7) and the applicable local rules of the United States District Court for District of Maryland, I hereby certify that:

1. This brief complies with the type-volume limitation because it contains 3636 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and formatting requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using [e.g., Microsoft Word in Times New Roman, 12-point font].

Dated this January 28, 2025

Respectfully submitted,
Rubin Young
Rubin Young/s/
Amicus Curiae, Pro Se
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
rubin.young002@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this January 28, 2025, a true and correct copy of the foregoing Amicus Curiae Brief in Support of the President's Executive Order Clarifying the 14th Amendment was served upon the following parties via the Court's CM/ECF electronic filing system or by first-class mail where applicable:

**For the Plaintiff:**

**<u>Plaintiff</u>**

**1. Elizabeth R. Walsh**

New Jersey Office of the Attorney General
25 Market Street
P.O. Box 080
Trenton, NJ 08625
631-636-1645
Email: elizabeth.walsh@law.njoag.gov
*ATTORNEY TO BE NOTICED*

**2. Gerard J. Cedrone**

Massachusetts Attorney General's Office
One Ashburton Place
20th Floor
Boston, MA 02108
617-963-2282
Email: gerard.cedrone@mass.gov
*ATTORNEY TO BE NOTICED*

**3. Shefali Saxena**

New Jersey Attorney General
124 Halsey Street
PO Box 45029
Ste 5th Floor
Newark, NJ 07102
609-696-5254
Email: shefali.saxena@law.njoag.gov
*ATTORNEY TO BE NOTICED*

**4. Jared B. Cohen**

Massachusetts Attorney General's Office
McCormack Building
One Ashburton Place
Boston, MA 02108
617-963-2833
Fax: 617-573-5358
Email: jared.b.cohen@mass.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**5. Annabelle Cathryn Wilmott**

Office of the Attorney General
1300 I Street
Sacramento, CA 95814
916-210-7811
Email: annabelle.wilmott@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**6. Delbert Tran**

- 

Office of the Attorney General
455 Golden Gate Ave.
Ste 11000
San Francisco, CA 95111
415-229-0110
Email: delbert.tran@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**7. Denise Yesenia Levey**

Office of The Attorney General of the State of California
300 S Spring Street
Ste 1702
Los Angeles, CA 90013
213-269-6269
Email: denise.levey@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**8. Irina Trasovan**

Office of the Attorney General
300 S. Spring Street
Ste 1702
Los Angeles, CA 90013

14

213-269-6261
Email: irina.trasovan@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**9. Lorraine Lopez**

Department of Justice
300 S. Spring Street
Los Angeles, CA 90013
213-269-6616
Email: lorraine.lopez@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**10. Marissa Malouff**

Office of the Attorney General of the State of California
300 S. Spring Street
Ste 1702
Los Angeles, CA 90026
719-252-2589
Email: marissa.malouff@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**11. Shannon Wells Stevenson**

Colorado Department of Law
1300 Broadway
Denver, CO 80203
720-508-6749
Email: shannon.stevenson@coag.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY.TO BE NOTICED*

**12. William M. Tong**

Office of the Attorney General
165 Capitol Avenue
Suite 5000
Hartford, CT 06106
860-808-5318
Email: ag.court.tong@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**13. Janelle Medeiros**

15

Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5444
Fax: 860-808-5591
Email: janelle.medeiros@ct.gov
*ATTORNEY TO BE NOTICED*

**14. Nicole Suzanne Hill**

Office of the Attorney General for the District of Columbia
400 6th Street, N.W.
Washington, DC 20001
202-727-4171
Email: nicole.hill@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**15. Kalikoonalani Diara Fernandes**

Department of the Attorney General, State of Hawaii
425 Queen Street
Honolulu, HI 96813
808-586-1360
Email: kaliko.d.fernandes@hawaii.gov
*ATTORNEY TO BE NOTICED*

**15. Sean D. Magenis**

Office of the Maine Attorney General
6 State House Station
Augusta, ME 04330
207-626-8830
Email: sean.d.magenis@maine.gov
*ATTORNEY TO BE NOTICED*

**16. Neil Giovanatti**

MI Department of Attorney General
525 W. Ottawa Street
P.P.O. Box 30758
Lansing, MI 48909
517-335-7603
Email: giovanattin@michigan.gov
*LEAD ATTORNEY*

16

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**17. Stephanie M. Service**

Michigan Department of Attorney General
PO Box 30758
525 W. Ottawa St., 3rd Flr.
Lansing, MI 48909
517-335-7603
Fax: 517-335-1152
Email: services3@michigan.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**18. Toni L. Harris**

Michigan Department of Attorney General
525 W. Ottawa Street
P.P.O. Box 30758
Lansing, MI 48909
517-335-7603
Fax: 517-335-1152
Email: harrist19@michigan.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**19. John C. Keller**

Office of the Minnesota Attorney General
75 Rev. Dr. Martin Luther King Jr. Blvd.
Suite 102
St. Paul, MN 55155
651-757-1355
Email: john.keller@ag.state.mn.us
*ATTORNEY TO BE NOTICED*

**20. James Grayson**

NM Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-218-0850
Email: jgrayson@nmag.gov

17

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**21. Stacey M. Metro**

NYS Office of The Attorney General
Civil Recoveries Bureau
The Capitol
Albany, NY 12224
518-776-2218
Fax: 518-915-7729
Email: stacey.metro@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**22. Zoe Levine**

NYS Office of The Attorney General
28 Liberty Street
New York, NY 10005
212-416-8329
Email: zoe.levine@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**23. Daniel Paul Mosteller**

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
Email: dmosteller@ncdoj.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**24. Katherine Connolly Sadeck**

RI Department of Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
Email: ksadeck@riag.ri.gov
*ATTORNEY TO BE NOTICED*

**25. Leonard Giarrano, IV**

RI Department of Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
Email: lgiarrano@riag.ri.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**26. David Scott Louk**

San Francisco City Attorney's Office
1390 Market St.
Fox Plaza, 7th Floor
San Francisco, CA 94102
415-355-3314
Fax: 415-437-4644
Email: david.louk@sfcityatty.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**For the Defendants:**

1. **Donald Trump**
   o Brad P. Rosenberg
     U.S. Department of Justice
     1100 L Street
     Washington, DC 20005
     Phone: 202-514-3374
     Email: brad.rosenberg@usdoj.gov

2. **Donald Trump**
   o Brett Shumate
     U.S. Department of Justice
     950 Pennsylvania Ave NW
     Washington, DC 20530
     Phone: 202-514-7830
     Email: Brett.A.Shumate@usdoj.gov

3. **Donald Trump**
   o Nancy K. Canter
     U.S. Department of Justice
     P.O. Box 878
     Ben Franklin Station
     Washington, DC 20044

Phone: 202-616-9132
Email: nancy.k.canter@usdoj.gov

4. **Donald Trump**
   o Robert Charles Merritt
     U.S. Department of Justice
     1100 L Street
     Washington, DC 20005
     Phone: 202-616-8098
     Email: robert.c.merritt@usdoj.gov

5. **Donald Trump**
   o Yuri Fuchs
     U.S. Department of Justice
     1100 L Street
     Washington, DC 20005
     Phone: 202-598-3869
     Email: yuri.s.fuchs@usdoj.gov

Dated this January 28, 2025

Respectfully submitted,

Rubin Young/s/
Amicus Curiae, Pro Se
14060 SW 258th Street
Homestead, FL 33032
786-847-9111
rubin.young002@gmail.com