# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-10139-LTS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 62, Defendants respectfully move for a stay pending appeal of the Court's February 13, 2025 Order, ECF No. 145, which preliminarily enjoins Defendants on a nationwide basis from implementing and enforcing Executive Order No. 14160, Protecting the Meaning and Value of American Citizenship (Jan. 20, 2025) ("EO"). Defendants have appealed the Court's injunction and expect to ultimately prevail on their merits arguments. But those arguments are not at issue here: irrespective of the Court's views on the merits, it should stay the injunction because it provides relief to parties—both in this litigation and across the country—who have not demonstrated their entitlement to the extraordinary remedy of a preliminary injunction.

On appeal, Defendants are likely to succeed on their argument that the states lack standing. Fundamentally, the states lack any rights under the Citizenship Clause and cannot assert such claims on behalf of their third-party residents. And they cannot otherwise claim standing based on their own purported financial injuries because the downstream effects of federal immigration policies on voluntary state expenditures do not inflict an Article III injury. Even setting that aside, the Court's extension of relief to non-party individuals across the nation violates the well-established principle that judicial remedies "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). At minimum, the Court should stay the injunction insofar as it applies beyond the plaintiff states.

The equities similarly weigh in favor of staying an injunction that intrudes into internal executive branch affairs, preventing Defendants from taking even preparatory steps to implement the EO in the event that it is eventually permitted to take effect, and extends to states and non-parties who have not demonstrated a likelihood of irreparable harm or entitlement to injunctive

relief.

Defendants respectfully request a ruling by the close of business on February 26, 2025. After that time, if relief has not been granted, Defendants intend to seek relief from the U.S. Court of Appeals for the First Circuit.

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 43 (1st Cir. 2021). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**I.     Defendants Are Likely to Prevail On The Merits Of Their Argument That The Preliminary Injunction Was Improperly Issued.**

"At the preliminary injunction stage, . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see also, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (to establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision").

1.     As Defendants have explained, the state plaintiffs have failed to carry this burden here. *See* Doc. No. 92 at 18-22.  The Court disagreed, but it did not acknowledge or rebut Defendants' argument that the states lack third-party standing to assert Citizenship Clause claims on behalf of their residents, much less the residents of other states. *See id*. at 20-22.

A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties."

2

*Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Even assuming the states had made an adequate showing of direct economic injury to support Article III standing (which they have not), this argument would provide an independent basis to deny their Citizenship Clause claim.  In *Kowalski v. Tesmer*, for example, the Supreme Court assumed that the criminal defense attorney plaintiffs had established Article III standing through allegations that the challenged state law "reduced the number of cases in which they could be appointed and paid as assigned appellate counsel."  543 U.S. 125, 129 n.2 (2004) (citation omitted).  But the Court held that notwithstanding that pocketbook injury, the attorneys could not sue to assert their putative clients' constitutional right to have the government pay for their services.  *Id*. at 134.  Here, for the same reason that states lack standing to assert claims that individuals' Due Process and Equal Protection rights are harmed, *see South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966); *Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023), they lack standing to assert that other individuals' rights under the Citizenship Clause are impaired.

While the Court did not address Defendants' third-party standing arguments, it found that the plaintiff states had standing because they were able to "articulate various forms of federal funding that will be diminished as a direct result of the EO."  Doc. No. 144 at 8-9.  But the challenged EO does not directly regulate the states, set standards for determining federal funding, or otherwise require that states provide any services or incur any expenditures.  It merely regulates how the federal government will approach certain individuals' immigration status.  Whatever impacts that federal policy might have on state programs are necessarily the kind of "indirect effects on state revenues or state spending" that the Supreme Court recently warned should not confer standing in "cases brought by States against an executive agency or officer."  *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023).

3

This Court found the standing analysis in *Texas* "inapt," Doc. No. 144 at 10, but its rejection of state standing based on the downstream effects of a federal policy on state budgets is based on "bedrock Article III constraints," *Texas*, 599 U.S. at 680 n.3, that courts have consistently applied to deny similar attempts at state standing as are at issue here. *See, e.g.*, *Florida v. Mellon*, 273 U.S. 12, 17-18 (1927); *Washington v. FDA*, 108 F.4th 1163, 1175-76 (9th Cir. 2024); *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024); *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022). To find standing here would imply that every state has Article III standing to litigate the citizenship status of every person residing within its borders, but that is not the law and the Court should decline to adopt such a "boundless conception of Article III's injury requirement." *Washington*, 108 F.4th at 1176.[1]

2. Defendants are also likely to prevail on their argument that nationwide relief is improper. *See* Doc. No. 92 at 49-50. A federal court may entertain a suit only by a plaintiff who has suffered a concrete "injury in fact," and the court may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury." *Gill*, 585 U.S. at 66 (citation omitted). Principles of equity reinforce those limitations, and "[u]niversal injunctions have little basis in traditional equitable practice." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). Indeed, nationwide injunctions "take a toll on the federal court system," and "prevent[] legal questions from percolating through the federal courts." *Trump v. Hawaii*, 585

---

[1] Without fully resolving the issue, the Court suggested in a footnote that the states "also probably have standing based on their sovereign interests" that were not asserted in their preliminary injunction briefing. *See* Doc. No. 144 at 10 n.7. But the Court cited no authority for the proposition that states have a sovereign interest in "which persons are U.S. citizens," *id.*, and indeed federal citizenship status is an issue over which the federal government has plenary control. *See, e.g.*, *Foley v. Connelie*, 435 U.S. 291, 312 n.5 (1978) ("For it is the Federal Government that exercises plenary control over naturalization and immigration."); *cf. Arizona*, 40 F.4th at 386-87 ("The key sovereign with authority and 'solicitude' with respect to immigration is the National Government, not the States.").

U.S. 667, 713 (2018) (Thomas, J., concurring).  These general principles foreclose relief to anyone in this case, and that is especially true for individuals outside of the plaintiff states who are not only non-parties but do not even live in the states that are parties to this case.

The Court acknowledged that "universal relief" is not generally necessary to "provide complete relief to" parties affected by the EO.  Doc No. 144 at 28.  But it nonetheless fashioned nationwide relief in this case because of the possibility that "children born in states that are not parties to this lawsuit" would move to a plaintiff state, "seek[] various services," and necessitate state funding.  *Id*. at 29.  But the mere prospect of such remote future impacts on state revenue streams is insufficient to justify the breadth of the Court's order here, which prevents implementation or enforcement *anywhere* in the United States.  Particularly in this preliminary injunction posture, the remote concern that babies will be born after the effective date of the EO but also move into the plaintiff states while this case is pending is too speculative to justify such sweeping relief.  It is not necessary to provide complete relief to the plaintiff states, whose claimed injuries would be substantially remedied by an order that provided relief only within their borders (assuming that they were proper parties, which again they are not).  *Cf. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  This is particularly so when the injunction covers states who asked this Court not to issue an injunction.  *See* Doc. No. 122 (amicus brief filed by 18 states); Doc. No. 127 (Tennessee amicus brief); *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring) ("Nationwide injunctions … sometimes give States victories they do not want.").

The Court also suggested that an injunction limited to the plaintiff states would "risk[] creating a new set of constitutional problems."  Doc. No. 144 at 29.  But the authority on which the Court relied—recognizing a Fourteenth Amendment "right to travel" allowing a United States citizen traveling to a new state to enjoy therein the "same privileges and immunities enjoyed by

5

other citizens of the same State," *Saenz v. Roe*, 526 U.S. 489, 502 (1999)—provides no basis for nationwide relief to non-parties here. That line of cases prevents states from discriminating against U.S. citizens from other states; it does not have anything to say about the United States' recognition of citizenship under the Citizenship Clause. *See, e.g.*, *id.*; at 502-04; *Hope v. Comm'r of Ind. Dep't of Corrs.*, 9 F.4th 513, 525 (7th Cir. 2021) (noting that the Supreme Court's right to travel decisions each involved a state "rule that explicitly discriminated between old and new residents"). It would not violate anyone's right to travel for the Court, for the limited period of time until this case can be resolved and in accordance with traditional equitable principles, to limit any preliminary injunctive relief to the parties before it.

3. The Court's injunction is also overbroad to the extent it enjoins not only enforcement of the EO, but also internal steps relating to its implementation. As noted below, that causes harm to the government, and it is inconsistent with the well-established principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). At minimum, the Court should limit its injunction to permit the government to implement the EO in ways that cause no harm to the plaintiff states, including by taking internal, preparatory steps regarding the EO's application and formulating relevant policies and guidance.

## II. The Balance Of Equities, Including The Irreparable Harm Defendants Will Suffer, Favors a Stay.

The balance of the equities likewise favors staying injunctive relief to parties who have not demonstrated their entitlement to it. Providing relief to states that lack standing and individuals in all 50 states who have not demonstrated their entitlement to such relief conflicts with the principles articulated above and allows "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). That is especially inappropriate

in the context of this litigation, where multiple states have argued that the EO should not be universally enjoined. *See* Doc Nos. 122, 127 (state amicus briefs).

In addition, an injunction that interferes with the President's ability to carry out his broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. County Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Indeed, any injunction that prevents the President from exercising his core authorities is "itself an irreparable injury." *Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020) (Bress, J., dissenting) (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

As noted above, the injunction causes further harm to the Defendants because its breadth—applying to all implementation and enforcement—prevents the executive branch as a whole from even beginning the process of formulating relevant policies and guidance for implementing the EO. If Defendants are successful on their appeal and the EO is eventually allowed to take effect, but the injunction is not stayed in its overbroad applications while that appeal is pending, the Defendants will be unable to make preparations necessary to implement the EO, thus further delaying its implementation.[2] Such a delay in effectuating a policy enacted by a politically

---

[2] The EO is also subject to two other preliminary injunctions preventing implementation and enforcement of the EO on a nationwide basis. *See Washington v. Trump*, No. 2:25-cv-0127-JCC, 2025 WL 415165 (W.D. Wash. Feb. 6, 2025); *CASA, Inc. v. Trump*, No. 8:25-cv-201-DLB, 2025 WL 408636 (D. Md. Feb. 5, 2025). Defendants have appealed both preliminary injunctions and, in both cases, filed motions to stay their overbroad applications in both district court and with the relevant courts of appeal. *See Washington v. Trump*, No. 25-807, ECF No. 21.1 (9th Cir. Feb. 12, 2025); *Casa, Inc. v. Trump*, No. 25-1153, ECF No. 9 (4th Cir. Feb. 19, 2025). Two narrower injunctions have also been entered against the EO. *See N. H. Indonesian Comm. Supp. v. Trump* ("*NHICS*"), No. 1:25-CV-38-JL-TSM, 2025 WL 457609 (D.N.H. Feb. 11, 2025); *Doe v. Trump*, No. 25-CV-10135-LTS, ECF No. 47 (D. Mass. Feb. 13, 2025). Defendants have sought clarification regarding the NHICS injunction's scope, *see NHICS*, ECF No. 81, and filed a notice of appeal in the *Doe* case, *see Doe*, ECF No. 48.

accountable branch of the government imposes its own "form of irreparable injury." *King*, 567 U.S. at 1303 (Roberts, C.J., in chambers) (citation omitted). This is especially harmful in this context where, as Defendants have explained, the challenged EO is part of a larger immigration policy designed to combat the "significant threats to national security and public safety" posed by unlawful immigration. *See* Doc. No. 92 at 14.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' opposition to Plaintiffs' motions for preliminary injunction, Doc. No. 92, Defendants respectfully request that this Court stay its preliminary injunction. Defendants respectfully request a ruling on this motion by no later than the close of business on February 26, 2025, after which time, if relief has not been granted, Defendants intend to seek relief from the First Circuit.

Dated: February 19, 2025                    Respectfully submitted

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

LEAH B. FOLEY
United States Attorney

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
YURI S. FUCHS
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

8

        Phone:  202-616-8098
        Fax: 202-616-8460
        Email: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: February 19, 2025

*/s/ R. Charlie Merritt*
R. Charlie Merritt
Trial Attorney
