UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW JERSEY, *et al.*

                *Plaintiffs*,

  v.

DONALD J. TRUMP, *et al.*,

                *Defendants.*

No. 1:25-cv-10139-LTS

**RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR A STAY PENDING APPEAL**

Defendants' request for a stay pending appeal of this Court's preliminary injunction fails for at least two independent reasons.

First, the equitable factors—on which Defendants bear the burden in seeking this emergency relief—sharply disfavor a stay. The federal government has recognized the citizenship of children born in the United States to undocumented or non-permanent immigrants for more than 100 years, a practice that was unchallenged until January 2025. There is no plausible argument that the federal government would be harmed, much less irreparably, by maintaining that century-long status quo during the pendency of appeal. By contrast, abruptly terminating that longstanding practice, enshrined in multiple Supreme Court decisions and codified by statute, would impose serious and irreparable harms on Plaintiffs and the public. Children born while this appeal is pending would "be stripped of birthright citizenship constitutionally guaranteed to them." Doc. No. 144 at 26. Plaintiffs would lose federal funding for critical child health and welfare services and immediately be forced to design and implement burdensome updates to eligibility verification systems for several public programs. Defendants' stay application fails to explain how these harms are outweighed by the supposed urgency of denying children the constitutional right to citizenship.

Second, Defendants are unlikely to succeed on the merits of their arguments. Strikingly, Defendants seek a stay that would harm Plaintiffs and children nationwide without even *attempting* to argue that this Court erred in concluding that the Order is almost certainly unlawful. And the arguments Defendants do advance—that Plaintiffs lack standing and that nationwide relief is inappropriate—are not likely to succeed either. This Court soundly rejected both arguments in its considered preliminary-injunction opinion, recognizing that binding caselaw forecloses Defendants' standing argument, and that nationwide relief is necessary to avoid irreparable harm to Plaintiffs because children born in other States may reside or move into Plaintiffs' jurisdictions.

Multiple courts in recent days have denied requests for stays of orders preliminarily enjoining the same Executive Order.[1] This Court should likewise deny Defendants' motion to stay the preliminary injunction pending appeal.

## ARGUMENT

A stay pending appeal is appropriate only if "the stay applicant has made a strong showing" that (1) its appeal will "likely … succeed on the merits"; (2) it "will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) the stay would be in "the public interest." *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022) (quoting *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021)); *see Republic Maximal LLC v. Romulus Cap. Partners II, LLC*, 2024 WL 4519812, at *5 (D. Mass. Oct. 17, 2024) (same factors apply for district court). "In this emergency posture … the burden is on the Government as applicant to show" that these factors "favor a stay." *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024); *see Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 527 F. Supp. 3d 40, 58 (D. Mass. 2021). And "the bar is harder to clear" when the applicant seeks "alteration of the status quo." *Bos. Parent Coal. for Acad. Excellence*, 996 F.3d at, 44 (quoting *Respect Me. PAC v. McKee*, 562 U.S. 996, 996 (2010)); *cf. Hanson v. D.C.*, 120 F.4th 223, 244 (D.C. Cir. 2024) (for court to "alter the status quo before the merits are resolved," movant must demonstrate that "preservation of the status quo" during litigation would "clearly inflict irreparable harm"). Here, Defendants fail to show that any of those factors favor their stay motion, much less all of them taken together.

---

[1] *See Washington v. Trump*, No. 25-807, ECF No. 37.1 (9th Cir. Feb. 19, 2025); *Casa Inc. v. Trump*, No. 8:25-cv-201, ECF No. 76 (D. Md. Feb. 18, 2025).

2

I.      THE EQUITIES SHARPLY DISFAVOR A STAY.

      A.      **Defendants Suffer No Harm From Maintenance Of The Status Quo.**

This Court can deny Defendants' stay motion for the sole reason that Defendants have failed to demonstrate any harm that they will suffer if the longstanding, nationwide status quo is maintained during the pendency of their appeal. *Cf. Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (rejecting claim of irreparable harm to government and denying request for stay pending appeal where "the district court's order merely returned the nation temporarily to the position it has occupied for many previous years").

Whether Defendants would suffer irreparable harm absent a stay pending appeal is one of "the most critical" factors in the stay calculus. *Does 1-3*, 39 F.4th at 24-25 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Courts thus consider a lack of irreparable harm a sufficient reason to deny such emergency relief. *See, e.g.*, *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 64 (D.C. Cir. 2024) ("a showing of irreparable harm is a necessary prerequisite for a stay"); *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020); *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015); *Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Loc. No. 2 v. Chicago Trib. Co.*, 779 F.2d 13, 15 (7th Cir. 1985).

Here, as this Court has recognized, "defendants face no cognizable harm from a preliminary injunction" that "do[es] no more than maintain a status quo that has been in place for well over a century." Doc. No. 144 at 27, 31. Defendants nonetheless claim that the preliminary injunction injures them by "interfer[ing] with the President's ability to carry out his broad authority over immigration matters." Doc. No. 158 at 8. But the injunction does not prevent the President from executing any immigration laws. Indeed, children born in this country are not immigrants as defined by federal law. *See* 8 U.S.C. § 1101(a)(3), (15); 8 U.S.C. § 1401(a). Defendants' suggestion that the executive branch is *per se* irreparably harmed whenever it is enjoined from

3

acting, *see* Doc. No. 158 at 8, is untenable. If that were so, the executive branch categorically would be relieved of its burden to establish irreparable harm whenever it seeks a stay. But it does not get a free pass on this "critical" factor. *Does 1-3*, 39 F.4th at 25 (quoting *Nken*, 556 U.S. at 434); *see Doe #1*, 957 F.3d at 1059 ("[I]f we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch … could be the subject of a preliminary injunction. That cannot be so."); *e.g.*, *Nat'l Urb. League v. Ross*, 977 F.3d 770, 779 (9th Cir. 2020) (denying stay pending appeal where federal agency defendant failed to establish harm).

Defendants also claim that this preliminary injunction prevents them from internally preparing for the citizenship-stripping policy to take effect (such as by "formulating relevant policies"), and thus will delay the policy's execution in the event Defendants succeed on appeal and the Order is no longer enjoined. Doc. No. 158 at 8. But "delay, without more, [does] not support a finding of irreparable harm." *Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir. 1983). That is especially true here, where any delay between an appellate ruling and the policy taking effect would be de minimis. By the Order's own terms, Defendants will need no more than 30 days to "issue public guidance" regarding implementation before the new policy takes effect. Doc. No. 1-1 at 3. So, if Defendants prevail on appeal—and as explained below, they will not—they will be able to implement the policy almost immediately, without any additional material delay. Finally, to the extent Defendants suggest that immediate implementation of the Order is important to the "larger immigration policy" of addressing "significant threats to national security and public safety," Doc. No. 158 at 9, there is not an iota of evidence in the record to support that assertion—and the federal government cites none. Even the Order itself does not proffer this justification, much less offer any support for it. *See* Doc. No. 1-1 at 1-2.

4

### B. Plaintiffs And The Public Will Be Harmed If The Order Takes Effect.

Even if Defendants had demonstrated irreparable injury, a stay would still be inequitable given the tremendous countervailing harms to Plaintiffs and the public if the Order takes effect. *Does 1-3*, 39 F.4th at 25 (stay may be improper even if movant would suffer irreparable harm). As this Court already found, Plaintiffs would face "unpredictable, continuing [fiscal] losses coupled with serious administrative upheaval"—and their residents, including the *Doe* Plaintiffs, would face "the threat of removal," "family separation" and "barriers to accessing critical … services." Doc. No. 144 at 25. Defendants fail to identify a single government or public interest that outweighs these harms. *See id.* at 26. Accordingly, and as this Court has already recognized, the balance of the equities favors enjoining Defendants from refusing to recognize the citizenship of Affected Children. *See* Doc. No. 144 at 29. Nothing in Defendants' stay motion alters that balance.[2]

Nor would narrowing the scope of the injunction remedy Plaintiffs' irreparable harm. As this Court already found based on a close analysis of the preliminary record, *see* Doc. No. 144 at 24-25, 29, allowing the Order to take effect anywhere will require Plaintiffs to design and implement burdensome updates to their program eligibility systems, and will result in lost federal funding to Plaintiffs whenever they provide services to Affected Children—whether born within their borders or not—whose eligibility for programs like Medicaid, CHIP, and Title IV-E would be recognized by Defendants but for the Order, *see* Doc. No. 5 at 25-26. As this Court put it, "nationwide relief is necessary to prevent [Plaintiffs] from suffering irreparable harm." Doc. No.

---

[2] Although Defendants note that some States believe the Order's policy is desirable, Doc. No. 158 at 6, 8, that is irrelevant to whether allowing it to take effect in those States would harm Plaintiffs. Further, despite "bear[ing] the burden of showing that [a stay] is justified," *Ark. Tchr. Ret. Sys.*, 527 F. Supp. 3d at 58, Defendants have produced no evidence that any countervailing real-world harms will result *anywhere* if the Order remains enjoined nationwide pending appeal.

144 at 29. And regardless of the *number* of Affected Children born outside the Plaintiffs' jurisdictions, the mere fact that this would undoubtedly and indisputably occur will require Plaintiffs to shoulder the costs and burdens of revamping their eligibility tracking and verification systems. *See* Section II.B., *infra*.

In sum, the equitable calculus is simple because the harms are wholly one-sided. Denying Defendants' stay request will cause no harm to Defendants. It will merely maintain a status quo that has existed for at least a century. However, granting the stay would deny the privileges of citizenship to children born during the pendency of this appeal, result in a loss of federal funding to Plaintiffs when they provide services to such children who otherwise would be eligible for federally-funded programs, and require Plaintiffs to alter their eligibility verification systems for such programs. And it would do this based on a stay motion in which Defendants do not even attempt to defend the Order's constitutionality.

## II.    DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS.

Defendants' motion forecasts that they will argue on appeal that Plaintiffs lack standing and that nationwide relief is inappropriate. Doc. No. 158 at 3-7. But this Court already rejected those arguments, and the First Circuit is highly likely to do the same. *See DeNovellis v. Shalala*, 135 F.3d 58, 62 (1st Cir. 1998) ("The party appealing a grant … of a preliminary injunction bears the heavy burden of showing that the district court committed a mistake of law or abused its discretion."). Defendants make no attempt to rehabilitate the Order's constitutionality, nor do they cite any case in which a court stayed an injunction of a policy, already found likely unlawful, based on a stay application devoid of any defense of the policy's actual lawfulness. And their attacks on Plaintiffs' standing and the scope of this Court's relief fare no better. Indeed, faced with essentially the same "merits" arguments in a parallel case, a Ninth Circuit motions panel majority had no trouble concluding that an emergency stay was unwarranted as Defendants had failed to show a

6

likelihood of success as to any of those arguments. *See Washington v. Trump*, No. 25-807, ECF No. 37.1 (Feb. 19, 2025) (order denying emergency motion for partial stay pending appeal).[3]

### A.    Plaintiffs Have Standing.

#### 1.    Defendants' Arguments Conflict With Binding Precedent.

Binding case law compels the conclusion that Plaintiffs have standing to challenge the Order, which undisputedly would deprive them of specific and substantial federal funds they otherwise would receive. *See* Doc. No. 144 at 8-11; Doc. No. 5 at 14-15, 21-23; Doc. No. 123 at 1-3. As this Court explained, Plaintiffs' asserted injuries are "precisely the same sort of direct financial impacts" that conferred standing in *Biden v. Nebraska*, 600 U.S. ___, 143 S. Ct. 2355, 2366 (2023), and *Department of Commerce v. New York*, 588 U.S. 752 (2019). Doc. No. 144 at 9-10; *see also Massachusetts v. HHS*, 923 F.3d 209, 222-27 (1st Cir. 2019) (Massachusetts had standing to challenge federal regulations that fiscally injured the Commonwealth by causing more women to access state-funded healthcare services). Like the plaintiffs in those cases, Plaintiffs "easily meet [the] standard" for Article III standing: the "direct financial harm" they will suffer is an utterly "ordinary" basis for federal jurisdiction. Doc. No. 144 at 8, 11.

Defendants do not even attempt to distinguish *Nebraska*, *New York*, or *Massachusetts*. Instead, Defendants resort to a single footnote in *United States v. Texas*, 599 U.S. 670 (2023), but that case does not resuscitate their otherwise doomed standing objections. *See* Doc. No. 144 at 11 (finding that "*Texas* simply does not aid the defendants here"). There, the Court held that Texas

---

[3] The third panel member would have denied Defendants' emergency stay request on the sole ground that Defendants failed to demonstrate any emergency justifying that relief, as required by Ninth Circuit Rule 27-3. *See Washington*, No. 25-807, ECF No. 37.1 at 3 (Feb. 19, 2025) (Forrest, C.J., concurring in denial of stay pending appeal, and reasoning that the bare fact that a district court's injunction prevents nationwide implementation of an executive branch policy "alone is insufficient" to warrant an emergency stay).

lacked standing to litigate its "extraordinarily unusual lawsuit" seeking "to order the Executive Branch to … make more arrests." 599 U.S. at 674, 686. Texas had claimed that the Executive's failure to prioritize arresting certain noncitizens cost Texas money because, if the federal government did not arrest those noncitizens, Texas might have "to incarcerate or supply social services" to them. *Id.* at 674. The Court held that Article III precludes "challenges to the Executive Branch's exercise of enforcement discretion over whether to arrest or prosecute," *id.* at 677, and that Texas's "theories of standing" failed to "overcome[] th[at] fundamental Article III problem," *id.* at 680 n.3. But here, that fundamental Article III barrier is absent, as Plaintiffs do not seek to order the Executive to arrest or prosecute anyone. *See Nebraska v. Su*, 121 F.4th 1, 13 n.5 (9th Cir. 2024) (recognizing that *Texas*'s holding is limited to situations "where the injury was not redressable" because the challenge was to "prosecutorial inaction").

*Biden v. Nebraska*—issued just one week after *Texas*—confirms that Defendants are overreading *Texas*. In *Nebraska*, the Supreme Court made clear that where a challenged executive action is the sole reason a State loses income it otherwise would have received, that action works a direct and cognizable Article III injury on that State, *see* 143 S. Ct. at 2366. As this Court has explained, "this case"—unlike *Texas*—involves such "direct effects." Doc. No. 144 at 10 n.8. The Order flips the citizenship status of Affected Children, directly turning off Plaintiffs' ability to collect income for serving them under various federal-state agreements. That is a direct harm indistinguishable from that suffered by the plaintiff State in *Nebraska*. Nothing in *Texas* supports a contrary conclusion.[4]

---

[4] Nor do any of the additional cases Defendants cite as analogous to *Texas* support their argument that Plaintiffs lack standing. *See* Doc. No. 158 at 5. In those cases, the States' claimed fiscal injuries were fatally speculative. *See Florida v. Mellon*, 273 U.S. 12, 18 (1927) (State's claim that federal tax law would cause residents to withdraw property from the State was "purely speculative");

8

Granting Defendants' stay motion based only on arguments that Plaintiffs' asserted fiscal injuries do not confer standing would be especially inappropriate given this Court's indication that the States also likely have standing based on independent sovereign injuries. Doc. No. 144 at 10 n.7. At the preliminary injunction hearing, this Court asked counsel for Defendants whether the Citizenship "[C]lause operates directly on the [S]tates," Doc. No. 142 (PI Hearing Tr. 40:12), by declaring that natural-born U.S. citizens are also "citizens … of the State wherein they reside," U.S. Const. amend. XIV, § 1. Counsel affirmed that "[i]t does," Doc. No. 142 (PI Hearing Tr. 40:14). This Court also noted that the States likely suffer sovereign injury from the Order because "state laws commonly define civic obligations such as jury service using eligibility criteria that include U.S. citizenship." Doc. No. 144 at 10 n.7 (citing N.J. Stat. Ann. § 2B:20-1(c) (juror qualifications); Mass. Gen. Laws Ann. ch. 234A, § 4 (same)).[5]

Defendants concede that by reducing the number of U.S. citizens within Plaintiffs' jurisdictions, the Order directly shrinks the pool of individuals eligible to serve on Plaintiffs' juries, vote in their elections, run for certain offices, and serve as certain critical state employees. *See* n.5, *supra*. However, they claim that States "have no sovereign interest" at stake here because the "federal government has plenary control" over who is a U.S. citizen. Doc. No. 158 at 5 n.1. But

---

*Washington v. FDA*, 108 F.4th 1163, 1177 (9th Cir. 2024) ("Idaho's prediction that elimination of the in-person dispensing requirement will lead to illegal use of mifepristone depends heavily on speculation"); *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024) (States' claimed injuries were "attenuated and speculative"); *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022) ("Speculation abounds over whether and how the Guidance's prioritization of the apprehension and removal of noncitizens in the three States will injure them."). By contrast, Plaintiffs' fiscal injuries are guaranteed to result from the Order by direct operation of federal law—a factual reality Defendants concede, *see* Doc. No. 142 (PI Hearing Tr. 38:2-17).

[5] *See also* Cal. Civ. Proc. Code § 203 (juror qualifications); N.J. Const. art. 2, § 1, cl. 3 (right to vote in state elections); Mass. Const. Amend. art. 3 (same); Cal. Const. art 2, § 2 (same); N.J. Const. art. 5, § 1, cl. 2 (right to hold office of governor); Cal. Const. art. 5, § 2 (same); N.Y. Const. art. 4, § 2 (same); N.J. Stat. Ann. § 52:17B-174(b) (eligibility to be juvenile corrections officer); Mich. Comp. Laws Ann. § 791.543 (eligibility to be corrections officer).

neither the Court nor Plaintiffs have claimed that States have authority to dictate who is a U.S. citizen. That lack of "control" is different from whether States can be *injured* by federal changes to who counts as a U.S. citizen. And here, States plainly have an Article III stake in this controversy because the Order directly impacts which of their residents can participate in core sovereign functions such as the election of their leaders and operation of their criminal justice systems.

### 2. Plaintiffs Do Not Rest Their Claims On The Interests Of Third Parties.

Seeking a way around *Nebraska, New York*, and *Massachusetts*, Defendants argue that Plaintiffs cannot litigate their Citizenship Clause claim because States lack Citizenship Clause rights, *see* Doc. No. 158 at 3-4. In essence, Defendants suggest that the Citizenship Clause has a "zone of interests" Plaintiffs cannot fall within. That argument fails for multiple reasons.

Most importantly, Defendants' argument ignores that States can and do litigate claims that a federal action violates individual rights where that federal action causes Article III injury to the States. This is exactly what happened in *Massachusetts*: The First Circuit held that the Commonwealth had standing to challenge federal regulations based on pocketbook injuries, *see* 923 F.3d at 222, including for its claims that the regulations violated equal protection, *see* 301 F. Supp. 3d 248, 250 (D. Mass. 2018). *See also California v. Azar*, 911 F.3d 558, 568, 570 (9th Cir. 2018) (States had standing based on pocketbook injuries to challenge federal regulations, including to litigate their claims that the regulations violated equal protection and the establishment clause); *cf. U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 733-34 (1st Cir. 2022) (adjudicating merits of State official's claim that federal subpoena for prescription drug records stored in state database violated Fourth Amendment privacy interests of patients whose records were sought). Of course, States may not litigate such claims solely in a *parens patriae* capacity where they do not suffer any Article III injury from the actions they challenge. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S.

255, 294-96 (2023) (Texas lacked standing to litigate equal protection claim where its asserted "pocketbook injury" was not caused by the placement preferences it challenged); *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966) (South Carolina lacked "standing as the parent of its citizens" to litigate claim that Voting Rights Act violated rights of residents without any claim of fiscal or other Article III injury to the State). But here, Plaintiffs press their *own* interests in avoiding fiscal harm—a perfectly "ordinary" Article III injury. Doc. No. 144 at 11; *see Nebraska*, 143 S. Ct. at 2366.[6] Because they have standing to protect themselves from this harm, they can argue that the Order is invalid because it violates the Citizenship Clause.

Defendants' seemingly contrary case law relies on discredited notions of "prudential standing" that have nothing to do with Article III. The language from *Warth v. Seldin*, 422 U.S. 490 (1975), and *Kowalski v. Tesmer*, 543 U.S. 125 (2004), that Defendants cite comes from portions of these cases discussing "prudential limitations" on the exercise of judicial power *apart* from those imposed by the Constitution. *Warth*, 422 U.S. at 498-99; *see Kowalski*, 543 at 129 ("In this case, we do not focus on the constitutional minimum of standing …"). But in the decades since *Warth* and *Kowalski* were decided, the Supreme Court has clarified that "prudential" limitations beyond those imposed by Article III are "in some tension with … the principle that 'a federal court's "obligation" to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014); *Ricco Jonas*, 24 F.4th at 733 ("bypass[ing]" federal government's argument that Fourth Amendment rights may not be invoked vicariously "[b]ecause this is an issue of prudential constraint, rather than Article

---

[6] As the Sixth Circuit has recently explained in detail, while States lack standing to sue in a "*parens patriae*" capacity "purely" to vindicate "their own citizens' interests," States have standing when they "assert[] some injury to their *own* interests separate and apart from their citizens' interests," such as when, like here, States challenge a federal policy that threatens "their *own* proprietary interests." *Kentucky v. Biden*, 23 F.4th 585, 594, 596 (6th Cir. 2022).

11

III standing"). Tellingly, Defendants fail to cite a single modern case in which a court declined to adjudicate a claim brought by a plaintiff with Article III standing based on "prudential" concerns.

In any event, Defendants' argument rests on the false premise that "the challenged Executive Order does not directly regulate the [S]tates." Doc. No. 158 at 4. As counsel for the federal government acknowledged, the Order in fact does so: It purports to dictate who, pursuant to the Citizenship Clause, automatically qualifies as a "citizen of the State wherein they reside." U.S. Const. amend. XIV, § 1. *See supra* at 9.

### B.    Nationwide Relief Is Proper.

Defendants are equally unlikely to succeed in arguing that nationwide relief was improper here. Defendants do not dispute that nationwide relief is appropriate where necessary to remedy a plaintiff's injuries. *See, e.g.*, *DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 423 (1st Cir. 2024); *Missouri v. Trump*, --- F.4th ----, 2025 WL 518130, *11 (8th Cir. Feb. 18, 2025). And as this Court recognized when granting nationwide relief, such relief is "necessary" here because Plaintiffs will be harmed if the Order takes effect outside their jurisdictions. *See* Doc. No. 144 at 29. This is because children and families commonly cross state lines, and even may be born in States in which they do not reside. As the undisputed record shows, Plaintiffs would have to account for this routine occurrence by completely redesigning their eligibility verification systems for federally funded benefits as long as children born in some parts of the country are not automatically citizens by virtue of their U.S. birth. *See, e.g.*, Doc. No. 5-2, ¶36; Doc. No. 5-5, ¶25. Indeed, the administrative challenges are compounded if birthright citizenship varies State by State—because Plaintiffs will have to develop a system that tracks the child's State of birth and applies different federal funding eligibility rules on that basis. *Cf. Missouri*, 2025 WL 518130, *11 (affirming nationwide injunction of federal loan forgiveness regulation where an alternative "servicer-dependent injunction would create chaos and uncertainty for borrowers and be difficult to

12

administer because loan accounts can shift between servicers. … A borrower could spend nine years living in Kansas, paying off loans thinking he would obtain forgiveness, only to move to Missouri … and no longer be eligible"). And when Plaintiffs provide services to any such children who would have been eligible for federally-funded benefits programs but for the Order, Plaintiffs will not receive federal funding for providing those services. *See* Doc. No. 5 at 26.

Defendants' response remains unpersuasive. *See* Doc. No. 158 at 6. Without evidentiary support, Defendants characterize the chances that any Affected Child born outside the Plaintiff States will receive relevant services within the Plaintiff States during the pendency of their appeal as "remote." *Id*. But numerous Plaintiff States border non-Plaintiff States, and children in border towns routinely cross state lines. To give just one illustration, a pregnant woman living in Clovis, New Mexico, could easily give birth at University Medical Center in Lubbock, Texas. The baby would not be a citizen if the Order were effective in Texas, and if the baby then received certain public services in her home State, New Mexico would need an eligibility verification system that verifies, tracks, and inputs information about the child's parents' immigration statuses. Furthermore, Plaintiffs' need to revamp their own eligibility systems to account for this inevitable scenario does not depend on *how many* such children are implicated in a given time period. Even if the volume is lower, Plaintiffs must do the full work of designing, implementing, and training their personnel on a new eligibility system that accounts for these real-world cases.[7] In short, the

---

[7] As the Court explained, a patchwork scheme of birthright citizenship also "risks creating a new set of constitutional problems," given the constitutional right to travel. Doc. No. 144 at 29 (citing *Saenz v. Roe*, 526 U.S. 489, 500-04 (1999)). Indeed, absent a nationwide injunction, Plaintiff States would be forced to deny Medicaid access to certain children based solely on the fact that they moved in from another State. Defendants' response to this concern is puzzling. *See* Doc. No. 158 at 5-6. They appear to acknowledge that the right to travel prohibits discrimination against "nonresidents who enter a State," including "to procure medical services," *Saenz*, 526 U.S. at 502. But they fail to explain how, consistent with that right, a state like New Mexico (for example)

13

harms that Plaintiffs have described and substantiated in detail, *see* Doc. No. 5 at 21-24, will occur absent nationwide relief. This Court properly entered such an injunction, and Defendants are highly unlikely to succeed in overturning that remedy on appeal.

### C.    No Other Limitation On The Injunction's Scope Is Warranted.

Defendants also ask the Court to narrow the injunction to permit implementation of the Order to the extent it "cause[s] no harm to the plaintiff states." Doc. No. 158 at 7. The Court should reject this unworkable suggestion to re-write the injunction with a vague, question-begging legal standard that will inevitably spawn subsidiary disputes about what kind of implementation harms Plaintiffs. It will also sow confusion regarding the Order's status and impact on the public. As written, this Court's injunction establishes a bright line prohibition on implementation of the Order that is clear and enforceable. Defendants fall far short of establishing that they are likely to succeed in persuading an appellate court otherwise. And as laid out above, they have not shown any emergency need for this sort of relief. *See* Section I.A., *supra*.

## CONCLUSION

The Court should deny Defendants' motion for a stay pending appeal.

---

could refuse to provide a child born in Texas with the same public health insurance it would provide to a child born within its borders. Yet the narrowed injunction Defendants appear to envision would seem to require just that.

February 24, 2025

ANDREA JOY CAMPBELL
   ATTORNEY GENERAL OF MASSACHUSETTS

Gerard J. Cedrone (BBO No. 699674)
   *Deputy State Solicitor*
Jared B. Cohen (BBO No. 689217)
   *Assistant Attorney General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2282
gerard.cedrone@mass.gov

*Counsel for the Commonwealth of Massachusetts*


ROB BONTA
   ATTORNEY GENERAL OF CALIFORNIA

Denise Levey*
   *Deputy Attorney General*
Michael L. Newman
   *Senior Assistant Attorney General*
Marissa Malouff*
Irina Trasovan*
   *Supervising Deputy Attorneys General*
Lorraine López*
Delbert Tran*
Annabelle Wilmott*
   *Deputy Attorneys General*
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
(213) 269-6269
denise.levey@doj.ca.gov

*Counsel for the State of California*


Respectfully submitted.

MATTHEW J. PLATKIN
   ATTORNEY GENERAL OF NEW JERSEY

/s/ Viviana Hanley
_____
Viviana M. Hanley (BBO No. 707266)
   *Deputy Attorney General*
Jeremy M. Feigenbaum*
   *Solicitor General*
Shankar Duraiswamy*
   *Deputy Solicitor General*
Shefali Saxena*
Elizabeth R. Walsh*
   *Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(862) 350-5800
viviana.hanley@njoag.gov

*Counsel for the State of New Jersey*


PHIL WEISER
   ATTORNEY GENERAL OF COLORADO

Shannon Stevenson*
   *Solicitor General*
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov

*Counsel for the State of Colorado*

15

WILLIAM M. TONG
   ATTORNEY GENERAL OF CONNECTICUT

William M. Tong*
   *Attorney General*
Janelle Rose Medeiros*
   *Assistant Attorney General*
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5020
janelle.medeiros@ct.gov

*Counsel for the State of Connecticut*

KATHLEEN JENNINGS
   ATTORNEY GENERAL OF DELAWARE

Ian R. Liston**
   *Director of Impact Litigation*
Vanessa L. Kassab**
   *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

BRIAN L. SCHWALB
   ATTORNEY GENERAL
   FOR THE DISTRICT OF COLUMBIA

Nicole S. Hill*
   *Assistant Attorney General*
Public Advocacy Division
Office of the Attorney
  General for the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
(202) 727-4171
nicole.hill@dc.gov

*Counsel for the District of Columbia*

ANNE E. LOPEZ
   ATTORNEY GENERAL OF HAWAIʻI

Kalikoʻonālani D. Fernandes*
   *Solicitor General*
425 Queen Street
Honolulu, Hawaiʻi 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

AARON M. FREY
   ATTORNEY GENERAL OF MAINE

Sean D. Magenis (BBO No. 658578)
   *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
sean.d.magenis@maine.gov

*Counsel for the State of Maine*

ANTHONY G. BROWN
   ATTORNEY GENERAL OF MARYLAND

Adam D. Kirschner*
   *Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
akirschner@oag.state.md.us
(410) 576-6424

*Counsel for the State of Maryland*

| | |
|---|---|
| DANA NESSEL<br>  ATTORNEY GENERAL OF MICHIGAN | KEITH ELLISON<br>  ATTORNEY GENERAL OF MINNESOTA |
| Toni L. Harris*<br>Stephanie Service*<br>Neil Giovanatti*<br>  *Assistant Attorneys General*<br>Michigan Department of Attorney General<br>525 W. Ottawa<br>Lansing, Michigan 48909<br>(517) 335-7603<br>harrist19@michigan.gov<br><br>*Counsel for Attorney General Dana Nessel<br>  on behalf of the People of Michigan* | John C. Keller*<br>  *Chief Deputy Attorney General*<br>445 Minnesota Street, Suite 1200<br>St. Paul, MN 55101-2130<br>651-757-1355<br>john.keller@ag.state.mn.us<br><br>*Counsel for the State of Minnesota* |
| AARON D. FORD<br>  ATTORNEY GENERAL OF NEVADA | RAÚL TORREZ<br>  ATTORNEY GENERAL OF NEW MEXICO |
| Heidi Parry Stern*<br>  *Solicitor General*<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>(702) 486-5708<br>hstern@ag.nv.gov<br><br>*Counsel for the State of Nevada* | James W. Grayson*<br>  *Chief Deputy Attorney General*<br>New Mexico Department of Justice<br>408 Galisteo St.<br>Santa Fe, NM 87501<br>(505) 218-0850<br>jgrayson@nmdoj.gov<br><br>*Counsel for the State of New Mexico* |
| LETITIA JAMES<br>  ATTORNEY GENERAL OF NEW YORK | JEFF JACKSON<br>  ATTORNEY GENERAL OF NORTH CAROLINA |
| Zoe Levine*<br>  *Special Counsel for Immigrant Justice*<br>Office of the New York State Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>zoe.levine@ag.ny.gov<br>(212) 416-8329<br><br>*Counsel for the State of New York* | Daniel P. Mosteller*<br>  *Associate Deputy Attorney General*<br>North Carolina Department of Justice<br>PO Box 629<br>Raleigh, NC 27602<br>(919) 716-6026<br>dmosteller@ncdoj.gov<br><br>*Counsel for the State of North Carolina* |

| | |
|---|---|
| PETER F. NERONHA<br>  ATTORNEY GENERAL OF RHODE ISLAND | CHARITY R. CLARK<br>  ATTORNEY GENERAL OF VERMONT |

Katherine Connolly Sadeck (BBO No. 681501)
  *Solicitor General*
Leonard Giarrano IV*
  *Special Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI  02903
(401) 274-4400, Ext. 2480
ksadeck@riag.ri.gov

*Counsel for the State of Rhode Island*

Julio A. Thompson*
  *Co-Director, Civil Rights Unit*
109 State Street
Montpelier, VT 06509
(802) 828-5519
julio.thompson@vermont.gov

*Counsel for the State of Vermont*

JOSHUA L. KAUL
  ATTORNEY GENERAL OF WISCONSIN

Gabe Johnson-Karp*
  *Assistant Attorney General*
Wisconsin Department of Justice
17 West Main Street
P.O. Box 7857
Madison, WI 53707-7857
(608) 267-8904
johnsonkarpg@doj.state.wi.us

*Counsel for the State of Wisconsin*

DAVID CHIU*
  CITY ATTORNEY, CITY AND COUNTY
  OF SAN FRANCISCO

Yvonne R. Meré*
  *Chief Deputy City Attorney*
Sara J. Eisenberg*
  *Chief of Complex and Affirmative Litigation*
Mollie M. Lee*
  *Chief of Strategic Advocacy*
David S. Louk*
Molly J. Alarcon*
  *Deputy City Attorneys*
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
(415) 505-0844
david.louk@sfcityatty.org

*Counsel for the City and County of San Francisco*

\*   admitted *pro hac vice*
\*\* admitted *pro hac vice*; notice of appearance forthcoming