# EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW JERSEY, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-10139-LTS |

## DECLARATION OF MARICRIS ACON

I, Maricris Acon, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Deputy Director of the Children, Adolescents, Young Adults Services (CAYAS) Division at the California Department of Developmental Services ("DDS"). I have been Deputy Director of CAYAS since January 2023. In this role, I oversee Early Start Policy and Operations for the State of California. The Early Start (ES) program is California's statewide early intervention program for infants and toddlers with developmental delays or at risk for having a developmental disability and their families. This program is California's response to the 1986 enactment of the Early Intervention Program for Infants and Toddlers with Disabilities under the Individuals with Disabilities Education Act.

2. I hold a master's degree in public administration from California State University, East Bay. I also hold a bachelor's degree from Pamantasan ng Lungsod ng Maynila in the Philippines. Before becoming Deputy Director of CAYAS at DDS, I served as the Deputy Director of Federal Programs in the Waiver and Rates Division from May 2020 to March 2023. Prior to

being Deputy Director, I was the Assistant Division Chief of Federal Programs from July 2018 to May 2020. Prior to my time at DDS, I spent approximately 12 years at the California Department of Finance. I was the Principal Program Budget Analyst for the Medicaid and Children's Health Insurance programs from October 2013 to June 2018. I was a Finance Budget Analyst from May 2007 to September 2013, and a Finance Program Evaluator from February 2006 to April 2007.

3. I submit this Declaration to explain certain impacts on the State of California resulting from the potential narrowing of the current injunction from Executive Order 14160.

4. I have compiled the information in the statements set forth below through my personal knowledge, through department personnel who have assisted me in gathering this information for our department, and through communications with regional centers and stakeholders that provide information to DDS related to ES services in California. I have also familiarized myself with the alternative injunctive scopes proposed by the federal government in order to understand the immediate impact of their implementation on California.

5. DDS is responsible for overseeing the coordination and delivery of services and supports to more than 500,000 Californians with developmental disabilities including cerebral palsy, intellectual disability, autism, epilepsy and related conditions. The state's service system is designed to meet the needs and choices of individuals at each stage of their lives, and, to the extent possible, serve them in their home communities, providing choices that are reflective of lifestyle, cultural and linguistic backgrounds.

6. Under the federal Individuals with Disabilities Act ("IDEA"), states are required to provide Early Intervention Services ("EIS"), such as speech or occupational therapy, to children up to

three years old with certain disabilities and developmental delays. In addition, Early Start provides EIS to infants and toddlers at risk for developmental delays or disabilities. Risk factors include infants born prematurely or at low birth weight that put infants at a higher risk of developmental delay or disability. In California, DDS administers and provides EIS for all eligible children and their families, regardless of the families' income level or the child's immigration status, through the Early Start (ES) program.

7. Direct services for children enrolled in EIS are principally funded by the State and a relatively small amount from federal Part C grant funds but the federal government covers 50 percent of the costs of certain services (i.e. infant development program) for children enrolled in the Early Start program and who qualify for federal-state Medicaid program ("Federal-State Medicaid"). Children are eligible for Federal-State Medicaid if they are U.S. citizens or "qualified aliens" and their family income is below certain thresholds.

8. There are approximately 58,000 children per month in California receiving EIS, of which approximately 15.4 percent, are enrolled in Federal-State Medicaid.

9. Before the Executive Order, children born in California were U.S. citizens by birthright regardless of their parents' immigration status and would be eligible for Federal-State Medicaid provided they met certain income or eligibility requirements. If those children were enrolled in Federal-State Medicaid and needed EIS in the first three years of life, DDS would ensure those services through regional centers and service providers and receive a 50 percent cost reimbursement from the federal government. If those children needed EIS, but were ineligible for Federal-State Medicaid, DDS would still be required to provide EIS, but would not receive any reimbursement from the federal government and instead would have to rely on other funds. Thus, in California, the state ensures services to children needing EIS but would

not be able to capture federal funding if those children would be deemed ineligible for Medicaid due to no longer being considered citizens of the United States. In such instances, California mainly would have to use other funds for EIS to children within the state.

10. DDS has learned that many families entitled to EIS are scared and confused by the immigration changes and policies being implemented by the federal government, including the Executive Order. Many families are fearful that if they seek services, including EIS, they may be subject to detention by the federal government. DDS anticipates that the Executive Order would have far-reaching effects, and many families, including families that include parents and/or children who are U.S. citizens, will not seek needed EIS or may decline assessments for special education services for their developmentally delayed children, even though eligible to do so under California state law, which does not deny services due to the child's immigration status. DDS expects that many impacted families it serves, including those who may have moved into California from outside of the Plaintiff States, will also be confused about the proposed injunction and its implications for their children's citizenship status and eligibility for Early Start.

11. DDS understands that the narrowed injunction could result in children within California who are eligible for federally funded benefits and yet whom the federal government would not otherwise treat as citizens. If this occurs, the DDS anticipates that there is a substantial likelihood that the parents of such children would be chilled from accessing EIS, because of fear that doing so could subject their family to a heightened risk of deportation. In its communications with regional centers and other stakeholders, DDS has already heard of families declining EIS services due to fears of deportation and those fears will increase.

12. If individuals are chilled from seeking EIS, this will result in a cost to California. Children with developmental delays needing EIS but not receiving services do not improve with the passage of time. The lack of EIS exacerbates developmental delays which can hamper a child's speech, physical, and cognitive development. Children without timely EIS enter the California public school system where they will likely need more intensive services, which will be more costly and burdensome to provide. DDS has found that the earlier services are provided, the more cost effective and beneficial those are to the child. Thus, delays in providing EIS will increase the costs that California must ultimately bear and will result in greater harm to children. Children who do not receive appropriate EIS then become more likely to need services under California's Lanterman Developmental Disabilities Service Act, at a significant fiscal cost to the state.

13. Understanding the importance of EIS to children, DDS has expended time and resources on outreach efforts to meet federal regulations that require state entities such as DDS to identify and evaluate the service needs of children experiencing developmental delays or are at risk for developmental delays or disabilities. DDS anticipates that this will become a more difficult process if individuals are chilled from seeking services due to fear of deportation.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Executed on July 11, 2025, in Roseville, California.



Maricris Acon