# EXHIBIT L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW JERSEY, *et al.*

    Plaintiffs,

v.

DONALD J. TRUMP, *et al.*

    Defendants.

Civil Action No.: 1:25-cv-10139

### DECLARATION OF BRIAN CAMPBELL

I, Brian Campbell, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Administrator for the Economic Security Administration ("ESA") at the District of Columbia Department of Human Services ("DHS"). I have served in this role since January 2025. Since June 2024, I had served as Interim Administrator for ESA. Prior to serving in these roles, I held a variety of positions within DHS since joining in 2007.

2. In my current role, I oversee the administration of public assistance benefits for federally and locally funded benefits programs in the District of Columbia. I also manage the ESA to ensure all programs administered by ESA, including the Temporary Assistance for Needy Families ("TANF") program, the Supplemental Nutrition Assistance Program ("SNAP"), and Medicaid, are administered in compliance with federal and local statutes and regulations. I also coordinate with the Director of the District Access System (DCAS), the District's system of record for benefits eligibility, regarding system-related functions.

1

3. I have compiled the information in the statements set forth below through personal knowledge, through agency personnel who have assisted me in gathering this information from our agency, and on the basis of documents that have been provided to and/or reviewed by me.

4. I submit this declaration to explain the harmful impact that the January 20, 2025, executive order titled "Protecting the Meaning and Value of American Citizenship" ("Executive Order 14160") will have on the District in the absence of a nationwide injunction.

5. The mission of the DC Department of Human Services is to provide meaningful and equitable services, supports, and access to resources for District residents.

6. Within DHS, ESA determines eligibility for locally and federally funded public assistance programs for District residents, including but not limited to Medicaid, the Children's Health Insurance Program (CHIP), SNAP, and TANF.

7. To qualify for many of these programs, an individual must be a U.S. citizen or have a qualified immigration status.

8. Presently, all children born in the United States, including in the District, are U.S. citizens.

9. I have been advised that the federal government has proposed narrowing the injunction to provide that children born in the United States are no longer deemed citizens but that children residing in the Plaintiff States may still be eligible for participation in federally funded programs, such as Medicaid, CHIP, and TANF.

10. If the injunction were narrowed in this way, our agency would need to expend significant resources updating our policies, training materials, and education and outreach materials to reflect these changes. We would also need to retrain staff.

2

11. DHS operates five in-person service centers throughout the city. At these service centers, DHS staff help District residents with applying for public assistance programs and answer questions that customers may have about public assistance programs, including whether they may be eligible depending on their citizenship status. Over 400 DHS staff work across these service centers.

12. DHS also operates a call center, which functions as a virtual eligibility center, with over 70 staff who process benefits and answer questions from District residents, including regarding the eligibility requirements for public assistance programs.

13. DHS would need to retrain these staff on eligibility for federally funded public assistance programs, such as Medicaid, CHIP, SNAP, and TANF, and also on the processes for establishing eligibility for these benefits programs, so that they could correctly advise individuals about these programs.

14. DHS would also need to make changes to dozens of notices comply with our obligations to verify individuals' eligibility for these public assistance programs.

15. Currently, to determine that a person is eligible for these federally funded public assistance programs based on their citizenship or immigration status, ESA requires applicants to provide their Social Security Numbers (SSN), which ESA must then verify.

16. Infants born in the U.S. typically receive SSNs at birth through the Social Security Administration's (SSA) Enumeration at Birth (EAB) program.

17. An applicant's SSN is used to make records searchable in the Income Eligibility Verification System (IEVS) that DHS and other state agencies are legally required to use for purposes of determining eligibility for numerous public assistance programs, like TANF, SNAP, and Medicaid.

18. Current regulations by the Food and Nutrition Service (FNS) and the U.S. Department of Health and Human Services (HHS) require an applicant to provide an SSN to apply for SNAP or TANF.

19. For SNAP for newborns, there is a small grace period during which the applicant household may provide proof that they have applied for the child's SSN in lieu of the SSN itself.

20. If the child cannot apply for or obtain an SSN, DHS will not legally be able to add these children to SNAP or TANF cases absent a change in FNS or HHS regulations, even though these children would purportedly be eligible for SNAP and TANF under the proposed narrowed injunction.

21. DHS would also have to update its eligibility system to prevent automatic case terminations of denials for failure to provide an SSN for the children who would remain eligible for federally funded benefits under a narrowed injunction, while ensuring that the system still generates automatic terminations for all other individuals who fail to provide an SSN. Presently, has a system release schedule built and resourced 18 months out. Any new development would compromise the existing release schedule.

22. DHS would also need to retrain staff about processes for verifying eligibility. As noted above, DHS operates five in-person service centers throughout the city that are staffed by Over 400 people, and it operates a call center that is staffed by over 70 people.

23. DHS expects that many impacted families it serves, including those who may have previously resided in another state, will be confused about the proposed injunction and its implications for their children's citizenship status and eligibility for federally funded benefits.

4

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of July 2025, in Washington, D.C.

*Brian Campbell*
Brian Campbell
Administrator, Economic Security Administration
District of Columbia Department of Human Services

5