# EXHIBIT O

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW JERSEY, *et al.*

    Plaintiffs,

v.

DONALD J. TRUMP, *et al.*

    Defendants.

Civil Action No.: 1:25-cv-10139

**DECLARATION OF JUDY MOHR PETERSON**

I, Judy Mohr Peterson, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I serve as the Med-QUEST Division Administrator for the State of Hawaiʻi's Department of Human Services. I have been in this role since 2015. Prior to that, I served as the Medicaid Director for the Oregon Health Authority in the State of Oregon (2009-June 2015).

2. As the Medicaid Director, I am responsible for executive-level oversight and administration of State of Hawaii's Medicaid program.

3. I have compiled the information in the statements set forth below through personal knowledge, through agency personnel who have assisted me in gathering this information from our agency, and on the basis of documents that have been provided to and/or reviewed by me. I have also familiarized myself with the alternative injunctive scopes proposed by the federal government in order to understand the immediate impact of their implementation on Hawaiʻi.

4. I submit this declaration to explain the harmful impact that the January 20, 2025, executive order titled "Protecting the Meaning and Value of American Citizenship" ("Executive Order 14160") will have on Hawai'i's medical assistance program, including if the injunction is narrowed along the lines suggested by the federal government in its recent filing.

### Verifying Eligibility for State Social Services Programs

5. The Department of Human Services is the single state agency responsible for administering the State of Hawai'i Medicaid program, Med-QUEST, through its Med-QUEST Division. Med-QUEST provides low-income individuals with medical assistance for comprehensive healthcare coverage and access to affordable, integrated, and high-quality healthcare at no or low cost. Med-QUEST's coverage includes medical, dental, mental health, substance use disorder treatment, and long-term care.

6. When a family seeks medical assistance for their child through Med-QUEST, Med-QUEST screens for eligibility for Federal-State Medicaid.

### Obtaining Social Security Numbers

7. As a condition of eligibility for benefits under Federal-State Medicaid, the State is required by federal statute to collect from each applicant for benefits the individual's social security account number (SSN). *See* 42 U.S.C. § 1320b-7(a)(1), (b)(2); 42 C.F.R. § 435.956(d).

8. Federal regulations delineate limited exceptions to this requirement. Specifically, Med-QUEST is not required to collect an SSN from an individual: who is not eligible to receive an SSN; who lacks an SSN and is only eligible to be issued an SSN for a valid non-work reason in accordance with 20 C.F.R. § 422.104; or who refuses to obtain an SSN because of well-established religious objections. *See* 42 C.F.R. § 435.910(a), (h)(1). Instead, Med-QUEST may issue a Medicaid identification number to such individuals, provided that the State has

2

established the individual is otherwise entitled to such federal benefits. *See id.* § 435.910(h)(4); 20 C.F.R. § 422.104(a)(3)(i). The Hawai'i Administrative Code also allows Med-QUEST to issue a Medicaid identification number to an individual who is born to a Medicaid mother. HAR § 17-1714.1-11 (c) (1) (A). And a newborn under the age of one year is also not required to provide an SSN. HAR § 17-1714.1-11 (c) (3).

9. U.S. citizens are eligible for SSNs and otherwise do not fall into these regulatory exceptions. Thus, Med-QUEST is required by federal law to collect an SSN from every citizen who applies for Federal-State Medicaid benefits. *See* 42 U.S.C. § 1320b-7(a)(1), (b)(2); 42 C.F.R. § 435.910(a).

10. Ordinarily, infants born in the U.S. would receive an SSN at birth through the Enumeration at Birth (EAB) program.

11. Med-QUEST is prohibited by federal law from denying or delaying services to otherwise eligible individuals pending issuance of an SSN. *See* 42 C.F.R. § 435.910(f).

## Verification of Citizenship or Qualifying Immigration Status

12. In addition to collecting SSNs, Med-QUEST is required by federal law to have a Federal-State Medicaid eligibility verification system. *See* 42 U.S.C. § 1320b-7(a), (d).

13. As part of that system, Federal-State Medicaid applicants self-attest that they are citizens or have a qualifying immigration status. *See* 42 U.S.C. § 1320b-7(d)(1)(A).

14. In addition to this self-attestation, Med-QUEST must verify the applicant's citizenship or qualifying immigration status. *See* 42 C.F.R. § 435.956(a).

**Citizenship Verification**

15. If the applicant attests that they are a U.S. citizen, Med-QUEST must first attempt to verify that information through a federal electronic service known as the Federal Data Services

3

Hub. *See* 42 C.F.R. § 435.956(a)(1)(i). The Hub is a centralized platform that allows Med-QUEST to access data from various federal agencies, including SSA and the Department of Homeland Security. *See* 42 C.F.R. § 435.949.

16. The Hub can verify U.S. citizenship through SSA's electronic service known as the State Verification and Exchange System (SVES) and its real-time, online version, State On-Line Query (SOLQ), or through Homeland Security's electronic service, Systematic Alien Verification for Entitlements (SAVE), administered by the United States Citizenship and Immigration Services. SVES/SOLQ can verify either U.S.-born or naturalized/derived U.S. citizenship, but SAVE can only verify naturalized/derived U.S. citizenship.

17. Based on Med-QUEST's experience utilizing the Federal Data Services Hub, if information about an infant has never been submitted to SSA or to the Department of Homeland Security, such as likely would be the case if an infant were born in the U.S., did not receive an SSN at birth through EAB, and had not received any federally-funded public benefits, then neither SVES/SOLQ nor SAVE would have any information about the infant. Thus, that infant's citizenship could not be verified via the Hub.

18. As an alternative to verifying citizenship through the Hub, Med-QUEST may utilize any mechanism that will reduce administrative costs "while maximizing accuracy, minimizing delay, meeting applicable requirements relating to the confidentiality, disclosure, maintenance, or use of information, and promoting coordination with other insurance affordability programs" if approved by the U.S. Secretary of Health and Human Services (HHS). 42 C.F.R. § 435.945(k); s*ee* 42 C.F.R. § 435.956(a)(1)(i).

19. Med-QUEST does not have any such alternative method of verifying citizenship approved by the HHS Secretary. It would require expenditure of Med-QUEST's time and resources to develop such an alternative method, submit it to the HHS Secretary, and obtain approval.

20. If Med-QUEST is unable to verify citizenship either through the Federal Data Services Hub and has no alternative method approved by the HHS Secretary, then Med-QUEST has several additional verification options. *See* 42 C.F.R. § 435.956(a)(1)(ii).

21. Med-QUEST may verify citizenship through a data match with SSA. *See* 42 C.F.R. § 435.956(a)(1)(ii)(A). However, if information about an infant has never been submitted to SSA, such as likely would be the case if an infant were born in the U.S., did not receive an SSN at birth through EAB, and had not received any federally-funded public benefits, then SSA would not have any information on the infant with which to provide a data match.

22. Med-QUEST may verify citizenship through the collection of "sufficient documentary evidence of citizenship." 42 C.F.R. § 435.407(a); *see* 42 C.F.R. § 435.956(a)(1)(ii)(B). Most such documents are inapplicable to a young infant who never interacted with SSA or the Department of Homeland Security. *See* 42 C.F.R. § 435.407(a). The most likely applicable option would be "[v]erification with a State vital statistics agency documenting a record of birth." *See* 42 C.F.R. § 435.407(a)(7). For Med-QUEST to utilize this option for a child born out of State, Med-QUEST would have to contact the birth State's vital statistics agency. That would require expenditure of the Department's time and resources.

23. Only if all other options are unavailable, Med-QUEST may verify citizenship by submitting a birth certificate showing a U.S. place of birth along with proof of identity. *See* 42 C.F.R. § 435.407(b). For children under the age of 19, identity may be established by "a clinic, doctor,

hospital, or school record, including preschool or day care records." *See* 42 C.F.R. § 435.407(c)(viii).

24. In sum, verifying citizenship for an infant who received an SSN at birth through EAB is easy. Med-QUEST may conduct this verification simply via the Federal Data Services Hub. But verifying citizenship for an infant born out of State who never received an SSN at birth is more complicated and requires greater expenditures of Med-QUEST's time and resources.

**Qualifying Immigration Status Verification**

25. If the applicant attests that they have a qualifying immigration status, Med-QUEST must first attempt to verify that status through the Federal Data Services Hub. *See* 42 C.F.R. § 435.956(a)(2)(i).

26. Based on Med-QUEST's experience utilizing the Federal Data Services Hub ("the Hub"), if information about an infant has never been submitted to SSA or to the Department of Homeland Security, such as likely would be the case if an infant were born in the U.S., did not receive an SSN at birth through EAB, and had not received any federally-funded public benefits, then it is unlikely that there would be any information about that infant in the Federal Data Services Hub. Thus, that infant's qualifying status could not be verified via the Hub.

27. As an alternative to verifying immigration status through the Hub, Med-QUEST may utilize any mechanism that will reduce administrative costs "while maximizing accuracy, minimizing delay, meeting applicable requirements relating to the confidentiality, disclosure, maintenance, or use of information, and promoting coordination with other insurance affordability programs" if approved by the U.S. Secretary of Health and Human Services (HHS). 42 C.F.R. § 435.945(k); *see* 42 C.F.R. § 435.956(a)(2)(i).

28. Med-QUEST does not have any such alternative method of verifying immigration status approved by the HHS Secretary. It would require expenditure of the Department's time and resources to develop such an alternative method, submit it to the HHS Secretary, and obtain approval.

29. To the extent that the federal government would deem noncitizen children eligible for Federal-State Medicaid based on place of birth, Med-QUEST would need to develop a method for accurately verifying place of birth. Developing such a method would likely require arranging information sharing agreements with other State's vital statistics agencies. Med-QUEST does not currently have such agreements and developing them would take a lot of time and resources and depend on the cooperation of other States' agencies.

30. There are no alternatives to verify qualifying immigration status other than through the Federal Data Services Hub or an alternative method approved by the HHS Secretary. *See* 42 C.F.R. § 435.956(a)(2).

31. In Med-QUEST's experience, verifying new qualifying immigration statuses can present administrative challenges, even when federal databases are made available to do so.

32. In comparison to verifying citizenship for an infant who received an SSN at birth through EAB, verifying qualifying status for a noncitizen infant born out of State who never received an SSN at birth and does not fall into any recognized immigration category is fraught with complication and uncertainty. Conducting such verification, as Med-QUEST is statutorily required to do, would require a significant expenditure of Med-QUEST's time and resources.

**Reasonable Opportunity Period**

33. If either citizenship or immigration status cannot be fully verified through the Federal Data Services Hub or documentary evidence at the time of application, Med-QUEST must allow

the applicant a "reasonable opportunity period," which is usually 90 days, to prove their status. *See* 42 U.S.C. § 1320b-7(d)(4); 42 C.F.R. § 435.956(b).

34. During this period, Med-QUEST is required to furnish benefits provided that the applicant has completed a declaration of their status under penalty of perjury. 42 C.F.R. §§ 435.956(b); 435.406(a)(1), (2).

35. At the end of the reasonable opportunity period and any extensions, if the applicant's citizenship or immigration status has still not been verified, Med-QUEST may have to terminate eligibility. *See* 42 U.S.C. § 1320b-7(d)(5)(A).

### Additional Impacts of Proposed Injunction

36. Med-QUEST understands that the federal government proposes a narrowed injunction of Executive Order 14160 pursuant to which a child could be born outside of the Plaintiff States in this litigation, not be considered a citizen or eligible for federally funded benefits in the child's birth State, but be considered eligible for federally funded benefits, including Medicaid, within the borders of the Plaintiff States (including Hawai'i)—and possibly also be considered a citizen for all intents and purposes while within the Plaintiff States' borders.

**Staff Training Expenses**

37. Narrowing the injunction in this way would cause Med-QUEST to expend time and resources training staff and community partners on the meaning and implication of the injunction. Med-QUEST has never experienced citizenship rules that vary by State.

38. To the extent that the federal government intends to develop a new status for federally funded benefits eligible noncitizens born within the U.S., Med-QUEST would need to train its staff on this new status and how to verify it.

8

39. To the extent that the narrowed injunction would result in many more children within Hawai'i who were born out of State, but within the U.S., and did not receive an SSN at birth, Med-QUEST will have to develop methods for verifying these children's citizenship including identifying their birth state, as detailed above, and will have to train staff and develop appropriate technology to do so.

**Outreach and Education Expenses**

40. Med-QUEST expects that many impacted families it serves, especially those who may have moved into Hawai'i from outside of the Plaintiff States, will be confused about the proposed injunction and its implications for their children's citizenship status and eligibility for federally funded benefits like Medicaid.

41. If the injunction is so narrowed, Med-QUEST would engage in education and outreach efforts to inform impacted families about the impact of the injunction.

42. In Med-QUEST's experience, such educational and outreach efforts can be particularly challenging when the intended audience consists of vulnerable communities who may be fearful of interacting with the government, such as certain immigrant communities.

43. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 14 day of July 2025, in Honolulu, Hawai'i.

Judy Mohr Peterson
Med-QUEST Administrator
Department of Human Services