# EXHIBIT Z

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, *et al.*<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, *et al.*<br><br>　　　　　　Defendants. | No. 1:25-cv-10139-LTS |

### DECLARATION OF SUSAN EHRLICH

I, Susan Ehrlich, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Chief Executive Officer of Zuckerberg San Francisco General Hospital and Trauma Center ("ZSFG"). I have served in this role since April 2016. Before working at ZSFG, I was the Chief Executive Officer of the San Mateo Medical Center. I have a Doctor of Medicine from the University of California, San Francisco, a Master's degree in Public Policy from the University of California, Berkeley - Goldman School of Public Policy, and a Bachelor's degree from Duke University.

2. ZSFG is a community and safety net hospital and Level 1 trauma center owned and operated by the City and County of San Francisco ("San Francisco" or "the City"). It is dedicated to improving the health and wellness of our community. We provide world-class care for all the people of San Francisco, regardless of ability to pay or immigration status. ZSFG is the City's largest primary care facility and part of the SF Health Network, the only Level 1 Trauma Center in San Francisco and northern San Mateo, the City's only psychiatric emergency department available 24 hours, 7 days a week, and the hub of the City's disaster response in an earthquake or

1

major crisis. ZSFG provides medical care to about 100,000 San Franciscans every year.

3.      I have familiarized myself with the alternative injunctions proposed by the federal government in order to understand the immediate impact of their implementation on ZSFG, based on my knowledge and expertise. I understand that the federal government has proposed an injunction that would treat certain babies born in different states differently for purposes of some benefits of citizenship, such as eligibility for federally-funded programs, but whom the federal government otherwise would not treat as citizens. I think it is reasonable to expect that this patchwork injunction will deter immigrants who would otherwise be eligible for Medicaid (called Medi-Cal in California) through their newborn baby from enrolling, either due to fear of deportation or confusion about eligibility (or both). And, worse, I think it is reasonable to expect that the federal government's proposal will deter entire families from obtaining health care and public benefits because they fear deportation. As I explain in this declaration, the federal government's proposal would therefore result in direct harms to San Francisco and its public hospital due to people delaying or failing to seek health care services.

4.      Because the federal government's proposal will deter people from participating in Medi-Cal and will deter people from seeking regular health care, many will develop a health condition so severe that they will require emergency services. The inevitable replacement of primary care services with unfunded emergency services will irreparably harm ZSFG by imposing significant, unreimbursed costs.

5.      For example, many people with diabetes take medication to control their disease. If they experience interruptions in taking their medications due to fear of obtaining health care because they fear being deported or incorrectly believe they are ineligible for Medi-Cal, they could experience hyperglycemia, and/or have a stroke or a heart attack, requiring an inpatient hospital stay. Similarly, many individuals with hypertension take blood pressure medications. If they have an interruption in taking their blood pressure medications, they may have a stroke or heart

2

attack, which may require the assistance of a trauma team, a stroke team, the injection of life saving medications, or an in-patient medical stay.

6. The federal government's proposal may induce mental health and substance abuse problems in affected individuals, and may also deter people from accessing mental health services, all of which will result in further costs and harms to ZSFG. Patients who forego treatment for their mental health needs will often see their conditions worsen. Untreated mental health conditions can result in a variety of bad outcomes for the individual, including suicide, substance use, and violence. There are also negative impacts on public safety, burdens on law enforcement and other emergency service providers, and resource demands from increased psychiatric care. Patients who forego outpatient mental health services for their needs may end up requiring acute services, which are more expensive for providers like ZSFG. Greater reliance on acute services will place an immense strain on ZSFG's already in-demand emergency psychiatric services, and will require ZSFG to spend more money on case management, additional staffing in the emergency psychiatric unit, and in providing acute services to patients.

7. The federal government's proposal will also deter people from accessing nutrition assistance in San Francisco. At present, approximately 60% of patients in our emergency department are food insecure, and this proportion would likely increase under the federal government's proposal. People who feel they have no choice but to forgo nutrition assistance, experience hunger, and suffer from the stress of not knowing whether they will be able to remain in the country are at increased likelihood of illness. This is another way the federal government's proposal would increase costs to ZSFG, as these sicker individuals will inevitably require expensive and unfunded emergency services when they forego primary care and preventative services.

8. The shift in treatment demands from clinical care to emergent care have significant cost impacts for ZSFG because the cost of a clinic visit is hundreds of dollars, compared to the cost of

3

an emergency room visit, which may be thousands. And an inpatient hospital stay can cost tens or hundreds of thousands of dollars. Because federal law requires hospitals to provide emergency services regardless of a patient's ability to pay, ZSFG will be responsible for these unreimbursed costs, which could have been prevented if patients had not been deterred from seeking regular out-patient care.

9. In addition, ZSFG is already operating at full capacity. Almost every day, our emergency room, psychiatric emergency services, urgent care clinic, and hospital are at-capacity, if not over-capacity. Any increase in demand—no matter how small—has a negative impact on our operations. For example, increases in the number of patients we are expected to serve results in overcrowding and treatment delays.

10. As the City's sole Level 1 Trauma Center, we are uniquely equipped and staffed to provide emergent medical care to patients who have been through a trauma. Similarly, ZSFG's emergency department is constructed to treat patients in the event of a disaster. If our emergency room is filled with patients who require emergency care for conditions that could have been prevented by primary care, our ability to fulfill our duty as a Level 1 Trauma Center could be compromised.

11. Increases in emergency care needs also have significant staffing implications for ZSFG. State laws impose strict nursing staff-to-patient ratios, so increases in the volume of emergency medical services we provide will result in an increased need for nursing personnel of all types (emergency, operating room, critical care, medical-surgical, for example), and corresponding increased costs. Making staffing changes to reflect a shift from outpatient care to emergency care is complicated, as medical nursing staff cannot simply be transferred from one program to another. Medical and nursing personnel are highly specialized, and staff who are expert and licensed in providing preventive care are not likely expert and licensed in emergency care or in-patient care.

4

12. In addition to these harms, ZSFG would also face operational harms due to the emotional distress felt by staff. The federal government's proposed injunction would undermine the ability of hospital staff to help patients and keep them safe, and would cause distress in staff who are worried about families and the threats of deportation they may face.

13. Additionally, the federal government's proposed injunctions, focused only on reimbursing or covering certain costs for certain individuals, does not consider the administrative challenges such injunctions would introduce. ZSFG does not currently have a system in place to differentiate between people whose costs should be covered by the proposed injunction, and those whose would not be. It would be incredibly administratively burdensome to create such a system, and to train and reassign staff to operate it.

14. In sum, the confusion and deterrent effect of the federal government's proposal would result in significant harms to impacted families, and many of those costs will be borne financially and otherwise by ZSFG and San Francisco.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of July, 2025, in San Francisco, California.

SUSAN EHRLICH