# EXHIBIT BB

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| STATE OF NEW JERSEY, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 1:25-cv-10139-LTS |
| DONALD J. TRUMP, *et al.*, | : |
| Defendants. | : |

**DECLARATION OF DANIEL P. CONNORS**

I, Daniel Connors, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Director of Interagency Operations at the Rhode Island Executive Office of Health and Human Services ("EOHHS").  I serve as the Chief of Staff, overseeing the System, Data and Analytics team for the Medicaid Program. My educational background includes a bachelor's degree and a juris doctor degree.  I am experienced in Government Administration, and I am a licensed attorney having practiced law for over twenty (20) years. I have been employed in this role since March of 2023. I have worked in various governmental leadership roles for nearly twenty (20) years.

2. I submit this supplemental declaration to explain the harmful impact that the January 20, 2025, executive order titled "Protecting the Meaning and Value of American Citizenship" ("Executive Order 14160") will have on Rhode Island's health insurance and other federally funded benefits programs, as well as State healthcare providers, in the absence of a

nationwide injunction, including if the injunction is narrowed along the lines suggested by the federal government in its recent filing.

3. I have compiled the information in the statements set forth below through agency personnel who have assisted me in gathering this information from our agency. I have also familiarized myself with the alternative injunctive scopes proposed by the federal government to understand the immediate impact of their implementation on Rhode Island.

**<u>Rhode Island Executive Office of Health and Human Services</u>**

4. EOHHS serves as the principal agency responsible for managing the Department of Health, Department of Human Services, Office of Health Aging, Office of Veterans Services, Department of Children, Youth and Families, and Department of Behavioral Healthcare, Developmental Disabilities and Hospitals. EOHHS is also designated as the single State agency to administer the Medicaid program in Rhode Island. The EOHHS mission is to foster and strengthen a community-driven, equitable, comprehensive, responsive, and high-quality health and human services system in Rhode Island. Last year, EOHHS provided direct services to nearly 306,000 Rhode Islanders in addition to providing an array of regulatory, protective, and health promotion services to Rhode Island communities.

**<u>Impacts of Proposed Injunction</u>**

5. EOHHS understands that the federal government proposes a narrowed injunction of Executive Order 14160 pursuant to which a child could be born outside of the Plaintiff States in this litigation, not be considered a citizen or eligible for federally funded benefits in the child's birth State, but be considered eligible for federally funded benefits within the borders

of the Plaintiff States (including Rhode Island)—and possibly also be considered a citizen for all intents and purposes while within the Plaintiff States' borders.

**Staff Training Expenses**

6. Narrowing the injunction in this way would cause the EOHHS to expend time and resources training staff and community partners on the meaning and implication of the injunction. EOHHS has never experienced citizenship rules vary by State.

7. To the extent that the federal government intends to develop a new status for federally funded benefits eligible noncitizens born within the U.S., EOHHS would need to make enhancements and changes to the Medicaid program's eligibility and claims systems and train its staff on this new status and verification process.

8. To the extent that the narrowed injunction would result in many more children within Rhode Island who were born out of State, but within the U.S., and did not receive an SSN at birth, EOHHS will have to develop methods for verifying these children's citizenship, as detailed above, and will have to train staff and develop appropriate technology to do so.

**Outreach and Education Expenses**

9. EOHHS expects that many impacted families it serves, especially those who may have moved into Rhode Island from outside of the Plaintiff States, will be confused about the proposed injunction and its implications for their children's citizenship status and eligibility for federally funded benefits like Medicaid, SNAP, and TANF.

10. If the injunction is so narrowed, EOHHS would engage in education and outreach efforts to inform impacted families about the impact of the injunction.

11. In EOHHS's experience, such educational and outreach efforts can be particularly challenging when the intended audience consists of vulnerable communities who may be fearful of interacting with the government, such as certain immigrant communities.

12. If the injunction is narrowed as the federal government proposes, EOHHS anticipates it would have to spend considerable unbudgeted funds and resources on outreach and educational efforts to inform impacted families of their eligibility for federally funded public benefits within Rhode Island.

**Chilling Effects**

13. EOHHS understands that the narrowed injunction could result in children within its borders who are eligible for federally funded benefits and yet deportable. If this occurs, EOHHS anticipates that there is a substantial likelihood that the parents of such children would be chilled from accessing federally funded benefits, because of fear that doing so could subject their children to a heightened risk of deportation. The chilling effect on Rhode Island residents will likely include but not be limited to immigrants and their family members, who will be discouraged from seeking medically necessary healthcare. Under these conditions, individuals are substantially likely to forgo benefits for which they are eligible or disenroll themselves and their families from Medicaid altogether.

14. EOHHS further understands that the narrowed injunction could, alternatively, result in children within its borders who are eligible for federally funded benefits and yet would be deportable outside of the Plaintiff States' borders. If this occurs, EOHHS still anticipates that there is some likelihood that the parents of such children would be chilled from accessing federally funded benefits within Rhode Island, because of fear that doing so could subject their children to a heightened risk of deportation.

4

15. To the extent the narrowed injunction would cause parents who otherwise would enroll their children in federally funded benefits, including health insurance, in Rhode Island, to forego such enrollment, this chilling effect would have negative consequences for the State. It is substantially likely that at least some Rhode Island residents will forgo critical preventative care and necessary medical treatment, and in some cases may decline emergency medical services, threatening death or serious injury. Such a result would unwind years of investment in expanding health coverage and access.

16. Further, should this come to pass, Rhode Island will incur greater costs in conducting statutorily required outreach to enroll families and children in federally funded programs because it will be more difficult to encourage enrollment.

17. Enrollment in Medicaid has a positive impact on public health in the state. Individuals enrolled in Medicaid are more likely to receive preventative care services. This reduces the need for more intensive health care treatments, including emergency care, as illnesses develop. It also reduces the financial burden on health care providers from providing care to uninsured individuals and ensures that households are not left with medical bills that they are unable to pay. In addition, sick Rhode Islanders with health insurance coverage are more likely to see a health care provider and receive treatment, limiting the spread of infectious illnesses across the state.

18. Having insurance coverage also makes it less likely that Rhode Islanders will have to visit an emergency room to treat preventable illnesses because it is more likely that they will receive medical care before a treatable medical issue becomes an emergency. This reduces the resource strain and uncompensated care burden on hospitals.

5

19. By contrast, when individuals forego insurance, this negatively impacts public health and results in increased uncompensated care burden on hospitals.

20.  Deferring care can result in late-stage disease detection, unintended pregnancy, adverse health effects during pregnancy and childbirth, overdose, and increased morbidity and mortality for late-stage disease. Each of these harms could be prevented with early access to screening and treatment. Research indicates that delayed or no prenatal care increases risks for both mother and baby, including for preterm birth, low birth weight, and labor complications. The costs of emergency services such as those described likely outweigh costs the state would incur for preventative care for those same individuals. These adverse health impacts would further strain State resources and budget. To the extent their treatment is left uncompensated, the cost of such treatment will ultimately be shifted to the broader healthcare delivery system and the State.

21. The State can also anticipate a loss of compliance and lower engagement with health care systems which will have devastating impacts on public health including decreased use of vaccines and other preventative medicine causing increased risks for immunocompromised residents and increased expenses for the state in outreach as well as reactive (as opposed to preventative) and emergency care for un- and underinsured residents.

22. Furthermore, the increase in uncompensated care that all hospitals and healthcare facilities may experience as a result of eligible individuals declining to enroll in Federal-State Medicaid risks the closure of healthcare facilities altogether. Such closures would impact all Rhode Island residents who need healthcare services.

6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of July 2025, in Cranston, Rhode Island.


*Daniel Connors*
_____
Daniel P. Connors
Director of Interagency Operations
RI EOHHS

7