# EXHIBIT JJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW JERSEY *et al.*,

    Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

    Defendants.

Civil Action No. 1:25-cv-10139-LTS

## SUPPLEMENTAL DECLARATION OF KARI ARMIJO

I, Kari Armijo, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Secretary of the New Mexico Health Care Authority ("NMHCA). The information in the statements set forth below were compiled through personal knowledge, through NMHCA personnel who have assisted in gathering this information, or from documents that have been provided to and reviewed by me.

2. I submit this supplemental declaration to explain the harmful impact that the January 20, 2025, executive order titled "Protecting the Meaning and Value of American Citizenship" ("Executive Order 14160") will have on New Mexico's health insurance and other federally funded benefits programs, as well as State healthcare providers, in the absence of a nationwide injunction, including if the injunction is narrowed along the lines suggested by the federal government in its recent filing.

1

*Professional Background*

3. I have been serving as the Secretary of the Health Care Authority (formerly Human Services Department) since January 2023. Prior to becoming HCA's Secretary, I served as Deputy Cabinet Secretary and Deputy Director of the Medical Assistance Division.

<u>New Mexico Health Care Authority</u>

4. NMHCA's mission is to ensure that New Mexicans attain their highest level of health by providing whole person, cost-effective, accessible and high quality health care and safety-net services. Multiple entities within NMHCA perform functions in furtherance of this mission, such as the Division of Health Improvement ("DHI"), which oversees licensing and regulation of healthcare facilities across the State.

5. NMSA 1978 § 24a-1-7 requires "hospitals that operate an emergency department to provide certain emergency services and care to any person, regardless of that person's ability to pay."

6. Further, NMSA 1978 § 27-5-7 creates the Health Care Assistance Fund which is managed by the counties of New Mexico and exists to offset the costs to hospitals of providing care to indigent patients.

7. NMSA 1978 § 27-5-6.1 also creates the Safety Net Care Pool Fund, which is a state funded program to support qualifying hospitals that provide uncompensated care.

8. The State also funds the Federally Qualified Health Center Expansion, commonly known as the Rural Healthcare Delivery Fund (see NMSA 1978 § 27-1-17) Through the Rural Healthcare Delivery Fund, the State provides funding so Federally Qualified Health Centers are able to offer free or subsidized primary care, dental care, and mental health services to uninsured and underinsured New Mexico residents who are otherwise ineligible for Medicaid and have an income at or below 200% of the federal poverty level.

9. Federally Qualified Health Centers are required to serve all individuals, regardless of the individual's ability to pay. Federally Qualified Health Centers provide primary and preventative health care services; some are "one-stop" health centers with co-located services (medical, dental, and behavioral health) that make health care more accessible for eligible New Mexico residents. By comparison, the acute care hospitals covered by the Healthcare Assistance Fund provide emergency medicine to individuals experiencing acute medical conditions.

10. In New Mexico, there are 16 Federally Qualified Health Centers and 4 "look-alike" centers, which function as Federally Qualified Health Centers for purposes of the Rural Healthcare Delivery Fund.

11. The Rural Healthcare Delivery Fund is funded exclusively by the State. Through the program, the State pays Federally Qualified Health Centers a flat rate for uninsured and underinsured patient visits.

<u>Impacts on Hospital System of Increased Uninsured Population</u>

12. NMHCA understands that the narrowed injunction could result in children within the State who are eligible for federally funded benefits and yet whom the federal government otherwise would not treat as citizens. If this occurs, NMHCA anticipates that there is a substantial likelihood that the parents of such children would be chilled from accessing federally funded benefits, including health insurance, because of fear that doing so could subject their children to a heightened risk of deportation.

13. NMHCA further understands that the narrowed injunction could, alternatively, result in children within the State who are eligible for federally funded benefits and yet whom the federal government otherwise would not treat as citizens outside of the Plaintiff States'

3

borders. If this occurs, NMHCA anticipates that there is some likelihood that the parents of such children would be chilled from accessing federally funded benefits within New Mexico, because of fear that doing so could subject their children to a heightened risk of deportation.

14. To the extent a narrowed injunction of Executive Order 14160 would result in more uninsured children within New Mexico, the narrowed injunction would have negative consequences for the State's public health system.

15. Specifically, an increase in the uninsured child population would result in greater uncompensated care costs borne by New Mexico hospitals.

16. An increase in the uninsured child population would also result in greater State expenditures on services provided by Federally Qualified Health Centers to such children.

17. Public health will also suffer. Uninsured individuals are less likely to seek preventive care or attend routine health screenings and may delay necessary medical care due to prohibitive costs. Foregoing such services can result in negative health outcomes, such as emergency medical care with longer hospital stays, increased mortality rates, and higher costs.

Impacts of Increased Population of Infants Who Lacked Access to Prenatal Care

18. To the extent that children who were born out of State were not eligible for publicly funded prenatal care and thus never received such care, such children have an increased risk of preterm births, low birth weight infants, and congenital defects.

19. If such children then move into New Mexico, regardless of whether they become insured, the State and its public health system will bear the costs of providing services to such infants—costs that are higher than if the infant had received appropriate prenatal care.

4

20. Additionally, children with early health issues such as preterm birth are more likely to need early intervention services (EIS), which the State is federally required to provide to residents. Providing EIS services for income-eligible children results in costs to the State.

Early Intervention Services

21. As required by state and federal law, New Mexico provides access to EIS to all children aged 0-3 in New Mexico. Under either proposed narrowed injunction, DOH anticipates that there is a likelihood that the parents of covered children would be chilled from accessing federally funded benefits within New Jersey including EIS, because of fear that doing so could subject their children to a heightened risk of deportation.

22. To provide access to EIS services to all eligible children in New Mexico, regardless of immigration status, as required by federal and state laws, New Mexico will have to spend additional funds on outreach and education. New Mexico has an obligation under federal law to ensure that infants and toddlers are appropriately identified for services as to "reduce the need for future services." 20 U.S.C. § 1435.

23. The State is substantially likely to have to spend more money on outreach if eligible children are chilled from accessing EIS. Under the narrowed injunctions, there is a substantial likelihood that there will be a decline in the number of referrals of children for services. In that situation, the State will need to enhance outreach efforts to meet the federal and State law requirements—particularly under a new and confusing legal framework.

24. Further, if children who are otherwise eligible for EIS services are chilled from accessing those services, they are more likely to experience more severe issues with cognitive and physical development. Early intervention is designed to provide early care to mitigate longer term issues. Support and education for children with more severe cognitive and physical

developmental issues is more expensive for the State than if the State was able to administer early preventative and intervening care.

25. Alternatively, the State provides access to care regardless of availability to provide verification of citizenship. Therefore, if individuals are not chilled from receiving EIS services but cannot be enrolled in Medicaid due to administrative complexities or for other reasons, the State would have to provide those services entirely covered by state funds and without federal reimbursement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of July, 2025, in Santa Fe, New Mexico.

*Kari Armijo*
Digitally signed by Kari Armijo
Date: 2025.07.15 12:16:00 -06'00'

Kari Armijo
Secretary, New Mexico Health Care Authority

6