UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | No. 1:25-cv-10139-LTS |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE**

Plaintiff States and other governmental entities (hereinafter, the "States") continue to fail to tailor the injunctive relief they seek to their injuries. Instead, the States argue that the Supreme Court's stay of the universal nature of this Court's preliminary injunction somehow "has no bearing on this case." Pls.' Resp. in Opp'n,to Defs' Mem. In Resp. to Court's July 2, 2025 Order, ECF No. 196 ("States Br.") at 1. In so doing, the States continue their efforts to shift their burden of demonstrating why they are entitled to a particular scope of preliminary injunctive relief to Defendants. As we explain below, the States have failed to justify the extraordinary remedy of a universal injunction.

**I.      The States Improperly Attempt to Shift Their Burden to Defendants.**

In their brief, the States continue to improperly shift to Defendants the States' burden to demonstrate why a universal injunction is necessary to remedy the States' alleged injuries. The States complain that they cannot "imagine and then negate every possible alternative form of relief," describing such an endeavor as "an insurmountable barrier." States' Br. at 11. That is not how preliminary injunctions work: It is plaintiffs who are responsible for identifying their own

injuries and proposing a form of relief tailored to address those injuries—and no more. *See Becky's Broncos, LLC v. Town of Nantucket*, 138 F.4th 73, 77 (1st Cir. 20225) ("[t]he party seeking the preliminary injunction bears the burden of establishing that the[] [preliminary injunction] factors weigh in its favor."). Defendants need not write their own injunction, as the States would have Defendants do here. *See United States v. Zenon*, 711 F.2d 476, 478 (1st Cir. 1983). Simply put, the States should propose narrower relief tailored to their specific injuries, something they have not done notwithstanding the Supreme Court's stay regarding nationwide relief. *Trump v. CASA, Inc.*, 606 U.S. __, 2025 WL 1773631, at *15 (U.S. June 27, 2025).[1]

By continuing to advocate for universal relief, the States fail to come to grips with *CASA*. As the Supreme Court emphasized, "complete relief *to each plaintiff with standing to sue*" is the outer limit on equitable relief that a court can provide. *Id.* at *15. (emphasis added) That is a ceiling, not a floor. "[T]o say that a court *can* award complete relief is not to say that it *should* do so." *Id.* at *12. Plaintiffs cite various 19th and 20th century cases setting forth a broad concept of complete relief as an equitable principle, *see* States' Br. at 5-6, all while ignoring the analysis of *CASA* itself. They also discuss "history and logic," *see id.* at 6, but ignore the logic for why the burden is on them to propose specific, narrower relief—after all, they are in possession of the facts supporting their alleged injuries, and they are therefore in the best position to identify how those injuries can be addressed by a narrowed injunction. That they have not proposed a narrowed injunction post-*CASA*—and instead have tried to shift the burden to

---

[1] As the district court in *CASA* noted yesterday, assuming as the States do here that the default starting point is a universal injunction "overlooks the critical fact that the Supreme Court recently struck down the universal application of this Court's preliminary injunction" and, as a result, "the preliminary injunction applies only to the parties who sought the injunction." Mem. Op., *CASA, Inc. v. Trump*, No. 8:25-cv-00201-DLB, ECF No. 119, at 11 (D. Md. July 16, 2025).

2

Defendants on that issue—demonstrates that they have failed to carry their burden for injunctive relief.

II.     **Universal Relief is Not Necessary to Provide Relief to the States.**

The Supreme Court was clear when it directed lower courts to determine whether the "injunctions are broader than necessary to provide complete relief to each plaintiff *with standing to sue*." *CASA, Inc.*, 2025 WL 1773631, at *15. (emphasis added). In continuing to argue for universal relief that sweeps far beyond the States' borders and that is broader than necessary even within the States' own borders, Plaintiffs fail to meet their burden.

   A.     **Plaintiff States Lack Standing.**

*CASA* requires this Court to reconsider its preliminary injunction. As Defendants noted in their opening brief, while the Supreme Court did "not address" whether "the States lack third-party standing," *CASA, Inc.*, 2025 WL 1773631, at *4 n.2, it did stay the injunction to the extent the States lack standing, *id.* at *15.  The States respond by arguing that Defendants' arguments "are contrary to the decisions of this Court and the First Circuit in this case." States' Br. at 3. But courts always have an obligation to ensure that they have jurisdiction (for which standing is an indispensable element), and the Supreme Court directed the lower courts to consider the scope of relief in the context of "plaintiff[s] with standing to sue." *CASA, Inc.*, 2025 WL 1773631, at *15. The States' standing is therefore directly relevant to the scope of any relief that this Court may continue to provide.

   B.     **The Injunction is Overbroad.**

Implementing the Supreme Court's stay in *CASA* requires this Court to ensure that its injunction is no broader than absolutely necessary to provide relief to the States themselves. None of the States' arguments justifies the universal relief they continue to seek.

3

One of the States' primary arguments is that anything less than universal relief would "inflict administrative chaos and impose costly burdens on state agencies, who still do not know or understand how such an order could be implemented consistent with their statutory obligations to verify federal benefits eligibility." States' Br. at 13. This argument suffers from a major flaw. While the States would require the federal government to issue every form of citizenship document, the only document they have identified as having any relevance to their injuries is a social security card. *See* States' Br. at 13-15. The States have failed to explain why any injunction should require issuing other documents, such as passports. And even for social security cards, the States' only interest would be in the cards' recipients being treated as eligible for State programs; there is no justification to require those recipients to be treated as citizens for any other purpose.  While Defendants believe an injunction requiring the issuance of social security cards nationwide would still be broader than necessary to provide the States' complete relief, the States' attempt to justify relief based on social security cards but not narrow their request accordingly underscores that the problem here is the States' refusal to even attempt to craft an injunction tailored to their injuries. Plaintiffs cannot demand wildly overbroad relief that exceeds a court's power and then defend that relief by arguing that the defendants have not proposed a narrower solution.

The appropriate injunction would take each of the States' injuries in turn and craft a narrow remedy to avoid any immediate harm.  The States first argue that universal relief is required to protect their sovereign interests. Nonsense. The Executive Order does not harm their sovereign interests, as it requires only that federal officials for purposes of federal law interpret the Citizenship Clause in a particular way; it does not control how state officials interpret the Clause for purposes of state law. *See* Executive Order No. 14,160, § 2(a) & 3(a)-(b), 90 Fed.

4

Reg. 8449 (Jan. 20, 2025) (repeatedly limiting the application of the order to federal officers and employees). And in any event, any interests that the States may have in their newborns "participat[ing] in various civic functions like juror service and voting," States' Br. 20, *New Jersey v. Trump*, No. 25-1170 (1st Cir. May 21, 2025), clearly would not support a preliminary injunction as those harms will take more than a decade to materialize.

The States also express concern about "administrative chaos and implementation burdens" given uncertainty about which "verification methods" they would use. States' Br. at 13. A narrower injunction could continue to allow plaintiff States to use existing methods of verifying citizenship,[2] such as birth certificates. The only impediment to using existing verification methods the States have identified is that some "children would not have received SSNs at birth." States' Br. at 14. But they concede that other options to verify citizenship currently exist, *id.*, and in any event these injuries could not justify any relief broader than a requirement to issue social security cards nationwide. The States' concern that they need to verify citizenship to comply with the requirements of federal benefits programs is a non sequitur: the injunction would allow them to treat a child's birth in the U.S. as sufficient proof of citizenship for purposes of those requirements, and they would be verifying citizenship the same way under a narrower injunction as they would under the universal injunction they seek.

Next, the States argue—for the first time—that even if all their other injuries were addressed, fewer individuals would enroll in federal programs. States' Br. at 18. But that is

---

[2] *See e.g.*, New Jersey, NJ Family Care, https://njfamilycare.dhs.state.nj.us/imm_info.aspx (2023) (providing healthcare services for NJ residents under 19 years of age regardless of citizenship status); MassHealth, Member Booklet, https://www.mass.gov/doc/member-booklet-for-health-and-dental-coverage-and-help-paying-costs-0/download (Mar. 2025) (providing healthcare coverage for individuals regardless of citizenship status but requiring proof of income and identity in Massachusetts).

speculative, and in any event may save the States money. The States have failed to establish that any spending attributed to a narrowed injunction would cost them more than their share of the savings from reduced use of various federal programs. Moreover, if States could justify a universal injunction any time federal action impacts how many individuals enroll in federally funded programs in their State, then universal injunctions would be permitted whenever federal action affects the interstate movement of people. That sweeping theory of injury finds no support in the law. In any event, the States increased outreach costs would be self-inflicted injuries that do not warrant an injunction.[3]

      Determining the appropriate scope of an injunction is not an iterative process of chiseling down from universal relief, it requires building up from tailored relief. The States' primary alleged injury stems from eligibility for "citizen-dependent benefits programs." *CASA, Inc.*, 2025 WL 1773631, at *12. Starting there—by requiring that covered individuals be treated as citizens for those programs—the Court should build out to address any remaining injuries. The States have clearly failed to carry their burden to show that it is necessary to order the issuance of any document other than a social security card or to treat individuals as citizens for any purpose other than the States' programs.

---

[3] Conceptually, the States criticize "Defendants" for "appear[ing] to have abandoned" particular "proposal[s]," States' Br. at 19, but that assertion ignores that it is the States that have the burden of proposing a narrower injunction, not Defendants. The Defendants are not advancing specific proposals because we have a burden to prove their adequacy but rather to illustrate the clear overbreadth of universal relief and the States' failure to even attempt to tailor a remedy to their alleged injuries. And while the States criticize a specific proposal Defendants made, *see id.* at 19-20, that criticism focuses in large part on impacts on the individuals subject to the Executive Order, rather than the States themselves, which is incompatible with the inquiry *CASA* requires. *See, e.g.*, States' Br. at 20 (discussing how "Plaintiff States' residents would fear for the security of their covered children" and "the States' own residents being chilled from accessing federally funded benefits for their young children").

Finally, any injunctive relief should be limited to applying the Executive Order's policy to persons covered by it. Independent from its stay of the lower courts' nationwide injunctions against application of the Executive Order, the Supreme Court provided that "[t]he injunctions are also stayed to the extent that they prohibit executive agencies from developing and issuing public guidance about the Executive's plans to implement the Executive Order." *CASA, Inc.*, 2025 WL 1773631, at *15. Accordingly, any preliminary injunction should at most address the actual application of Section 2 of the Executive Order to persons falling within its scope.

## CONCLUSION

The Court should tailor any relief to specific injuries identified by the States.

Dated: July 17, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*s/ Kathleen C. Jacobs*
KATHLEEN C. JACOBS
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-598-7615
Email: kathleen.c.jacobs@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: July 17, 2025

/s/ *Kathleen C. Jacobs*
Kathleen C. Jacobs
